**U. S. DISTRICT OF COLUMBIA**
**DISTRICT COURT**
**333 CONSTITUTION AVENUE, N.W.**
**WASHINGTON, D.C. 20001**

FILED

JUN 1 3 2006

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

**SUSANNE ATANUS,**                          )
**Petitioner**                                )
*9054 Buckingham Park Dr.*                     )
*Des Plaines, IL. 60016*                        )
*847. 298. 2210*                               )
                                               )
**v.**                                         )
                                               )       CASE NUMBER  1:06CV01078
                                               )
**MICHAEL O. LEAVITT,**                        )       JUDGE: John D. Bates
**SECRETARY,**                                 )
**U.S. DEPARTMENT OF HEALTH**                  )       DECK TYPE: Employment Discrimination
**AND HUMAN SERVICES,**                        )       DATE STAMP: 06/13/2006
**Respondent**                                 )

Here comes Susanne Atanus, Petitioner, requesting that the decision granting Summary

Judgment be overturned, and that I be given a Writer/Editor GS-11/12 position on this Appeal

on the ground that there is genuine issues of material facts in dispute and I am able to establish *a*

*prima facie* case of discrimination based on race, color, national origin, gender, religion, age and

reprisal, not having Veteran (Vet) status, and not having XP status, as will be explained here.

In addition, to the additional counts of discrimination, of color, Vet status, and XP status, there

are 12 additional counts of discrimination against me, that I submitted to the EEOC, and the

Judge overlooked them, and granted Summary Judgment in favor of the Agency, and

discriminating against me on nine counts of discriminated.

It is definitely adverse to me, and very disturbing and appalling, and it is discrimination against

me on nine counts of discrimination, and a prevention of my due process of law when HHS

continually discriminates against me on nine counts of discrimination including signing their

name to false statements to prevent me from having a hearing, and their excuse after excuse as is

1

explained here from obtaining a Writer/Editor GS-11/12 position. I was not treated in the same

or similar way as the four applicants who were selected for this position who were Jewish, and in

a protected class, and one was a Vet with XP status. I am in four protected classes and an

Outstanding Scholar with two Master degrees, and one with Distinction from De Vry University,

Keller Graduate School of Management, June, 2003.

## I.    STATEMENT OF THE ISSUE

HHS wrongfully stated in their Motion for a Decision Without a Hearing that the sole issue is

whether Susanne Atanus ("Complainant/Petitioner") was discriminated against on the bases of

her race (Caucasian/white), color (White) national origin (second generation Assyrian), gender

(female), religion (Christian/Catholic), age (DOB 12/07/1958) over forty years old, and

reprisal (alleged prior complaint against General Services Administration ("GSA")) when, on

September 8, 2004, she was not considered for the Outstanding Scholarship Program and her

score was high enough to make the best qualified list for the position of Writer Editor, GS-

1082 11/12 under Vacancy Announcement No. HHS-OIG-2004-0160, advertised from July

27, 2004 through August 17, 2004.

Those were the only issues until I find out that my score was 92.2 and I could have been

considered under the Merit Promotion Program, and I could have been the fifth selectee, but,

Melinda Bing, discriminated against me on nine counts of discrimination when she stated that

I did not submit my SF 50 when I did fax and mail it to her office timely, and I have a fax

receipt. Then, Melinda Bing states during the Formal Complaint of Discrimination stage that

my SF 50 was received, but, her office discriminated against me and did not put it in the file

so it appeared that it was not received, but it was received. I was therefore, not treated in the

same or similar way as the other applicants who were selected for this Writer/Editor position

GS-1082-11/12 who are Jewish, and I am not and one is a Vet with XP status. That is a prima

facie case against me of discrimination on nine counts of discrimination.

**Discrimination Issue # 2:** Whether the Complainant was discriminated against on nine counts of discrimination when the HHS HR office did not advise her that she could be considered for a Writer-Editor GS-1082-11/12 position under the Merit Promotion Plan until April 7, 2005 in Melinda Bing's Affidavit and she was toward the end of the formal complaint process of discrimination when they knew from her resume and her application that she was a Federal employee. She was advised by Ms. Eileen Gomsi, Team Leader, on September 10, 2004 that she could obtain a position noncompetitively if she has a severe disability after HHS denied her application under the Outstanding Scholar Program, but, Ms. Gomsi, a Team Leader, did not advise Ms. Atanus, that she was eligible for consideration under the Merit Promotion Plan, had her office received Ms. Atanus' SF 50.

**Discrimination Issue # 3:** Whether the Complainant was discriminated against on nine counts of discrimination when the HHS HR office advised Ms. Atanus on April 7, 2005 in Ms. Melinda Bing's Affidavit dated April 7, 2005 eight months after she submitted her application, that her SF 50 was never received, and it is towards the end of the formal complaint process of discrimination, but, had it been received, she would have been considered for a Writer-Editor GS-1082-11/12 position under the Merit Promotion Plan since her score of 92.20 under the Merit Promotion Plan was higher than the next lowest score of 91.30. The HHS HR office did not ask her to fax the SF 50 to them, when they knew she was a Federal employee, and she faxed it to them, and mailed it to them with her transcripts. Ms. Atanus, then, faxes on April 11, 2005 the SF 50 to them with the fax receipt dated August 13, 2004 hoping that she would be offered a position. Then, the HHS office admits that the SF 50 was received, but, was not put in her file, and HHS still does not offer her a position.

**Discrimination Issue # 4:** Whether the Complainant was discriminated against on nine counts of discrimination during the formal complaint process when the HHS HR office admit their mistake that the SF 50 was received, but, it was not filed, and they do not offer her a Writer-Editor GS-1082-11/12 position, but instead came up with another excuse that her resume does not substantiate her experiences when Ms. Atanus has two Masters degrees that were cited on her resume, and in her application, and both Masters degrees, as well as her B.A. required writing papers that required a research and analytical approach!! In fact, at Northwestern University, every Political Science, Sociology, and Philosophy class that she took required a paper that required a research and analytical approach!!

Ms. Bing's race and color is Black, and I am White Caucasian, and she discriminated against me not only on my race and color, but on seven other counts of discrimination when she falsely stated that my "resume does not support these experiences and do not cite specific writing accomplishments", when I was a Contracting Officer/Administrator for over eighteen years in the Federal government, and that position required extensive writing, and clearly demonstrated my ability to communicate clearly in writing a variety of legal and/or analytical and technical documents or articles that required a research and analytical approach. I always had to do research and analyze the facts, and make a determination and take a position for the government. I implemented my decisions in writing in termination letters, Findings and Determinations,

modifications, cure notices, show cause notices, price considerations, waivers, deviations, memos, letter to intent, letters to Contractors regarding important clauses in their contracts. I also wrote reports for Management's review.

I did not think that my resume had to say everything I said in my answers in Quickhire. That would be ridiculous!! HHS, however, is saying that, and that is discrimination against me on nine counts of discrimination!!

I also stated that I wrote a movie, book and a play besides reports, letters, memos, etc. that required a research and analytical approach on a variety of topics including legal and technical that were asked in the questions for this Vacancy Announcement. My resume was over four pages long, and it included writing examples, including heading the Communications Department and exceeding our goal with implementation of an extensive fax and filing system for our Combined Federal Campaign (CFC) campaign.

Ms. Bing falsely states that "my response included a number of writing experiences she has had, but, her resume does not support these experiences and do not cite specific writing accomplishments", when in fact it does with my B.A. from Northwestern University, and two Masters degrees. I had to write many research papers for many of my classes that were so intensely and completely researched that I was able to test my hypothesis and my thesis in my papers.

My M.P.A., and M.B.A. provided more opportunity for me to further develop and sharpen my writing skills with more research into analytical, legal, business, government and technical issues. The topics of my papers were cited in my answers to the questions in Quickhire. I did more extensive writing and numerous writing examples were cited in my resume including Freedom of Information Act responses which required analytical and technical writing, as well as writing reports, letters, memos, etc. I also wrote a movie, play, and book, as I have already mentioned.

Ms. Bing falsely states that my "resume cites specific positions, none of which appear to involve writing", when, in fact, it does. My positions as Contracting Officer and Procurement Analyst involved extensive writing, and clearly demonstrated my ability to communicate clearly in writing a variety of legal and/or analytical and technical documents or articles that require a research and analytical approach. As a Contracting Officer, I was asked to assist the GSA Federal Technology Service with their backlog of claims under the GSA Affirmative Action Rotational Assignment. I advised them to send out letters with the wording and approach that I suggested, and those letters were issued, and the claims were resolved. I also completed a voluminous Freedom of Information Act request while I was there, a termination letter, issued purchase orders and modifications. I also had the responsibility to review all files for proper documentation within the requirements for a file check.

Also, as a Contracting Officer, I did research to determine the facts, and then took appropriate action. I had to monitor many Contractors' performance, document all my files, write deficiencies, and request corrective action within the required timeframe.

As a student, I did extensive research to obtain my B.A. from Northwestern University, Evanston, IL, and most of my classes required a research paper with my own thesis. That was

doing research on a high level that required writing a variety of legal and/or analytical and technical documents or articles that required a research and analytical approach. Also, my M.P.A. and M.B.A. also required writing a variety of legal and/or analytical and technical documents, and some of those papers were cited in my answers to the questions in Quickhire. Another example to prove that HHS is so out of line with their reasoning, and it is discrimination against me on nine counts of discrimination is that my writing sample that I submitted to HHS was a research paper on Internet 2 that I completed in my Information Technology for Managers class while completing my M.B.A.

Ms. Bing also falsely states, "We do not consider Quick hire answers that are not supported by the resume as viable". My resume included a lot of writing experiences, including four certifications in contracting, and my Certified Professional Contracting Manager (CPCM) was obtained after writing an extensive essay examination with many questions.

**Discrimination Issue # 5:**  Whether the Complainant was discriminated against on nine counts of discrimination when the other selected were not told that their resumes do not support their experiences, but Ms. Atanus was told that. Also, Ms. Allinder-Mestre's resume did not include writing other than reports, and she is Jewish, and that is a protected class, and she was not told that. Ms. Atanus was given a copy of her resume, and there is no writing mentioned, other than writing reports, but, Ms. Atanus was only told that, and her resume included writing reports, and more writing than Ms. Allinder-Mestre.

The other selectees also were not told that, and I was told that, and all the selectees are Jewish, and that is a protected classes, and I am not Jewish, and I am not in a protected class. One of the selectees is a Vet, and an XP, and he was not told that. Vet and XP are protected classes, and I am not a Vet, or an XP, and I am not in that in those protected classes. I was not treated in the same or similar way as the selectees in the protected classes: Jewish, Vet, and XP.

**Discrimination Issue # 6:** Whether Complainant is being discriminated against on nine counts of discrimination when HHS is stating one one excuse after another excuse for not selecting Ms. Atanus for one of the Writer-Editor GS-1082-11/12 positions.

Also, if there were over 500 applicants, and only three writers were selected who are Jewish, and one is a Vet and XP, what about the other writers who applied who were not Jewish, Vet and XP, including me, and we were not selected. I was discriminated against on nine counts of discrimination because of my nonselection as of this date. I was not treated in the same or similar way as the applicants who were selected, and are in protected classes.

HHS can correct this discrimination against me and offer me a Writer-Editor GS-1082-11/12 position. HHS has come up with excuse after excuse for not hiring me and that is discrimination against me on eight counts of discrimination. I have not been treated in the same or similar way as the other applicants who have been selected for these Writer-Editor GS-1082-11/12 positions.

The nine counts of discrimination are: My age: I am over 40 years old, and that is a protected class: My Date of Birth (DOB) is December 7, 1958; my gender is Female, and that is another protected class. Three of the selectees were Males, and that is discrimination against me, and one selectee was a Female, so a Female was represented, and I was not also selected so that is also discrimination against me. My national origin is Assyrian ( I am a second generation

Assyrian), and that is another protected class, and I was not selected, and that is discrimination against me. My race and Color: I am White Caucasian, and that is not a protected class.

My religion is Christian Catholic, and that is another protected class, and I was not selected, and that is discrimination against me. The four selectees were Jewish, and are a protected class, and I am not Jewish, and that is discrimination against me. I am not a Vet, and a XP, and a Purple Heart recipient and an XP was hired who also was a Vet, and I was not hired, and that is discrimination against me because I was not a Vet, or an XP, and these are the seventh and eighth counts of discrimination, respectively.

I am an Outstanding Scholar with my grade point average for my MBA: 3.84/4.00. I, therefore, was supposed to obtain noncompetitive status for this position, and to have been offered this position in Chicago, before a Vet was offered that position in Chicago. This Vacancy Announcement had at least seven vacancies, with at least one vacancy in the seven cities that were cited in this Vacancy Announcement. I applied for all those cities, and for all seven vacancies. I was not offered one of those positions, and that is discrimination against me on nine counts of discrimination.

Also, I filed a formal complaint of discrimination against GSA on six counts of discrimination (age, gender, national origin, color and race, religion) in March, 2002, and I was wrongfully removed from federal service on July 7, 2003, and that was because of retaliation and that was discrimination against me for filing a formal complaint of discrimination, and HHS knows this, and did not hire me and has not been cooperative in hiring me as of this date. HHS has discriminated against me because of retaliation, and the eight other counts of discrimination. I was not treated in the same or similar way as the selectees that were hired that are Jewish, a Vet, and a XP.

Also, I filed a formal complaint of discrimination against GSA on six counts of discrimination (age, gender, national origin, color and race, and religion) in March, 2002, and I was wrongfully removed from federal service on July 7, 2003. I was removed because of retaliation and the other six counts of discrimination, and the retaliation was discrimination against me for filing a formal complaint of discrimination. HHS knows this, and has not hired me and has not been cooperative in hiring me as of this date, and that is discrimination against me because of retaliation, and eight other counts of discrimination. I was not treated in the same or similar way as the selectees that were hired that are in the protective classes: Jewish, a Vet, and a XP, and I am not in those protective classes, and I have not been offered a position. HHS instead, comes up with excuse after another excuse and is lying with all their excuses and statements, and that is discrimination against me on nine counts of discrimination. I am not being treated in the same or similar way as the applicants who were selected in protected classes: Jewish, Vets, and XP.

Ms. Bing further stated that my "resume did not substantiate my answers to the questions in this Vacancy Announcement." That statement is false and is discrimination against me on nine counts of discrimination.

**Discrimination Issue # 7**: Whether Complainant was discriminated on nine counts of discrimination when Ms. Allinder-Mestre is not a writer, and HHS did not tell her that her resume does not substantiate her answers to the questions, and she is Jewish, and that is a protected class, but, HHS told Ms. Atanus that, and she is not Jewish, and is not in a protected

class for being Jewish. But, she is Christian Catholic, and that is a protected class, and she should have been treated in the same and similar way as Ms. Allinder-Mestre who is Jewish, and is in a protected classs.

That is discrimination against Ms. Atanus on nine counts of discrimination. Ms. Atanus was not treated in the same or similar way as the other selectees who are in protected classes: Jewish, Vets, and XP.

**Discrimination Issue # 8**: Whether Complainant was discriminated against on nine counts of discrimination when Ms. Allinder-Mestre who at the time of her application was a GS-13, and is Jewish, and that is a protective class, was automatically selected for the Writer-Editor GS-1082-11/12 position, and Ms. Atanus is not Jewish, and HHS HR office does not help her in any way to obtain a Writer-Editor GS-1082-11/12 position, but, instead comes up with excuse after excuse, lies after lies, and withholds information and important issues of eligibility for this position from her until towards the end of the formal complaint of discrimination period.

Even though Ms. Allinder-Mestre is a GS-13, that doesn't mean an automatic selection by HHS for her. HHS states that they automatically selected Ms. Allinder-Mestre because she was a GS-13, when her resume did not include writing other than reports. I have a B.A. from Northwestern University, Evanston, IL that required extensive research, thesis and hypotheses for each paper. I also have two Masters degrees, one with Distinction from De Vry University, Keller Graduate School of Management, June, 2003. I have done more research and more writing on a variety of analytical, legal, and technical issues than she has done. My answers in Quickhire cited many of my topics for my research papers. I didn't think that I had to copy all that information over in my resume again, when my resume was already long enough!! And, for HHS to say that my resume did not include my answers that were in Quickhire is ridiculous, appalling, and discrimination against me on nine counts of discrimination.

Ms. Allinder-Mestre is Jewish, and that is a protected class, and that is why she was one of the selectees. All four of the selectees were Jewish. I was discriminated against because I am Christian Catholic, and that is a protected class, too, but, because she is Jewish, and I am not, she was selected. I was not treated in the same or similar way as Ms. Allinder-Mestre, and the other three selectees who are Jewish and who are in a protected class because they are Jewish, and who were selected for one of the positions, and I was not.

Since I have given HHS my SF 50, and they acknowledge their mistake that it was in fact received, when Melinda Bing stated that she checked twice, and it was not in my file, and my score is 92.20. and the next lowest score is 91.30 under the Merit Promotion Plan, I should be offered a Writer-Editor position GS-1082-11/12, also.

HHS is, however, stating, although it is ridiculous and it is discrimination against me on nine counts of discrimination that I should have repeated everything in my resume that I stated in my answers in Quickhire for this Vacancy Announcement HHS-OIG-2004-0160!! HHS did not tell that to Ms. Allinder-Mestre because she is Jewish, and that is a protected class, and I am not Jewish, and I am not in that protected class, but, I am over 40, a female, a second generation Assyrian, and I am Christian Catholic. I am in those protected classes. HHS should offer me a position, too, and also because I am 3 years away from obtaining a government pension with

early out authority, and I have told them that, and that I have applied for over twenty federal jobs since July, 2003.

GSA wrongfully removed me because of retaliation besides six other counts of discrimination. HHS should try to help me because of my hard work and dedication to the government for over eighteen years!!

**Discrimination Issue # 9:** Whether Complainant was discriminated against on nine counts of discrimination when David Shorts, HHS EEO Manager, verbally harassed her on April 15, 2005. He yelled at her, and his office could hear him. He is the EEO Director, and by yelling, he gave his office the sign to not work with me and not help me obtain a Writer-Editor GS-1082-11/12 position. He was yelling at me and he threatened her that if I do not cooperate, it will be annotated, and his tone of voice was inappropriate especially because I had been cooperating even when I was sick from HHS stress put on me because of nine counts of discrimination. I had to go to the hospital Emergency Room on April 13, 2005 because I was dizzy and the room was spinning. I was vomiting, had a fever, and I was dehydrated. I was not treated in the same or similar way as the applicants in protected classes that were selected for this position.

The HHS offices have not been cooperating with Atanus, but, have been playing appalling games with her, and she got sick. And, towards the end of the formal complaint process, the HHS personnel have come up with excuse after excuse for not hiring Ms. Atanus. The HHS HR office on at least two occasions held the bait to her, and when she grabs it, and meets the qualifications for the Writer-Editor GS-1082-11/12 position, they come up with excuse after another excuse to not offer her a position. The first occasion was when she faxed them her SF 50, and she has the highest score of 92.20 under the Merit Promotion Plan. Then HHS says her resume does not include her answers in Quickhire. She did not think it is appropriate to rehash all the same information that were in her answers in Quickhire, when her resume was long enough.

The HHS personnel mentioned non receipt of the SF 50 under the Merit Promotion Plan, and then her resume does not include her experiences in her answers in Quickhire. If that was the case, then HHS should not have mentioned toward the end of the formal complaint process of discrimination the non receipt of the SF 50, when they did receive it, and I could be considered for a Writer-Editor GS-1082-11/12 position under the Merit Promotion Plan. HHS is playing games with me to make me feel that if I submit my SF 50 I will be offered a position when Melinda Bing's Affidavit dated April 7, 2005 showed my score of 92.20 to be higher than the next lowest score of 91.30, and when I do submit my SF 50, she and HHS HR office have the audacity to say that my resume does not include my writing experiences. That behavior is appalling, ridiculous, unreasonable, and discrimination against me on nine counts of discrimination.

HHS' behavior is damaging to me physically, economically, financially, and emotionally, and it has caused me emotional distress. I am requesting $300,000 in compensatory damages as well as other damages because HHS has made it so difficult for me to obtain a Writer-Editor GS-1082-11/12 position. I have gotten sick because of HHS' discrimination against me, and giving me excuse after excuse for not hiring me for a Writer-Editor GS-1082-11/12 position. As I stated before, I had to go to the Emergency Room in the hospital on April 15, 2005. I was

vomiting, and I felt nauseous all day. I was given an IV with medicine for the nausea. I had a fever, and my throat was dry. After a few hours, I was sent home.

Mr. Shorts also accused Ms. Atanus of being a confused young lady. She is not young, and she is not confused. She told him that she is a very smart lady. Mr. Shorts talked disrespectfully, and down to her. Mr. Shorts has not tried to talk to the HHS HR employment office to help her obtain a Writer/Editor GS-1082-11/12 position.

In October, 2004, I was treated for a significant stiff neck. I was given medication, and it took three weeks before my neck felt normal. In December, 2004, I had a bad cold. I needed an antibiotic prescription, and I was also taking Tylenol Flu for three weeks. In February, 2005, I had another bad cold, and a very bad sore throat, and I couldn't swallow to eat without Tylenol, and I needed an antibiotic prescription. I was also taking Tylenol Cold for three weeks.

**Discrimination Issue # 10:** Whether the Complainant was discriminated on nine counts of discrimination when the HHS HR office and the HHS EEO office and the following individuals in those offices have not worked with Ms. Atanus, and they have a discriminatory, inappropriate and appalling attitude of noncooperation and unwillingness to offer her a Writer-Editor GS-1082-11/12 position when she has met the qualification requirements. The race and color of these individuals is Black, and the race and color of Ms. Atanus is White/Caucasian, and they have discriminated against her because she is not a minority like them, and she is not Black. These individuals include David Shorts, EEO Manager, Ann Garrett, Director, HHS EEO, Melinda Bing and the HHS HR office including Donna Thomas, Lead Human Resources Specialist, Cassandra Cuffee, Human Resources Manager. Other individuals that have discriminated against Ms. Atanus are Eileen Gomsi, Team Leader. Her race and color is White Caucasian, and others in the HR office during review of her application for this position. Both of these offices, namely the HHS HR office and the HHS EEO have not tried to help Ms. Atanus obtain a position despite the seriousness of the thirteen discriminatory issues and the nine counts of discrimination that she have raised to David Shorts, HHS EEO Manager, and to Melinda Bing, and the HHS HR office.

**Discrimination Issue # 11:** Whether Complainant was discriminated against on nine counts of discrimination when David Shorts accused her of talking to the HHS HR office. She told him that she did not talk to them. She wanted to know if she could obtain a Writer-Editor position GS-1082-11/12 and faxed to Melinda Bing and David Shorts on April 11, 2005 her SF 50. Melinda Bing stated in her Affidavit that had she had my SF 50 I would have been considered under the Merit Promotion Plan. My score was 92.20, and it was higher than the next lowest scores of 91.30 that were listed in her Affidavit. When Ms. Atanus read that, she then faxed her SF 50 to Melinda Bing, HHS HR office, and to David Shorts, HHS EEO Manager.

**Discrimination Issue # 12:** Whether Complainant was discriminated against on nine counts of discrimination when HHS knows that Ms. Atanus was wrongfully removed from her position as a Procurement Analyst from GSA effective on July 7, 2003. She has applied to over 20 federal jobs, and HHS has not worked with Ms. Atanus to reinstate her, even though she is only 3 years away from obtaining a government pension if the government gives early out authority. Mr. Shorts told her to apply for other jobs. Ms. Atanus told him that she wants to obtain a position under this Vacancy Announcement. She asked Mr. Shorts if there are vacancies. He stated that he is not told that information. She advised him that she wants one of the positions under this

Vacancy Announcement, preferably in Chicago, so that she will not incur relocation costs. But, if Chicago will not work, another location will be O.K. with her.

I am in a formal complaint process on NINE counts of discrimination with HHS, and HHS still has not tried to work with me, and that is serious. They constantly come up with excuses to not help me obtain a Writer-Editor GS-1082-11/12 position, and that is discrimination against me on NINE counts of discrimination. Discrimination is against the law, and I will recover damages against me, including $300,000 compensatory damages, loss of back pay, front pay, annual leave, sick leave, $3 million pension, and
$3 million punitive damages.

**Discrimination Issue #13:** Whether Complainant was discriminated against on nine counts of discrimination when it was left out of the Record of Investigation that Atanus has two Master degrees and one with Distinction and other writing credentials and accomplishments. She was a Contracting Officer and Procurement Analyst for 18 ¾ years at the General Services Administration, and she wrote a movie, play, and book. Atanus, therefore, should have been considered more favorably during the selection process, and instead, the remarks were not favorable to her that were put in the Record of Investigation, and during the Formal Complaint process, and that is discrimination against her on nine counts of discrimination, and that is against the law. Complainant has two Masters degrees and other writing credentials and accomplishments, i.e. she was a Contracting Officer and Procurement Analyst, and she wrote a movie, play, and book which made her very qualified for this position as a Writer/Editor. Atanus has a Master degree in Public Administration (MPA) from the University of Illinois at Chicago, and a Master degree in Business Administration (MBA) with Distinction from De Vry University, Keller Graduate School of Management with a gpa: 3.84/4.00, June, 2003. Complaint is also a graduate of Northwestern University, Evanston, IL. She wrote many papers with extensive research to formulate an hypothesis, and had to prove or disprove her hypothesis at Northwestern University. She also wrote many papers and gave several presentations in her two Master degree programs.

On two occasions, her professors from two classes asked Atanus to read her essay answer on her exams at De Vry University, Keller Graduate School of Management because it was an "A" answer and the essays were excellent and thorough.

As a dedicated and very thorough Contracting Officer and Procurement Analyst at the General Services Administration (GSA) for 18 ¾ years, Atanus wrote many letters and memos to contractors and to her internal and external customers. She maintained a 0 % delivery delinquency rate, and 0 to very low backorders for 18 ¾ years, which is an outstanding accomplishment for a multibillion dollar federal supply service operation.

Atanus maintained her files meticulously and they were well documented, organized, and up to date with current status of deliveries, and complaints that were resolved in a timely manner. She took a proactive approach, and all actions were timely with the issuance of show cause letters, cure notices, terminations, modifications, and responses to Freedom of Information Act requests. Also congressional inquiries, status to her supervisors and managers and reports were completed in a timely manner.

Atanus also has four certifications from the National Contract Management Association (NCMA) and served as the Communications and Certifications Chairperson and President of the Chicago Chapter. The four certifications are Certified Professional Contracts Manager (CPCM), Certified Federal Contracts Manager, Certified Associate Contracts Manager, and Simplified Acquisition Specialist.

HHS was looking for an Outstanding Scholar for this Vacancy Announcement because Outstanding Scholars are great writers. I wrote a movie, play, and a book, and I am a great writer. I was discriminated against because I am not a minority even though I am in four protected classes, and it was because I was not a minority that I was not offered a position as a Writer/Editor.

I was discriminated against on nine counts of discrimination. I was not treated in the same or similar way as those applicants in protected classes who were selected, and who are all Jewish, and that is a protected class. One selectee is an XP and a Vet, and who was given unfair preferential treatment, and who was given extra points for being an XP and a Vet. I, however, as an Outstanding Scholar was supposed to have been first offered that position because I was in noncompetitive status under Special Selection Authority as an Outstanding Scholar.

## II. DISPUTED MATERIAL FACTS

The Complainant applied for the position of Writer/Editor, GS-1082 11/12, Vacancy

Announcement No. HHS-OIG-2004-0160 and Melinda Bing, an HR Specialist for two and a half

years, was assigned to the case, determined the best qualified applicants and issued the certificate

of eligibles. Report of Investigation ("ROI"), Exhibit ("Ex.") F4 at 2.

The Complainant is not an employee of DHHS. ROI, Ex. F2

The position of Writer/Editor, GS-1082-12, involves such tasks as preparing and editing various

materials used to present and promote the Office of Audit Services ("OAS") programs and activities

in correspondence, technical articles and manuals,  periodicals, Congressional reports, brochures,

pamphlets, speeches and scripts. ROI,  Ex. F5b.

In using the Quickhire system to apply for the position of Writer/Editor, GS-1082 11/12,

candidates provide responses to multiple choice questions and are subsequently issued a

score based on their objective responses. ROI, Ex. F3; Ex. F7(a).

Candidates may also provide essay responses, but those are used to support the objective

response and do not contribute to one's score; furthermore, candidates are not reviewed by a

panel and are not compared to one another during the rating process. ROI, Ex. F3In this

case, six (6) candidates were referred for the Delegated Examining Unit ("DEU")

certificates.' ROI, Ex. F3 at 3.

During the scoring process, Complainant received a score of 92.2 (for the GS-11 level only),

which was not one of the top six (6) highest scores, and, as such, she was not referred. ROI, Ex.

F4 at 2-5; Ex. F3 at 3.

The lowest referred score on the certificates was 96.10. ROI, Ex. F5(d).  That is a typo.  The lowest

referred score was 91.10.

Out of five hundred (500) applicants who applied for this vacancy, four (4) candidates

were selected for this vacancy announcement; all of the selectees were caucasian; three (3) were male, one (1) was female, and they were ages: 58, 41, 28 (female) and 43. See ROI, Ex. F1(d). Additionally, one (1) selectee had veteran status (XP) and his application was given additional points for Veteran's preference. See ROI, Ex. F4; Ex. F1d.

Also, all applicants were Jewish, and Brian Moskal was also a Vet with XP status.

The Office of Personnel Management Outstanding Scholar guidance explains that the program may be used for certain positions at grades GS-5 and GS-7. ROI, Ex. F7(b).

The Complainant's application does identify her race, gender, national origin-Atanus (most likely not a protected class, but, I am in four protected classes, her religion being not Jewish by her name Atanus, her age could be determined by the years that she was in college that is on her resume, and prior EEO activity, HHS could have contacted GSA and inquired about my employment status, history and personal information. Affirmative action is part of the selection process. ROT, Ex. F5c; Ex. F7(a) at 8; Ex. F3 at 4. HHS has affirmative action in its employment. By my name Susanne Atanus, HHS knows that I am a female (gender), not Jewish or Black that are protected classes, it could be determined that I am White and my national origin most likely is not a protected class, but, I am in four protected classes: I am an Assyrian over 40 years old, and I am a Christian Catholic.

Veteran status is not a recognized protected class under the Section 717 of the Civil Rights
' Besides the four (4) selectees, there were also two (2) incumbents hired into this position in February 2004. ROI, Ex. F1d.

~~² Three types of certifi~~cates were issued to the selecting officials: Delegated Examining Unit ("DEU") certificates for outside candidates, Merit Promotion certificates for eligible Federal Employees, and non-competitive certificates for candidates already functioning at the grade level of the advertised position. ROI, Ex. F3 at 2-4; Ex. F4 at 2-3.

The Petitioner, allege reprisal and relates that she had previous EEO activity while she worked in the General Services Administration ("GSA"), a position which she apparently left in July, 2003. ROI, Ex. F2 at 4.

The Agency does not maintain data on the religion of employees or applicants. ROI, Ex. FI(a) and (f)

In regard to damages, the Complainant is seeking a Writer/Editor GS-11/12 position, back pay from 30 days after she submitted her position to date of judgment in favor of Atanus, with her check received within 30 calendar days after receipt of judgment in favor of Atanus, a $3 million dollar pension if a position is not given to Atanus, benefits, and $300,000 in compensatory damages and a $3 million dollar punitive award.

# IV. LEGAL DISCUSSION

### A.        This Case is Not Properly Decided Under The McDonnell Douglas Analysis.

The governing law in this matter requires a review of the basic analytical framework developed by the Supreme Court for complaints of employment discrimination arising under Title VII in McDonnell Douglas v. Green, 411 U.S. 792 (1973) and Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981). Under this framework, Complainant has the initial burden of establishing, by a preponderance of the evidence, *a prima facie* case of discrimination by showing that: (1) she belongs to a protected group, (2) she suffered an adverse employment action, and (3) she was treated differently from other similarly situated employees. Potter v. Goodwill Indus. of Cleveland, 518 F.2d 864, 865 (6th Cir. 1975).

The burden then shifts to the employer to articulate some legitimate, nondiscriminatory reason for its challenged action; finally, Complainant must then prove, by a preponderance of the evidence, that the legitimate reason offered by the employer was not its true reason but was pretext for discrimination. McDonnell Douglas at 792-804. Moreover, Complainant must show not only that the Agency's proffered reason was false, but that discrimination was the real and

---

'As to the Complainant's burden, all justifiable inferences are to be drawn in favor of the nonmovant. Anderson v. Liberty Lobby, 477 U.S. 242, 255 (1986). Nonetheless, the "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." Id. at 247-48. See also, Felty v. GravesHumphreys Co., 818 F.2d 1126, 1128 (4th Cir. 1987). ("Unsupported speculation is not sufficient to defeat a summary judgment motion.") In ruling on a summary judgment motion, a judge must determine whether there is a dispute "over facts that might affect the outcome of the suit under the governing law." Anderson, 477 U.S. at 248.

true reason for the action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515-16 (1993). The

employer's burden is one of production only; the burden of persuasion remains at all times on the

employee to show that she was a victim of intentional discrimination based on a prohibited reason.

Burdine, 450 at 253. The employer is entitled to judgment as a matter of law if the record

conclusively revealed some other, nondiscriminatory reason for the employer's decision. Reeves v.

Sanderson Plumbing Prods.. Inc., 530 U.S. 133, 148 (2000).

**1.      Complainant has established _a prima facie_ case of race, color, sex,
national origin, religion, age, Vet. and XP discrimination.**

As noted above, in order to establish a prima facie case of discrimination based on race,

sex, national origin and religion, Complainant must first establish that she is a member of a

protected group or groups, that she is similarly situated to employees or applicants outside of her

protected categories, and that she was treated differently from those employees or applicants.

Potter, 581 F.2d at 865. In addition, with respect to age discrimination, Complainant must show that

age was a determinative factor in the sense that, "but for" her age, she would not have been

subjected to the action as issue. LaGuire v. Cisneros. EEOC Appeal No. 01950412 (Sept. 25, 1996).

Complainant is a 47 year old, Catholic, caucasian female, of "second generation"

Assyrian national origin. As such, Complainant will be able to show that she is a member of

several protected groups.

**a.      Race, Color, and sex.**

With respect to race and sex, like the Complainant, all of the selectees were caucasian,

and one of the selectees was a female. ROI, _Ex._ F1 d. Thus, Complainant can show that she

was treated less favorably than other similarly situated employees or applicants because of her race or sex when she was not considered for the subject vacancy. I am not Black, or Hispanic, Jewish, or Polish with my name of Susanne Atanus, and since at least one female was selected, a female was represented in the selectee group, and HHS did not have to hire another female. I was treated less favorably than other similarly situated employees or applicants because of my race and sex.

###    b.    National origin and religion.

With respect to her national origin and religion claims, Complainant simply asserts that due to her background as a second generation Assyrian, she was not selected for the position. See ROI, *Ex.* F2 at 9. However, she fails to provide any more specific information on this point. Similarly, she claims that TNT said I were Jewish, I would have been selected." ROI, Ex. F2 at 7. Complainant further notes that "[t]he selected weren't selected on their writing ability and experience alone. They were selected because they are in protected classes- including Veteran, XP, m [sic] and Jewish." ROI, Ex. F2 at 8.

Complainant does demonstrate that Ms. Bing, the HR official in charge of recruitment for the subject vacancy, was aware of her national origin that I was not Jewish, Polish, Black, Hispanic with my name Susanne Atanus. ROI, Ex. F5c; Ex. F4. In addition, the Agency does maintain information on the religion of its employees and its applications because Jewish is a protected class, and HHS has affirmative action programs, and as such, HHS may say that it was not a factor which the Agency used in evaluating its applicants. ROI, Ex. F1a; Ex. F1 d; Ex. F5F, but, it was because the four applicants who were selected were Jewish, and I should have been the first applicant that was selected because I am an Outstanding Scholar, and all HHS Vacancy Announcements have those two questions asking if applicants are applying under a Special Selection Authority, and if so,

is it Outstanding Scholar, Peace Corps, or a current Postal Service employee, and I could also have been selected under the Merit Promotion Plan with a score of 92.20, and I submitted my SF 50, but, I was not selected because I was not Jewish or Black, Polish. Consequently, Complainant can demonstrate that the Agency was aware of her national origin and religion when it did not consider her for the position in question. I was not treated in the same or similar way as the applicants who were selected for this Writer/Editor GS-1082-11/12 position.

c.    <u>Age.</u>

In regard to the Complainant's age discrimination claim, again, Complainant simply makes a conclusory assertion that "[m]y age is over 40 and I am in a protected class." ROI, Ex. F2 at 6.

Complainant's age was noted clearly on her application in her resume with the years that she was in college and in her Masters' programs, MBA with Distinction and MPA. It was wrong, and discriminatory against me on nine counts of discriminated when HHS stated that "Moreover, even if such information were contained on her application, that type of data, including all other "EEO" data, is immediately encrypted and not associated with a specific applicant. My resume was not encrypted, it was clearly put into my application for review. It was also wrong and discriminatory against me on nine counts of discrimination when it said, "Neither the HR staff nor the selecting official can associate any of the encrypted data with a specific individual. See ROI, Ex. Flap at 8. My resume is clearly readable in my application, and it was not encrypted.

Moreover, the record shows that three (3) of the four (4) selectees were, like Complainant, over 40. ROI, Ex. F1(d). Indeed, one of these selectees was 58, and the other two were essentially Complainant's age (43 and 41). Therefore, HHS was incorrect to state that Complainant simply cannot demonstrate that "but for" her age, she would have been selected. Yes, I can because three of the four applicants that were selected were over 40 so my age group over 40 was well represented, and the two incumbents may be younger than 40 so that age group is also represented.

In short, Complainant has pointed to evidence which would establish that her race, sex, national origin, religion and age were known by Agency officials and were factors in the Agency's decision not to consider her for the Writer/Editor vacancy at issue in this complaint. These facts are sufficient to defeat summary judgment. Consequently, Complainant has established *a prima facie* case of discrimination on the basis of race, sex, national origin, religion and age. These claims, therefore, must be upheld, and Complainant have a hearing, preferably, in Chicago, IL as soon as possible.

2.    **Complainant has established *a prima facie* case of reprisal.**

In order to establish *a prima facie* case of reprisal, Complainant must establish that she engaged in protected activity under Title VII; that she suffered an adverse employment    action by the defendant; and that a causal connection exists between the protected activity and adverse action. Berger v. Iron Workers Reinforce Rodmen Local 210, 843 F.2d 1395, 1423 (D.C. Cir. 1998) *cert. denied,* 490 U.S. 1105 (1989). To establish *a prima facie* case, the causal connection may be inferred when the adverse employment action follows shortly after protected activity. Chen v. General Accounting Office, 821 F.2d 732, 739 (D.C. Cir. 1987). However, the burden of persuasion that retaliation motivated the Agency's actions remains at all times with Complainant. St. Mary's Honor Center, 509 U.S. at 507.

Under her reprisal claim, the Complainant alleges that she had previous EEO activity while she worked in the General Services Administration ("GSA"), but when asked to describe her prior EEO activity, she related that "[m]y case is in litigation." ROI, Ex. F2 at 2, 4. In this regard, Complainant establishes that the Agency was aware of the Complainant's alleged prior EEO activity, and could see her employment history that is on record, and her resume with all her credentials shows right after obtaining her MBA with Distinction, she got a slap in the face and was wrongfully removed from the GSA. ROT, Ex. F1c. Complainant maintains that she informed Mr. David Shorts, Office of the Secretary, DHHS, and Eileen Gomsi, Team Leader in the selection process of her prior EEO activity. ROI, Ex. F2 at 2. However, the record shows that Mr. Shorts, an Agency EEO official, was not the selecting official in this case, and rather, was involved in the Complainant's current EEOC case only *after* she was not-selected for the position at issue. ROI, Ex. F4 at 2. However, Ms. Gomsi, should have told me, and wrongfully and discriminated against me on seven counts of discrimination when she did not tell me that I could be considered under the Merit Promotion Program if I submit my SF 50 which I did timely by fax and by mail. As such, the Complainant has shown that her alleged prior EEO activity at a different federal agency played a role in her non-selection. Accordingly, Complainant has established *a prima facie* case of discrimination based on reprisal, and this claim, like Complainant's other claims, must be upheld, and I must be given a hearing, preferably, in Chicago, IL as soon as possible.

**B.** **The Complainant Can Articulate Discriminatory Reasons for the Agency's Actions.**

In examining Complainant's argument that her application was unfairly scored, it is first important to understand the functions of the Quickhire system, a system developed by Monster.com and used by DHHS[5] as well as many other federal agencies. ROI, Ex. F3; Ex. F7(a). In using this system, candidates provide responses to multiple choice questions and they are thereafter issued a score based on their objective responses. Id. Candidates may also provide essay responses, but those are used to support the objective response and do not contribute to one's score. ROI, Ex. F3. In this regard, candidates are not reviewed by a panel and are not compared to one another during the rating process. Id. Moreover, when applicants apply for vacancies, there is a voluntary applicant background survey attached for the applicant to complete. ROI, Ex. F5f. Though this survey asks for information on age, race, ethnicity, sex and disability, it does not ask for the name of the applicant or his/her religion. Id.[6] But, religion can be determined by an applicant's last name, Moskal, Liverhant, Greissel, and Allinder-Mestre.

Overall, the Agency reported that over five hundred (500) applicants applied for this vacancy and of those, four (4) candidates were selected for this vacancy announcement. The selectees were all caucasian; three (3) were male, one (1) was female and their ages are 58, 41, 28 and 43. See ROI, Ex. F1(d). Additionally, one (1) selectee, Brian Moskal (White/Male/DOB 1946) had veteran status (XP) and his application was given additional points for Veteran's preference. See ROI, Ex. F4. In this case, six (6) candidates were referred for the Delegated

---

[5] DHHS has used the Quickhire system for approximately two (2) years.

[6] Though this data can be accessed in a data base, it cannot produce information for a specific applicant but rather produces demographic data for each vacancy announcement. ROI, Ex. F5f.

But, specific information about an applicant is in the applicant's file, and this information was put in the Report of Investigation, and it will be in the employee's record for however long the agency wants to keep it there.

Examining Unit ("DEU") certificates.[1] ROI, Ex. F3 at 3. During the scoring process, Complainant

received a score of 92.2 (for the GS-11 level only), which was not one of the top six (6) highest

scores, and, as such, she was not referred. ROI, Ex. F4 at 2-5; Ex. F3 at 3. The lowest referred score

on the certificates was 96.10. ROI, Ex. F5(d). That is a typo, the lowest score was 91.10.

Complainant asserts that she was qualified for the position of Writer/Editor GS-1082

11/12 and should have received a score of 100 points and non-competitive status because of her

eligibility for the Outstanding Scholar Program. ROI, Ex. F2. In this regard, Donna Thomas, Lead

HR Specialist for the Rockville HR Center, DHHS, an individual with more than three (3) years of

HR experience, explained that this vacancy does not fall under the Outstanding Scholar program

because it was a GS-11/12 position and Outstanding Scholar vacancies are for GS 5/7 positions.

ROI, Ex. F3. Similarly, the Office of Personnel Management Outstanding Scholar guidance states

that the program may be used for certain positions at grades GS-5 and GS-7. ROI, Ex. F7(b).

Additionally, the program offers no provision for issuing additional points for competitive

candidates. Id. Thus, apparently Complainant misunderstood the realm of the Outstanding Scholar

program and incorrectly assumed that it applies to higher level positions like GS-11 and GS-12

positions, an assumption which is supported neither by the record nor the program guidelines.

ROI, Ex. F3 at 5; Ex. F7(b).

Complainant also asserts that the Agency gave applicants preferential treatment in the

form of additional points because of their membership in protected classes (specifically non-

[1]    types of certificates were issued to the selecting officials: Delegated Examining
Unit ("DEU") certificates for outside candidates, Merit Promotion certificates for eligible Federal
Employees, and non-competitive certificates for candidates already functioning at the grade level of
the advertised position. ROI, Ex. F3 at 2-4; Ex. F4 at 2-3.

white, non Christian/Catholic candidates and veterans). ROI, Ex. F2. In this regard, Ms. Bing

states that she is unaware of any additional points given for candidates based on their membership

in any group. ROI, Ex. F4 at 2-5. Similarly, Ms. Thomas, who reviewed the materials, noted that

candidates are not given extra points for affirmative action status. ROI, Ex. F3 at 4. Simply, the HR

staff does not see any affirmative action or demographic information about the candidates and

contrary to the Complainant's beliefs, this information is not part of the selection process. Id.; ROI,

Ex. F7(a) at 8.  I cancel my statement that the four selectees received extra points for affirmative

action, but, they were selected, and they are Jewish, so they were kept to be hired, and I had the

next highest score, and one vacancy still remains, and now we are in a law suit, and HHS does not

seem to care about me or that they knowingly are discriminating against me, because I have told

them many times by now that they are, and HHS still has not offered me a position because I am

not supposedly a minority, but, I am a minority, I am a second generation Assyrian female over 40

years old, and I am a Christian Catholic.

However, candidates are entitled to earn extra points for veteran status. ROI, Ex. F3 at 4. In

this case, one of the candidates referred and eventually selected had XP status meaning the person

was a widower or a parent of a deceased veteran, and therefore earned additional points. ROI, Ex.

F3 at 4. Thus, under these special veteran categories, additional points may be given for applicants

with a recognized veteran status, and that action was appropriate here and in no way discriminatory

against Complainant. Id. Additionally, veteran status is not a recognized protected class under Title

VII, but he was given additional points.  I should have been selected first because I had Special

Selection Authority with noncompetitive status, and the agency did not remove that from the

Vacancy Announcement, nor did they amend the Vacancy Announcement to remove it, because

they were looking for Outstanding Scholars because they are great Writers.

Additionally, though the Complainant's score of 92.2 was high enough to be referred on a

Merit Promotion Certificate, she was not considered because her SF-50 form was apparently not

included in her application package. ROI, Ex. F4 at 3. However, during the course of the

investigation, the Complainant provided documentation supporting her assertion that she did in fact

submit this document. See ROI, Ex. F6, at 2-3. As a result, the Agency acknowledged the

Complainant's SF-50 submission and re-evaluated the Complainant's candidacy. In this regard, Ms.

Bing, with concurrence from her first and second-line supervisor, determined that the Complainant

would not have been referred because her resume did not provide evidence to support her writing

experience as claimed on her application. ROI, Ex. F4(a). Specifically, the Complainant's Quickhire

application listed a number of specific writing accomplishments, and the positions listed on her three

(3) and a half page resume do appear to involve writing as a Contracting Officer, I had to do

extensive findings and determinations, reports, letters, maintain status of hundreds of contractors in

my files. ROI, Ex. F5c, 6-9. And, from April 2003 through 2005, the Complainant notes that she

worked as a bank teller, business coordinator, jewelry sales person, and a procurement analyst. ROI,

Ex. F3 at 5. GSA changed my position to Procurement Analyst so they could take my contracts away

from me and not promote me to a Contract Administrator GS-1102-12, But, GSA promoted over

twenty employees to that position while I was at GSA. I was discriminated against, and I was not

treated in the same or similar way as the other employees who were promoted that are in protective

classes. As such, Ms. Bing wrongfully concluded that Complainant's experiences would only have

qualified her at the GS-9 level, and this evaluation was wrongfully confirmed by Ms. Thomas. ROI,

Ex. F5; Ex. F4; Ex. F3. I have already mentioned that I had to write many papers at Northwestern

University and formulate and prove or disprove hypothesis for many papers, as well as in my MBA

and my MPA program. I also have four certifications in contracting from the National Contract

Management Association (CPCM, CACM, CFCM, and SAS): Certified Professional Contracts

Manager, Certified Associate Contracts Manager, Certified Federal Contracts Manager, and

Simplified Acquisition Specialist.

Moreover, in comparison to the selectees, Complainant did not lack significant writing experience. Michael Greissel (White/Male/ DOB 1943), the selectee for Dallas, formerly worked as a magazine senior managing editor for approximately nine (9) years, a senior writer for Rotary International, an associate and managing editor at Century Communications, and had a Master's Degree in creative writing and a Bachelor's Degree in communications and journalism. ROI, Ex. F5(e)ii; Ex.F3 at 5. Mr. Greissel also taught English Composition for three (3) years. Id. Likewise, the selectee for New York, Charles J. Liverhant[$] (White/Male/DOB 1961) had a Law Degree from New York Law School and had worked as a freelance writer, a contributing author, a grant writer and a magazine editor for over fifteen (15) years. ROI, Ex. F(e)iii. Additionally, Ms. Sara Allinder-Mestre (White/Female/ DOB 1976), the selectee for Kansas City, had experience as a Policy Advisor coordinating inter-agency responses and preparing

_____

[$] This selectee's first name is Charles, not David as noted by the Investigator at Ex. FId.

briefing materials for SARS[9] and AIDS presentations and managed the production of five (5)

regional editors while serving as Senior Editor for Africa at the U.S. Department of State. ROT,

Ex. F5(e)i. Likewise, the Chicago selectee, Brian Moskal, also had an extensive writing career

including writing articles and manuals on natural disasters, insurance, executives, personal finance,

and marketing. ROI, Ex. F5(e)iv. Mr. Moskal also holds an undergraduate degree in Journalism

and served as Editor-in-Chief for his college newspaper. Id. Thus, the record clearly illustrates that

the selectees were superior candidates for this vacancy, and my credentials with two Masters'

degrees and a Contracting Officer, Contract Administrator, and Procurement Analyst's work

experience including writing legal documents, memos and letters, i.e.,termination letters,

modifications, Cure Notices, Show Cause letters, reports,  Memoranda for Government files,

Freedom Of  Information Act requests, Congressional Inquiries, my script for my play, my

speeches and presentations and my extensive writing in my education for three degrees in three

universities, and my other writing including my movie, play, and book were applicable and

relevant to this position, and is outstanding, and I am just as qualified as the other selectees, and I

should have been hired also, but, I was discriminated against on nine counts of discrimination..

### C.    **Complainant Establishes Evidence of Pretext.**

I can establish *a prima facie* case of discrimination on all counts of discrimination, and I

am able to show that the Agency's reasons for not referring me as a best qualified applicant for the

position of Writer/Editor, GS-1082 11/12 is discrimination against me on nine counts of

discrimination including Vets and XP. As noted above, Complainant's job experience in the

Writer/Editor fields may have been lower than that of the

Selectees, and that is HHS' opinion, but when an applicant is an Outstanding Scholar whether

considered unde the program or not, with two Masters' degrees and MBA with Distinction, and an

MPA gpa:  3.25/4.00, and her resume shows that she was a Contracting Officer, Contract

Administrator, and Procurement Analyst for the federal government for 18 ¾ years, and with her

credentials, she should not have been removed, and she has four certifications in contracting from

the NCMA, and she discussed her writing accomplishments in her essays in Quickhire, and she did

not thing it to be necessary to restate all her writing accomplishments again in her resume.

As such, she was wrongfully rated lower, but, her score was still 92.20, and there is one vacancy

positon left, and HHS should offer that position to me. It is definitely long enough that they have

not offered that Writer/Editor position to me, and the longer that they wait, the more damages I will

be entitled to including possibly punitive damages. I, offer evidence to rebut the Agency's

reasons, and I assert that I was discriminated against even though I am a member of several

protected classes. ROI, Ex. F2. I , the non-moving party have done more than simply show that

there is some doubt as to the material facts. 6. Thus, I have not failed to make the required showing.


## V. CONCLUSION

Viewing the facts most favorable to the Petitioner, her claims of discrimination based on

race, national origin, gender, religion, age and reprisal are supported by the record and must be

upheld. The Agency has not offered legitimate, non-discriminatory reasons for Complainant's non-

selection, and Complainant has shown that the Agency's proffered reasons were a pretext for

unlawful discrimination. Consequently, the Complainant is entitled to judgment as a matter of law,

and there is need for a hearing on all of the allegations including the thirteen issues of

discrimination. The Agency's, request for a decision without a hearing in its favor must be denied.


Respectfully submitted,

*Susanne Atanus*

Susanne Atanus

Ms. Susanne Atanus
9054 Buckingham Park Dr.
Des Plaines, IL 60016
Tel. (847) 298-2210