## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUSANNE ATANUS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-1078 (JDB) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES, | ) | |
| | ) | |
| **Agency.** | ) | |

## MOTION FOR SUMMARY JUDGMENT

Defendant, by and through undersigned counsel, hereby moves that summary judgment

be entered in its favor pursuant to Federal Rule of Civil Procedure 56.  In support hereof,

Defendant respectfully refers the Court to the memorandum of points and authorities statement

of material facts, and proposed order submitted herewith.

Dated: September 12, 2008          Respectfully submitted,

    /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney

    /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney

    /s/
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198   Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

## UNITED STATES DISTRICT COURT FOR
## THE DISTRICT OF COLUMBIA

| | |
|---|---|
| SUSANNE ATANUS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No.: 06-1078 (JDB) |
| | ) |
| | ) |
| U.S. DEPARTMENT OF HEALTH | ) |
| AND HUMAN SERVICES, | ) |
| | ) |
| Agency. | ) |

## STATEMENT OF MATERIAL FACTS AS TO WHICH THERE IS NO GENUINE DISPUTE

1. Plaintiff Susanne Atanus, who was not an employee of DHHS, applied for the position of Writer/Editor, GS-1082 11/12, which was advertised under Vacancy Announcement No. HHS-OIG-2004-0160. Exhibit 11, Plaintiff's Application.

2. Applications for the Writer/Editor position were submitted online, through the QuickHire system. Exhibit 5, Affidavit of Donna Thomas ("Thomas Aff."), at 2-3.

3. Plaintiff submitted her application on August 13, 2004. Exhibit 4, Affidavit of Susanne Atanus at 3.

4. The QuickHire system generated a score for each applicant based upon the applicant's responses to the online questionnaire. Exhibit 5, Affidavit of Donna Thomas ("Thomas Aff."), ¶ 8.; Exhibit 24, Excerpts from Deposition of Melinda Bing, at 18.

5. The QuickHire scores were computer-generated, and were not calculated by HR staff. Exhibit 5, Thomas Aff. at 2-3. In the QuickHire system, candidates provide responses to multiple choice questions, and the computer issues a score based on each candidate's objective responses. Id.; Exhibit 24, Bing Depo. at 17- 18, 103; Exhibit 25, Excerpts from

Deposition of Donna Thomas ("Thomas Depo.") at 60, 62.

6.  Melinda Bing, a Human Resources ("HR") Specialist for two and a half years, was assigned to the vacancy at issue in this case, determined the best qualified applicants, and issued the certificate of eligibles.  Exhibit 6, Affidavit of Melinda Bing ("Bing Aff.") ¶¶ 2, 6.

7.  David Shorts did not select candidates or prepare certificates of eligibles in connection with the Writer/Editor vacancy.  Exhibit 17, Excerpts from Deposition Transcript of David Shorts, at 15-16, 72.  Mr. Shorts was involved in overseeing the processing of Plaintiff's EEOC case only <u>after</u> the selection process was complete.  <u>Id.</u>

8.  Three methods of consideration were available for applicants for the Writer/Editor position: the Delegated Examining Unit ("DEU") Process, Merit Promotion Process ("Merit Promotion"), or the Non-Competitive Process ("Non-Competitive").  Exhibit 8, Vacancy Announcement, at F5a8 - F5a9.

9.  DEU was open to any individual, regardless of prior government experience.  <u>Id.</u> at F5a9; Exhibit 25, Excerpts from Deposition of Donna Thomas at 37 ("Thomas Depo.").

10. Merit Promotion was open to current federal employees in the career competitive service, or former federal employees with reinstatement eligibility.  Exhibit 8, Vacancy Announcement, at F5a8 - F5a9.

11. Non-Competitive was for current or former federal competitive service employees who were qualified for the position and previously held a position equal to or higher than the highest potential grade level of the advertised vacancy.  <u>Id.</u> at F5a9; Exhibit 25, Thomas Depo. at 37 - 38.

12.  The Office of Personnel Management Outstanding Scholar guidance explains that the

2

Outstanding Scholar Program may only be used for certain positions advertised at grades GS-5 and GS-7.  Exhibit 22.

13.  The vacancy at issue in this case was a GS-11/GS-12 position, and not a GS-5 or GS-7 position.  Exhibit 8.

14.  Applicants for the Writer/Editor position did not receive any additional Quickhire points based upon Outstanding Scholar eligibility.  Exhibit 6, Bing Aff. at 4.

15.  A "certificate of eligibles" was generated for four of the advertised locations: Dallas, Texas; Chicago, Illinois; New York, New York; and Kansas City, Missouri.  Exhibit 23, Certificates of Eligibles. The certificates of eligibles were referred to the selecting official(s) for those four locations.  Id. ¶ 8; Exhibit 6, Bing Aff. at 2-3.

16.  Each certificate listed the best qualified candidates for the relevant method of consideration. Exhibit 5, Thomas Aff., ¶¶ 8-9.

17.  Six candidates were referred for the DEU certificates.  Exhibit 23; Exhibit 6, Bing Aff. at 3. Those six individuals were the candidates with the six highest scores.  Exhibit 5, Thomas Aff. at 3.

18.  Plaintiff's application for the Writer/Editor position received a score of 92.2 (for the GS-11 level only).  Exhibit 6, Bing Aff. at 3.

19.  Plaintiff's score of 92.2 was not one of the top six (6) DEU highest scores.  Id.; Exhibit 5, Thomas Aff. at 4.  The lowest referred DEU score on the certificates was 96.10.  Exhibit 23.

20.  The SF-50 is a form that verifies a candidate's federal employment, to demonstrate his or her eligibility for Merit Promotion consideration.  Id.

21.  Plaintiff alleges that she sent her SF-50 to HR via facsimile.  Exhibit 4, Atanus Aff. at 2.

22.  While the vacancy remained open, Plaintiff's SF-50 form was not included in the application file maintained by DHHS HR staff.  Exhibit 6, Bing Aff., at 3.

23.  Four candidates were selected for the Writer/Editor position; Sara Alinder-Mestre, Michael Greissel, Brian Moskal, and Charles Liverhant.  Exhibit 5, Thomas Aff., ¶ 11.  All of the selectees were Caucasian; three (3) were male, one (1) was female, and they were ages: 58, 41, 28 (female) and 43.  Exhibit 7, Declaration of Melinda Bing, ¶ 8.

24.  One (1) selectee (Brian Moskal) had veteran status (XP) and his application was given additional points for Veteran's preference.  Id.

25.  Mr. Greissel, Moskal, and Liverhant were selected through the DEU process, and Ms. Mestre was selected from the Non-Competitive certificate.  Exhibit 23; Exhibit 6, Bing Aff., at 4-5.

26.  Plaintiff's application does not expressly state that she is Caucasian or white.  Exhibits 9, 11.

27.  Plaintiff's application does not expressly state that she is Assyrian.  Exhibits 9, 11.

28.  Plaintiff's application does not expressly state that she is Catholic and/or Christian.  Id.

29.  Plaintiff's application does not state that she had prior EEO activity at GSA.  Id.

30.  Applicants could complete a separate, voluntary survey to provide information regarding their race, ethnicity, sex, and disability status.  Exhibit 9.  That voluntary form stipulates that "[t]he information you provide will be used for statistical purposes only and will not in any way affect you individually."  Id.

31.  The voluntary survey for information regarding applicants' race, ethnicity, sex, and disability status does not request information regarding applicants' religion.  Id.  The Department of Health and Human Services ("DHHS") does not maintain data on the religion of employees or applicants.  Id. at 3.

4

32. At the time she applied for the Writer/Editor position, Plaintiff had no prior EEO activity

with DHHS.  Exhibit 28, Plaintiff's Response to Defendant's First Requests for Admission at

1.

33.  Plaintiff's resume does not state that she had filed a complaint of EEO discrimination

against GSA.  Exhibit 11; Exhibit 1, Deposition of Susanne Atanus ("Atanus Depo.") at 135,

142.

34.   Plaintiff never sent any DHHS employee a copy of her written complaint against GSA.

Exhibit 1, Atanus Depo. at 135, 142.

35.  Plaintiff did not discuss her prior EEO complaint against GSA with Donna Thomas or

Melinda Bing.  Id. at 144.

Dated: September 12, 2008                    Respectfully submitted,

                                                            /s/

                                             _____
                                             JEFFREY A. TAYLOR, D.C. BAR # 498610
                                             United States Attorney
                                                            /s/

                                             _____
                                             RUDOLPH CONTRERAS, D.C. BAR #434122
                                             Assistant United States Attorney
                                                            /s/

                                             _____
                                             ROBIN M. MERIWEATHER, D.C. Bar. # 490114
                                             Assistant United States Attorney
                                             555 Fourth St., N.W.
                                             Washington, D.C.  20530
                                             Phone: (202) 514-7198   Fax: (202) 514-8780
                                             Robin.Meriweather2@usdoj.gov

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SUSANNE ATANUS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No.: 06-1078 (JDB) |
| | ) | |
| | ) | |
| U.S. DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES, | ) | |
| | ) | |
| Agency. | ) | |

**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

<u>**SUMMARY**</u>

This is an employment discrimination case in which Plaintiff Susanne Atanus alleges that she was subjected to discrimination on the basis of her race and color (Caucasian/white), national origin (second generation Assyrian), gender (female), religion (Christian/Catholic), age (DOB 1958), non-veteran status, and reprisal when, on September 8, 2004, she was not placed on the best qualified list for the position of Writer Editor, GS-1082 11/12 under Vacancy Announcement No. HHS-OIG-2004-0160.  The evidence does not support those discrimination and retaliation claims.   Rather, Defendant's decision was well within the Department of Health and Human Service's ("DHHS") prerogative to manage its employment affairs, and Ms. Atanus cannot show any evidence of pretext, or discrimination <u>vel non.</u>

Ms. Atanus's application was not referred to a selecting official because her computer generated score of 92.2 was not among the six highest scores for applicants without government experience, and the Human Resources staff were not aware that she had submitted the paperwork

necessary for consideration as a former government employee (for whom the scoring threshold was lower).  The Human Resources specialist who prepared the lists of candidates for referral to selecting officials did not become aware that Ms. Atanus had submitted that paperwork until the EEO investigation of Ms. Atanus's claim had begun; at that point, the vacancy was closed and candidates had been selected.  On this record, the evidence does not support a finding that discrimination was the real reason for Ms. Atanus's non-selection.

Ms. Atanus's subjective assessment of her own qualifications and her speculation regarding DHHS's motives are not probative evidence, and do not create a material dispute of fact.  In any event, Ms. Atanus's qualifications and writing and editing experience were significantly lower than those of the four individuals selected for that position, and her resume did not support her characterization of her experience in response to the application's multiple choice questions.  Accordingly, summary judgment should be awarded to Defendant.

## FACTUAL BACKGROUND

### A.     Procedural History

On September 28, 2004, Ms. Atanus contacted a DHHS Equal Employment Opportunity counselor alleging that DHHS discriminated against her based on her race, national origin, gender, religion, age, veteran status, and reprisal when, on September 8, 2004, she was not considered for the Outstanding Scholarship Program and her score was not high enough to make the best qualified list for the position of Writer Editor, GS-1082 11/12 under Vacancy Announcement No. HHS-OIG-2004-0160, advertised from July 27, 2004 through August 17, 2004.

Ms. Atanus filed a formal EEO complaint of discrimination on December 29, 2004.  DHHS filed a Motion for a Decision Without a Hearing arguing in part that Plaintiff could not demonstrate that her non-selection was the result of discrimination or retaliation, and Ms. Atanus filed her own motion for summary judgment.  Exhibit 2, March 16, 2006 Decision.  The Administrative Judge entered judgment in favor of the Agency on May 8, 2006.  Id.  The Agency issued a Final Order on June 14, 2006 which notified Ms. Atanus of her appeal rights.  Exhibit 3. Ms. Atanus initiated this civil action[1] on June 13, 2006.

### B.    Facts Related To Plaintiff's Claims

Ms. Atanus, who was not an employee of DHHS, applied for the position of Writer/Editor, GS-1082 11/12, which was advertised under Vacancy Announcement No. HHS-OIG-2004-0160. Exhibit 11, Plaintiff's Application.  Applications were submitted online, through the QuickHire system.  Exhibit 5, Affidavit of Donna Thomas ("Thomas Aff.") at 2.  The QuickHire system generated a score for each applicant based upon the applicant's responses to the online questionnaire.  Id. at 2-3; Exhibit 24, Excerpts from Deposition of Melinda Bing ("Bing Depo.") at 18.  Melinda Bing, a Human Resources ("HR") Specialist for two and a half years, was assigned to this vacancy, determined the best qualified applicants, and issued the certificate of eligibles.  Exhibit 6, Affidavit of Melinda Bing ("Bing Aff.") at 1-2.

Three methods of consideration were available for applicants for the Writer/Editor position: the Delegated Examining Unit ("DEU") process, Merit Promotion process ("Merit Promotion"), or the Non-Competitive process ("Non-Competitive").  Exhibit 8, Vacancy

---

[1] Plaintiff's filing had a District Court caption, but no title, prayer for relief or numbered paragraphs.  The 19 pages of exhibits submitted with the complaint  included the EEOC Order Entering Judgment and the EEOC Decision which rejected Plaintiff's claims of discrimination.

3

Announcement, at F5a8 - F5a9.  DEU was open to any individual, regardless of prior

government experience.  Id. at F5a9; Exhibit 25, Excerpts from Deposition of Donna Thomas

("Thomas Depo.") at 37.  Merit Promotion was open to current federal employees in the career

competitive service, or former federal employees with reinstatement eligibility.  Exhibit 8,

Vacancy Announcement, at F5a8 - F5a9.  Non-Competitive was for current or former federal

competitive service employees who were qualified for the position and previously held a

position equal to or higher than the highest potential grade level of the advertised vacancy.

Exhibit 8, Vacancy Announcement, at F5a9; Exhibit 25, Thomas Depo. at 37 - 38.

One question on the application references the Outstanding Scholar program.  Exhibit 11

at 2.  However, the Office of Personnel Management Outstanding Scholar guidance explains that

the program may only be used for certain positions advertised at grades GS-5 and GS-7.  Exhibit

22.  Because Plaintiff applied for a GS-11 position in this case, the Outstanding Scholar program

does not apply to this vacancy.  Exhibit 6, Bing Aff. at 3-4.

A "certificate of eligibles" was generated for four of the advertised locations: Dallas,

Texas; Chicago, Illinois; New York, New York; and Kansas City, Missouri.  Exhibit 23,

Certificates of Eligibles.  Each certificate listed the best qualified candidates for the relevant

method of consideration.  Id.; Exhibit 5, Thomas Aff., at 2-3.  The certificates were referred to

the selecting official(s) for those four locations.  Id. at 3; Exhibit 6, Bing Aff. at 2-3.

In this case, six candidates were referred for the DEU certificates, i.e., the candidates

with the six highest scores.  Exhibit 5, Thomas Aff. at 3.  During the scoring process, Ms. Atanus

received a score of 92.2 (for the GS-11 level only), which was not one of the six highest DEU

4

scores, and, as such, she was not referred.  Id. at 4.[2]  The lowest referred DEU score on the
certificates was 96.10.  Exhibit 23.

Although Ms. Atanus's score of 92.2 was high enough to be referred on a Merit Promotion
Certificate, she was not considered under Merit Promotion while the vacancy announcement
remained open because her SF-50 form was not included in her application file.  Exhibit 6, Bing
Aff. at 3.   The SF-50 is a form that verifies a candidate's federal employment, to demonstrate
his or her eligibility for Merit Promotion consideration.  Id.  Due to an error, Ms. Atanus's SF-50
was not placed in the file with her application package.  Exhibit 26, Second Bing Aff. at 1-2;
Exhibit 4, Affidavit of Susanne Atanus at 2 (admitting that the fact that her SF-50 was not put in
the file was a "mistake" by HHS).  Melinda Bing first became aware of Ms. Atanus's SF-50
during the course of the investigation of Ms. Atanus's EEO complaint, when, in response to Ms.
Bing's EEO affidavit (which stated that Ms. Atanus did not submit an SF-50), Ms. Atanus
provided a fax cover sheet purportedly showing that she did in fact submit the SF-50.  Exhibit
26, Second Bing Aff. at 1-2; Exhibit 10, Standard Form 50.

Four candidates were selected for this vacancy announcement: Sara Alinder-Mestre,
Michael Greissel, Brian Moskal, and Charles Liverhant.  Exhibit 5, Thomas Aff. at 4.  All of the
selectees were Caucasian; three were male, one was female, and they were ages: 58, 41, 28 and
43.  Exhibit 7, Declaration of Melinda Bing at 3.  Additionally, one selectee (Brian Moskal) had
veteran status and his application was given additional points for Veteran's preference.  Id.  Mr.

----

[2] The number of referred candidates on a Certificate of Eligibles is determined by the
Service Level Agreement.  In this case it was the first six top scoring candidates.  Exhibit 5 at 3.

Greissel, Moskal, and Liverhant were selected through the DEU process, and Ms. Mestre was selected from the Non-Competitive certificate.  Exhibit 23; Exhibit 6, Bing Aff. at 4-5.

Ms. Atanus's application does not identify her race, gender, national origin, religion, age or prior EEO activity, and this information is not part of the selection process.  Exhibits 9, 11. Applicants could complete a separate, voluntary survey to provide information regarding their race, ethnicity, sex, and disability status.  Exhibit 9.  That voluntary form stipulates that "[t]he information you provide will be used for statistical purposes only and will not in any way affect you individually."  Id.  DHHS does not maintain data on the religion of employees or applicants. Exhibit 9 at 3.  Ms. Atanus alleges that DHHS could infer her identity from her name and information on her resume, but has not proffered any evidence that she provided her race, color, national origin, religion, or age, to DHHS on a voluntary survey or otherwise.

## **STANDARD OF REVIEW**

### **A.  Summary Judgment (Fed.R.Civ.P. 56)**

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Diamond v. Atwood, 43 F.3d 1538, 1540 (D.C. Cir. 1995); Molerio v. FBI, 749 F.2d 815, 823 (D.C. Cir. 1984).  Where no genuine dispute exists as to any material fact, summary judgment is required.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A genuine issue of material fact is one that could change the outcome of the litigation.  Id.  The party moving for summary judgment need not

prove the absence of an essential element of the nonmoving party's case.  Celotex, 477 U.S. at 325.

"The burden on the moving party may be discharged by 'showing' – that is, pointing out to the (Court) – that there is an absence of evidence to support the non-moving party's case." Id.  Once the moving party has met its burden, the non-movant may not rest on mere allegations, but must proffer specific facts showing that a genuine issue exists for trial.  See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  Federal Rule of Civil Procedure 56 requires the party opposing summary judgment to go beyond the pleadings, and by affidavits, depositions, answers to interrogatories or admissions set forth "specific facts showing that there is a genuine issue for trial."  Fed. R. Civ. P. 56(e); Celotex, 477 U.S. at 324; Banks v. C & P Tel. Co., 802 F.2d 1416 (D.C. Cir. 1986).  To avoid summary judgment, the plaintiff must state specific facts or present some objective evidence that would enable the court to find an entitlement to relief.

Summary judgment is appropriate "if the evidence [the nonmoving party submits] is merely colorable . . . or is not sufficiently probative . . . (T)he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."  Anderson, 477 U.S. at 252.  "Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, [the Rule 56] standard compels summary judgment if the non-moving party rests merely upon conclusory allegations, improbable inferences and unsupported speculation."  Spiegel v. Leavitt, 2005 WL 2402322, at 8 (D.D.C. 2005).  To defeat a summary judgment motion, the existence of specific, material evidentiary facts must be shown.  See Fed. R. Civ. P. 56(e) (the nonmoving

party may not rest on mere allegations but "must come forward with 'specific facts showing

there is a genuine issue for trial"); see also Burke v. Gould, 286 F.3d 513, 517-20 (D.C. Cir.

2002) (requiring a showing of specific, material facts); Hayes v. Shalala, 902 F.Supp. 259, 263

(D.D.C. 1995) (opposition to summary judgment must consist of more than mere unsupported

allegations or denials).

### B.    Disposition Of Discrimination Claims Under Title VII

In Fogg v. Gonzales, 492 F.3d 447 (D.C. Cir. 2007), the D.C. Circuit held, *inter alia*, that

the 1991 amendments to Title VII codified two alternative ways of establishing liability for

intentional discrimination: (1) a single motive theory requiring that the plaintiff establish that

discrimination was the "sole" or "but for" reason for the challenged employment action; and (2)

a "mixed-motive" theory requiring only that the plaintiff demonstrate that discrimination played

a "motivating part" or was a "substantial factor" in the employment decision.  Id. at 451.  Under

either theory, plaintiff must demonstrate discrimination by a preponderance of the evidence[1] and

may rely on direct or circumstantial evidence to meet that burden.  Desert Palace, Inc. v. Costa,

539 U.S. 90, 92-102 (2003).

In the absence of direct evidence, Ms. Atanus may attempt to establish that she was the

victim of intentional discrimination on the basis of her race, color, sex, and national origin by

relying on circumstantial evidence analyzed using the burden-shifting scheme first set forth in

---

[1]  "Preponderance of the evidence" means such evidence as, when weighed against that
opposing it, has the more convincing force that something is so.  Hopkins v. Price Waterhouse,
737 F. Supp. 1202 (D.D.C. 1990), aff'd 920 F.2d 967 (D.C. Cir. 1990); Metropolitan Stevedore
Company v. Rambo, 521 U.S. 121, 137 n.9 (1997).  "[W]hen the evidence is evenly balanced,
the [party with the burden of persuasion] must lose."  Id.

McDonnell-Douglas Corp. v. Green, 411 U.S. 792 (1973).[2]  Under that scheme, the plaintiff

must first, by a preponderance of the evidence, establish a prima facie case of discrimination.

See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993).  If the employee succeeds, the

employer then must introduce evidence of a legitimate, nondiscriminatory reason for its action.

See McDonnell Douglas, 411 U.S. at 802.  Once it is established that both parties have met their

respective burdens of production (*i.e.*, plaintiff by presenting a prima facie case and defendant by

producing a non-discriminatory reason for its actions), the burden shifting scheme becomes

irrelevant.  Hicks, 509 U.S. at 510.  Then, the plaintiff must establish, by a preponderance of the

evidence, that "race, color, religion, sex, or national origin was a motivating factor for any

employment practice."  Desert Palace, Inc., 539 U.S. at 101 (citing 42 U.S.C. § 2000e-2(m)).

     Alternatively, a plaintiff can meet the ultimate burden by demonstrating that the

defendant's legitimate, non-discriminatory reason is a pretext and that discrimination is the "but

for" reason for the challenged employment action.  St. Mary's Honor Center, 509 U.S. at 515-

518.  This is a more difficult standard than the requirement under Section 2000e-2(m) to show

that discrimination was a motivating factor.  In the single motive case Reeves v. Sanderson

Plumbing Products, Inc., 530 U.S. 133, 148 (2000), Justice O'Connor recognized occasions

where summary judgment would be appropriate:

> Certainly there will be instances where, although the plaintiff has
> established a prima facie case and set forth sufficient evidence to
> reject the defendant's explanation, no rational factfinder could
> conclude that the action was discriminatory.  For instance, an
> employer would be entitled to judgment as a matter of law if the
> record conclusively revealed some other, nondiscriminatory reason

---

[2]  Reliance on the McDonnell Douglas scheme for testing the viability of plaintiff's
circumstantial evidence is not limited to the "single-motive" theory of liability.  See Fogg, 492
F.3d at 445.

for the employer's decision, or if the plaintiff created only a weak
issue of fact as to whether the employer's reason was untrue
and there was abundant and uncontroverted independent evidence
that no discrimination had occurred.

Accord Weigert v. Georgetown University, 120 F.Supp.2d 1, 22 (D.D.C. 2000) (quoting same).

If the Defendant proffers a legitimate non-discriminatory reason for its adverse

employment decision, the McDonnell Douglas test is applied differently.  In such cases, "[t]he

McDonnell Douglas shifting framework effectively evaporates, and — the sole remaining issue

is discrimination or retaliation vel non."  Prince v. Rice, __ F. Supp. 2d ___, 2008 WL 348162,

at *5 (D.D.C. Aug. 14, 2008).  Specifically,

> [i]n a Title VII disparate-treatment suit where an employee has suffered
> an adverse employment action and an employer has asserted a
> legitimate, non-discriminatory reason for the decision, the district court
> need not- *and should not-* decide whether the plaintiff actually made
> out a prima facie case under *McDonnell Douglas*.  Rather, in
> considering an employer's motion for summary judgment or judgment
> as a matter of law in those circumstances, the district court must
> resolve one central question: Has the employee produced sufficient
> evidence for a reasonable jury to find that the employer's asserted non-
> discriminatory reason was not the actual reason and that the employer
> intentionally discriminated against the employee on the basis of race,
> color, religion, sex or national origin?

Brady v. Office of the Sergeant of Arms, United States House of Representatives, 520 F.3d 490,

495 (D.C. Cir. 2008); see Czekalski v. Peters, 475 F.3d 360, 364 (D.C. Cir. 2007) ("As the

Supreme Court has explained, once a defendant has proffered such a nondiscriminatory

explanation, it has 'done everything that would be required of [it] if the plaintiff had properly

made out a prima facie case'").

10

**D.      Disposition of Claims Under the Age Discrimination in Employment Act**

The Age Discrimination in Employment Act requires that "[a]ll personnel actions

affecting employees or applicants for employment who are at least 40 years of age . . . in

executive agencies . . . shall be made free from any discrimination based on age."  29 U.S.C.

§ 633a(a).  To prevail on a claim of age discrimination, a plaintiff bears the burden of

demonstrating, by a preponderance of the evidence, "facts sufficient to create a reasonable

inference that age discrimination was a determining factor in the employment decision."  Short

v. Chertoff, 555 F. Supp. 166, 171 (D.D.C. 2008).  In a non-selection case, a plaintiff must show

"(1) that she belongs to the statutorily protected age group; (2) that she applied and was qualified

for a job for which the employer was seeking applicants (i.e., the job sought was vacant); (3) that

despite her qualifications, she was rejected; and (4) that after her rejection the position was

filled, or the employer continued to seek applicants from persons of complainant's qualification

level." Oliver-Simon v. Nicholson, 384 F. Supp. 2d 298, 306 (D.D.C. 2005).

In the absence of direct evidence of age discrimination, ADEA claims are governed by

the burden-shifting analysis set forth in McDonnell Douglas Corp.  See Barnette v. Chertoff, 453

F.3d 513, 515 (D.C. Cir. 2006); Carter v. George Washington Univ., 387 F.3d 872, 878 (D.C.

Cir. 2004).  Although the D.C. Circuit has not addressed whether the Brady analysis discussed

supra governs claims of age discrimination, some judges within this District have held that it

does.  See Simpson v. Leavitt, 557 F. Supp. 2d 118, 127 n. 2 (D.D.C. 2008) (concluding Brady

should govern ADEA claims); Short v. Chertoff, 555 F. Supp. 2d 166  (D.D.C. 2008) (applying

Brady analysis to claim of race and age discrimination).  Given that Ms. Atanus's age

discrimination claim is premised upon the same selection decision as her Title VII claims,

11

Defendant will assume <u>arguendo</u> for purposes of this motion that the same analytical framework governs both sets of claims. Thus, once a legitimate non-discriminatory reason has been advanced, the central question will be whether the evidence supports an inference that Plaintiff's age was the real reason for the agency's decision.

<u>**ARGUMENT**</u>

**I.    ATANUS HAS NO COGNIZABLE CLAIM OF DISCRIMINATION ON THE BASIS OF HER STATUS AS A "NON-VETERAN."**

Atanus alleges that she was discriminated against because she was a "non-Veteran." Exhibit 1, Atanus Depo. at 156. When deposed, she asserted that there was "too much emphasis" on veteran status, and that veterans' preferences were discriminatory as applied to her application. <u>Id.</u> at 156-57. However, veteran status simply is not a recognized protected class under Title VII. <u>See</u> 42 U.S.C. § 2000e-16(a); <u>see generally</u> <u>Kilby-Robb v. Spellings</u>, 522 F. Supp. 2d 148, 155 (D.D.C. 2007) (defining protected classes). Instead, veterans have long been eligible for preferences in federal employment. <u>See</u> 5 U.S.C. § 2108 (defining veterans as "preference eligible"). Atanus's dissatisfaction with those rules' impact on her employment prospects does not bring this claim within the scope of Title VII. The discrimination claims premised upon veterans' preferences are unfounded and should be dismissed.

**II.    THE EVIDENCE DOES NOT SUPPORT ATANUS'S CLAIMS OF RACE, COLOR, SEX, NATIONAL ORIGIN, AGE, OR RELIGIOUS DISCRIMINATION.**

This is a disparate treatment case, and Ms. Atanus's non-selection for the Writer/Editor position is an adverse action. Thus, under <u>Brady</u>, the central and dispositive question is whether she has proffered evidence that would permit a reasonable jury to find intentional discrimination. 520 F.3d at 495. When assessing that issue, it bears noting that "Title VII . . . does not authorize

12

a federal court to become 'a super-personnel department that reexamines an entity's business decisions.'" Barbour v. Browner, 181 F.3d 1342, 1346 (D.C. Cir. 1999) (quoting Dale v. Chicago Tribune Co., 797 F.2d 458, 464 (7th Cir. 1986)).  To the contrary, a court "may not 'second-guess an employer's personnel decision absent demonstrably discriminatory motive.'" Fischbach v. District of Columbia Dep't of Corrections, 86 F.3d 1180, 1183 (D.C. Cir. 1996) (quoting Milton v. Weinberger, 696 F.2d 94, 100 (D.C. Cir. 1982)).  In this case, the evidence does not support an inference that DHHS's decision not to place Ms. Atanus on the certificate of eligibles, and to select other candidates for the Writer/Editor position, was based upon discriminatory motive.

### A.   DHHS Has Articulated Legitimate, Nondiscriminatory Reasons For Its Decision to Select Other Applicants for the Writer/Editor Position.

Ms. Atanus's name was not included on a certificate of eligibles for three reasons: (1) her score was below the threshold for consideration under the DEU process; (2) Ms. Bing was unaware of the SF-50 which could have made Ms. Atanus eligible for Merit Promotion consideration; and (3) Ms. Atanus was not eligible for non-competitive status.  See Exhibit 6, Bing Aff. at 2-3.  Those decisions had nothing to do with Atanus's race, color, sex, age, religion, or national origin.

### 1.   Plaintiff's Score Was Too Low To Be Referred or Selected under DEU Authority.

It is undisputed that Ms. Atanus received a score of 92.20 (for the GS-11 level only). Exhibit 4, Affidavit of Susanne Atanus ("Atanus Aff.") at 7; Exhibit 6, Bing Aff. at 3.  That was not one of the six highest scores referred on the DEU certificate, the lowest of which was 96.10. Exhibit 5, Thomas Aff. at 4.  Given that Atanus was not one of the six highest-scoring DEU

applicants, DHHS's HR staff would not have reviewed her application after the computer

scoring was complete.  Id. at 3-4; Exhibit 24, Bing Depo. at 99-100.


Plaintiff's assertion that her application was unfairly scored due to her membership in

protected classes reflects a fundamental misunderstanding of the Quickhire system and its use in

this selection process.  Quickhire is a system developed by Monster.com and used by DHHS as

well as many other federal agencies.  Exhibit 5, Thomas Aff. at  2-3.  Candidates provide

responses to multiple choice questions, and the computer issues a score based on each

candidate's objective responses.  Id.; Exhibit 24, Bing Depo. at 17- 18, 103; Exhibit 25, Excerpts

from Deposition of Donna Thomas ("Thomas Depo.") at 60, 62.  Candidates also may provide

essay responses, but those are used to support the objective response and do not contribute to

ones's score.  Exhibit 5, Thomas Aff., at 3.  Candidates are not scored by a panel and are not

compared to one another during the scoring process.  Id.

The Quickhire questionnaire used to generate scores for the Writer/Editor candidates did

not record applicants' race, color, national origin, sex, religion, or age.  See Exhibit 8, Vacancy

Announcement.  As with other vacancies, there was a voluntary applicant background survey

attached for the applicant to complete.  Exhibit 9.  Although this survey asks for information on

age, race, ethnicity, sex and disability, it does not ask for the name of the applicant or his/her

religion.  Id.  Further, although this data can be accessed in a database, it cannot produce

information for a specific applicant, but rather produces demographic data for each vacancy

announcement.  Id.  In sum, the computer system did not access any race, ethnicity, sex, or age

data when generating scores, let alone use that as a factor to calculate a score.

14

The record evidence belies Ms. Atanus's assertion that DHHS gave applicants preferential treatment in the form of additional points because of their membership in protected classes (specifically non-white, non Christian/Catholic candidates).  Exhibit 8 includes a "Weight and Screen Out Report" which demonstrates the point value of the responses to the Quickhire questionnaire at issue in this case.  No question asks the candidate to identify his or her membership in any of those protected classes, and no question assigns points on that basis.  See Exhibit 8.  Ms. Bing testified that, to her knowledge, candidates were not given any additional points or consideration based on their membership in any protected class.  Exhibit 26, Second Bing Aff. at 3; Exhibit 6, Bing Aff. at 4.  Similarly, Ms. Thomas, who reviewed the materials, noted that candidates are not given extra points for affirmative action status.  Exhibit 5, Thomas Aff. at 4.  The HR staff simply does not see any affirmative action or demographic information about the candidates, and contrary to Ms. Atanus's beliefs, this information is not part of the selection process.  Id.; Exhibit 9.  Further, it is difficult to imagine how the DEU selectees — all of whom are white males — would have been hired under a scoring system that gave extra points to minorities.

However, candidates are entitled to earn extra points for veteran status.  Exhibit 5, Thomas Aff. at 4.  In this case, one of the candidates referred and eventually selected, Brian Moskal, earned additional points for his veteran status.  Id.  This action was appropriate and in no way discriminatory against Plaintiff.  Id.  Additionally, as noted supra, veteran status is not a recognized protected class under Title VII.

### 2.    Ms. Atanus Was Not Considered Under Merit Promotion Because DHHS Did Not Believe She Had Submitted An SF-50.

Although Atanus's score of 92.2 was high enough to be referred on a Merit Promotion Certificate, she was not considered under Merit Promotion because her SF-50 form was inadvertently left out of her application file.  Exhibit 6, Bing Aff. at 3; Exhibit 26, Second Bing Aff. at 1-2.  The SF-50 was not included in the application file due to an error.  Exhibit 26, Second Bing Aff. at 2.  The SF-50 form provides proof of federal employment, and a candidate who does not submit that form is not eligible for Merit Promotion consideration.  Id.  Ms. Bing's determination that Ms. Atanus could not be considered without the SF-50 was consistent with the Vacancy Announcement, which expressly required submission of an SF-50.  Id.

### 3.    Atanus Was Not Considered As A Non-Competitive Candidate Because She Was Not Eligible For That Status.

The information submitted in Ms. Atanus's application did not make her eligible for non-competitive selection.  Exhibit 6, Bing Aff. at 4.  As noted, non-competitive status was available for current or former federal employees who were qualified for the position and previously held a position equal to or higher than the highest potential grade level of the advertised vacancy.  Exhibit 8, Vacancy Announcement at F5a9; Exhibit 25, Thomas Depo. at 37 - 39.  Atanus's application does not request non-competitive consideration.  Exhibit 11.  Further, her lack of prior experience at the GS-12 level would make her ineligible for non-competitive status as a Writer/Editor, because the Writer/Editor position was advertised at a GS-11 and GS-12 level, and had promotion potential to GS-12.  See Exhibit 25, Thomas Depo. at 37-39 (explaining non-competitive requirements); Exhibit 10 (SF-50 showing Atanus reached GS-11 level at GSA).

16

### 4.    The Outstanding Scholar Program Is Irrelevant.

Plaintiff also asserts that she was qualified for the position of Writer/Editor GS-1082 11/12 and should have received a score of 100 points and non-competitive status because of her alleged eligibility for the Outstanding Scholar Program.  Exhibit 4, Affidavit of Susanne Atanus. Donna Thomas, Lead HR Specialist for the Rockville HR Center, DHHS, explained that this vacancy does not fall under the Outstanding Scholar program because it was a GS-11/12 position and Outstanding Scholar vacancies are for GS 5/7 positions.  Exhibit 5, Thomas Aff. at 5.  The Office of Personnel Management Outstanding Scholar guidance also states that the program may be used for certain positions at grades GS-5 and GS-7.  Exhibit 22.  In any event, the program does not give competitive candidates additional points.  Id.  Apparently Plaintiff misunderstood the realm of the Outstanding Scholar program and incorrectly assumed that it applies to higher level positions like GS-11 and GS-12 positions and would increase her score.  Neither the record nor the program guidelines support those assumptions.

Moreover, Plaintiff has not established that she would be eligible for the Outstanding Scholar program even if it were applicable to this position.  That program is open to individuals with an undergraduate GPA of 3.5 or higher.  Exhibit 22 at 2.  Plaintiff's resume lists her GPA for graduate degrees, but not her undergraduate GPA.  Exhibit 11.

In sum, Plaintiff cannot demonstrate that she was qualified for the Writer/Editor position and merely supports her arguments with personal speculation and conclusions.  See Harding v. Gray, 9 F.3d 150, 154 (D.C.Cir. 1993) (plaintiff "must support his allegations of superior qualifications with facts in the record; a mere unsubstantiated allegation of superior qualifications creates no genuine issue of fact and will not withstand summary judgment").  As

17

demonstrated above, the four selectees for the Writer/Editor position each had extensive writing and editing experience and were all well qualified for the position.

    **B.**    **The Evidence Does Not Support an Inference That Atanus's Race, Color, Sex, National Origin, Age, or Religion Was the Real Reason That She Was Not Hired**.

Given that DHHS has articulated legitimate non-discriminatory reasons for its selection decisions, Ms. Atanus must demonstrate that a reasonable jury could conclude that the decision "was made for a discriminatory reason," i.e., that Defendant's reasons were merely a pretext for illegal discrimination.[3] Lathram v. Snow, 336 F.3d 1085, 1088 (D.C. Cir. 2003); see Reeves, 530 U.S. at 143-144; Hicks, 509 U.S. at 506-11.  To prove that an employer's explanations are pretextual, the plaintiff must show "both that the reason was false, and that discrimination [or retaliation] was the real reason." Weber v. Battista, 494 F.3d 179, 186 (D.C. Cir. 2007); see Hicks, 509 U.S. at 515.  Thus, "[t]he ultimate question is whether the employer intentionally discriminated, and proof that 'the employer's proffered reasons is unpersuasive, or even obviously contrived, does not necessarily establish that the plaintiff's proffered reason . . . is correct." Hicks, 509 U.S. at 524; see also Carpenter v. Federal Nat'l Mortgage Ass'n, 165 F.3d 69, 72 (D.C. Cir. 1999) (if plaintiff merely shows that the legitimate nondiscriminatory reason offered by the employer is a pretext for a decision intending to cover up an unsavory reason that is not illegal under the anti-discrimination law, summary judgment for the employer is appropriate).  Ms. Atanus  bears the ultimate burden of persuasion on this issue.  See Burdine, 450 U.S. at 253.  On the facts of this case, she cannot possibly meet that burden.

---

    [3]  As noted supra, although it is not clear whether Brady applies to claims of age discrimination as well as Title VII  claims, Defendant will assume arguendo for purposes of this motion that the same analytical framework governs both sets of claims.

### 1. Race, Color, And Sex.

As explained <u>supra</u>, the Quickhire scores were calculated by the computer without human intervention, and the computer system could not link applicants' race, color, or sex to their applications, or factor those aspects of their identity into the score. Further, Melinda Bing, the HR specialist assigned to this vacancy, was not aware of Ms. Atanus's race and color until she was interviewed in connection with Ms. Atanus's EEO complaint — <u>i.e.</u>, after the certificate of eligibles was prepared and the selections were made. Exhibit 24, Bing Depo. at p. 58, ll. 13-22; Exh. 26, Second Bing Aff. at 3. Likewise, DHHS HR employees were not aware of Ms. Atanus's race, color, sex, national origin, age, or religion when they inadvertently left the SF-50 out of the application package and Ms. Atanus's application file. Second Bing Aff. at 1-2. In light of those facts, there is no evidence which suggests that those aspects of Ms. Atanus's identity motivated the agency's selection decisions. <u>See</u> <u>Roberts v. Segal Co.</u>, 125 F. Supp. 2d 545, 548 (D.D.C. 2000) (concluding no inference of discriminatory intent could be drawn when challenged decision was made before applicants' race was known).

In any event, the identity of the selectees seriously undermines any inference of race, color, or sex discrimination. Like Ms. Atanus, all of the selectees were Caucasian and white, and one of the selectees was a female. Exhibit 7. Thus, she cannot show that DHHS's decision to select those applicants was based upon any difference between her race, color, and sex and the selectees', and the applicants' racial and gender identity "cuts against" her claims of race and sex discrimination. <u>Oliver-Simon v. Nicholson</u>, 384 F. Supp. 2d 298, 314 (D.D.C. 2005) (finding fact that selectee was the same race and sex as plaintiff "cuts against" her claim of race and sex discrimination); <u>see</u> <u>Turner v. District of Columbia</u>, 383 F.Supp.2d 157, 176 (D.D.C. 2005) ("It

is nonsensical to draw an inference of gender discrimination . . . . from an action allegedly directing one female employee to perform certain tasks instead of another female."); Prince, 2008 WL 3486132, at *7 (noting that three selectees were the same race as plaintiff and finding no reasonable inference of race discrimination).  For all those reasons, there is no evidence that Ms. Atanus's race, color, and/or sex were the "real reason" for DHHS's decision not to hire her, and it would be unreasonable for a juror to infer that discrimination motivated that selection decision.

### 2.  National Origin.

With respect to her national origin claim, Ms. Atanus simply asserts that due to her background as a second generation Assyrian, she was not selected for the position.  Exhibit 4 at 9.  However, both Ms. Atanus and her parents were born in the United States.  Exhibit 1, Atanus Depo. at 8.  Plaintiff  has never lived in the country formerly known as Assyria or anywhere outside of the United States.  Id. at 113-14.  Therefore her assertion of a national origin discrimination claim premised upon an alleged "Assyrian" national origin is dubious.  See Corwin v. B'Nai B'rith Senior Citizen Housing, Inc., 489 F. Supp. 2d 405, 409 (D. Del. 2007) ("'National origin' usually refers to the 'country where a person was born or, more broadly, the country from which his or her ancestors came.").

Further, Atanus has presented no evidence that her alleged Assyrian background was the "real reason" for her non-selection.  She maintains that the Assyrian people, from whom she claims to descend, were run "out of their villages" by "mean, wicked people" "who are not Christian Catholics."  Exhibit 1, Atanus Depo. at 113.  However, there is no evidence that links the alleged historical and religious plight of the Assyrian people to Atanus's non-selection for

the DHHS Writer/Editor position.  Her application in no way identifies her as being a descendant of the Assyrian people, Exhibit 11, and she has not shown that the Quickhire system or Ms. Bing was aware of her heritage when the certificate of eligibles was prepared and candidates were selected for the Writer/Editor position.  Likewise, there is no evidence that DHHS was aware of Ms. Atanus's heritage when they inadvertently left her SF-50 out of the application file.  In short, Ms. Atanus has not shown any evidence that her national origin affected her Quickhire score, the processing of her application, or the  placement on the certificates of eligibles, or that DHHS was even aware of her national origin when those decisions were made.

### 3.  Religion

The record is similarly devoid of evidence that Atanus's religion was the reason that DHHS did not place her on the certificates of eligibles or select her for the Writer/Editor position.  Again, Ms. Atanus cannot demonstrate that the Agency was aware of her religion when her application was scored, her application file was prepared, and the certificates were referred to selecting officials.  DHHS does not collect or maintain information on the religion of its employees or applicants, and as such, religion was not a factor used in evaluating applicants for the Writer/Editor position.  Exhibit 9 at 3; Exhibit 6, Second Bing Aff. at 3.  Ms. Atanus concedes that her religion is not stated on her resume, and that the word "Catholic" does not appear on her resume.  Exhibit 1, Atanus Depo. at 70-71.  When asked in her deposition how she felt she was discriminated against based on her religion, Ms. Atanus related that she was discriminated against because her name is Catholic.[4]  Id. at 70-71.  However, there is no

---

[4] Ms. Atanus also asserts that Jewish people are given preferential treatment throughout the Federal government; she bases this opinion on her belief that many of her former co-workers who were hired and given raises were Jewish.  Exhibit 1, Atanus Depo. at 109.

evidence that Melinda Bing believed "Atanus" was a Catholic name.  Nor is there any evidence

to support Ms. Atanus's conclusory and speculative assertion that Ms. Bing "knew" that "Atanus

is not a Jewish name."  Exhibit 1, Atanu Depo. at 106.

Ms. Atanus's assertion that Jewish candidates were given preferential treatment is

equally unsubstantiated.  She alleges that all of the selectees were hired because of their Jewish

names; specifically, Ms. Atanus testified that "[t]here was a prima facie case of discrimination

against me because the four [selectees]: Alinder Mestry [sic], Liverhott [sic], Grizzell [sic] and

Moscul [sic] have Jewish names.[5]  And that was their [Human Resources] intention to hire

Jewish people to fulfill their affirmative action plans."  Exhibit 1 at 60, 65.  However, the record

shows that those unsupported allegations regarding the selectees' religious beliefs are mistaken.

Selectee Brian Moskal grew up Catholic and identifies his current religious beliefs as Zen

Buddhist.  Exhibit 12, Moskal Depo. at 8-9.  Selectee Sara Allinder-Mestre describes herself as

Christian.  Exhibit 13, Deposition of Sara Allinder-Mestre at 11.  Selectee Michael Greissel

relates that he was raised Catholic, the same religion that Plaintiff says she is.  Exhibit 14,

Deposition of Michael Greissel at 15.  Selectee Charles Liverhant testified that he is unaffiliated

with any religion.  Exhibit 15, Deposition of Charles Liverhant at 25.

### 4.    Age.

To support her age discrimination claim, Ms. Atanus simply makes a conclusory

assertion that "[m]y age is over 40 and I am in a protected class."  Exhibit 4, Atanus Aff. at 6.

Like other aspects of her identity, Ms. Atanus's age was <u>not</u> noted on her application.  Exhibit

11.  Moreover, even if such information were contained on her application, that type of data,

---

[5] Herein, Ms. Atanus also asserts that "[t]hey [Human Resources employees] know
Atanus is not a Jewish name."  Exhibit 1, Atanus Depo. at 60.

including all other "EEO" data, is immediately encrypted and not associated with a specific

applicant. Exhibits 9, 16. Neither the HR staff nor the selecting official can associate any of the

encrypted data with a specific individual. Exhibit 16 at 8. Specifically, under the Frequently

Asked Questions, DHHS informs applicants that they have the "option to voluntarily and

confidentially enter demographic information when initially registering in HHS Careers. To

ensure that the candidate's anonymity, the data is immediately encrypted- it cannot be tied to a

specific person." Id.

Moreover, the record shows that three of the four selectees were, like Ms. Atanus, over

40. Exhibit 7. Indeed, one of these selectees was 58, and the other two were essentially

Plaintiff's age (43 and 41). Id. Therefore, the evidence does not support an inference that

Plaintiff would have been selected "but for" her age.

In sum, outside of her unsupported allegations, Ms. Atanus has pointed to no evidence

which would establish that her race, gender, national origin, religion or age were known by

DHHS officials or were factors in the agency's decision not to consider her for the Writer/Editor

vacancy at issue in this complaint. Ms. Atanus's job experience in writing and editing was

below that of the selectees and as such, she was rated lower. To prevail on her discrimination

claims, Plaintiff must do more than offer conclusory allegations or simply state that there is some

metaphysical doubt as to the material facts. Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio

Corp., 475 U.S. 574, 596, 106 S.Ct. 1348 (1986). Because she has failed to make the required

showing, summary judgment should be granted for the Defendant.

## III.     THE EVIDENCE DOES NOT SUPPORT ATANUS'S RETALIATION CLAIM.

Ms. Atanus alleges that she had previous EEO activity while she worked for GSA, and that her non-selection for the Writer/Editor position at DHHS was reprisal for that prior EEO activity.  Given that the non-selection is an adverse action, and DHHS has offered a non-retaliatory reason for its decision, the Brady rule applies.  Pardo-Kronemann v. Jackson, 541 F. Supp. 2d 210, 215-16 (D.D.C. 2008) , 541 F. Supp. 2d at 215-16 (holding Brady principle applies to retaliation claims).  Thus, this Court must determine whether Ms. Atanus has produced sufficient evidence for a reasonable jury to find that Defendant's asserted non-retaliatory reason for the action is a pretext for retaliation.  In making that determination, this Court must consider whether a jury could infer retaliation from:  (1) Plaintiff's *prima facie* case; (2) any evidence that she may present to attack Defendant's stated non-retaliatory reason for her non-selection; and (3) any further evidence of retaliation that may be available to Ms. Atanus.  Short, 2008 WL 2174856, at *3 (citing Waterhouse v. District of Columbia, 298 F.3d 989, 992-93 (D.C. Cir. 2002); Aka v. Washington Hosp. Ctr., 156 F.3d 1284, 1289 (D.C. Cir. 1998)).

Ms. Atanus's unsuccessful EEO claim against the GSA was "protected activity" for purposes of Title VII.[6]  However, DHHS has presented legitimate non-discriminatory reasons for not placing Ms. Atanus on the certificate of eligibles and for selecting other candidates.  See Part II.A supra.  There is no evidence to support Ms. Atanus's conclusory assertion that her  prior protected activity concerning her GSA employment was the real reason that DHHS made those decisions.

---

[6] Specifically, when asked about her previous termination from GSA, Ms. Atanus alleged that she was wrongfully removed because her GSA supervisors were "following the devil," and her Christian faith bothered them.  Exhibit 1, Atanus Depo. at 37, 127. However, the Seventh Circuit has rejected those claims of race, color, national origin, sex, and religious discrimination, awarding summary judgment to GSA.  See Atanus v. Perry, 520 F.3d 662 (7th Cir. 2008).

There can be no retaliatory intent unless the employer has knowledge of the employee's protected activity.  See Jones v. Bernanke, Chairman of the Board of Governors of the Federal Reserve System, 538 F.Supp.2d 53, 64 (D.D.C.2008) (holding that employee failed to show that his direct supervisors knew about his protected activity prior to taking adverse employment action against him and the employee could not prove a retaliatory motive absent supervisors' knowledge of his protected activity); Mason v. DaVita, Inc., 542 F. Supp. 2d 21, 31 (D.D.C. 2008) ("In order to show causation, a plaintiff must show that the official responsible for the alleged retaliatory act had knowledge of the protected activity.").  In this regard, Ms. Atanus admits that at the time she applied for the position, she never told Melinda Bing , the HR specialist involved in the review of Writer/Editor applications, about her prior EEO activity at GSA.  Exhibit 1, Atanus Depo. at 144.  Ms. Atanus also admits that her resume does not state that she had filed a complaint of EEO discrimination against GSA, and that she never sent any HHS employee a copy of her written complaint against GSA.  Id. at 135, 142.  Accordingly, there is no evidence that the deciding officials  knew about Atanus's protected activity at the time her application was scored and the certificate of eligibles was prepared.

Ms. Atanus maintains that she informed Mr. David Shorts, EEO Director, Office of the Secretary, DHHS, of her prior EEO activity.  Exhibit 4, Atanus Aff. at 2.  However, Mr. Shorts, a former Agency EEO official, was not an HR official or the selecting official in this case; instead, he was involved in overseeing the processing of Ms. Atanus's EEOC case only after the selection process was complete.  Exhibit 17, Deposition Transcript of David Shorts, at 15-16, 72.  As such, Ms. Atanus has failed to show that her alleged prior EEO activity at a different Federal agency played any role in her non-selection or that any DHHS employee was aware of that

25

activity at the time (s)he evaluated her application.   Moreover, even if DHHS had known about

Atanus's prior EEO activity, there is no evidence that any such knowledge was causally linked to

her non-selection.

## IV. THE STRENGTH OF THE SELECTEES' QUALIFICATIONS FURTHER UNDERMINES ANY INFERENCE OF DISCRIMINATION.

As explained supra, Ms. Atanus did not make the certificate of eligibles, and therefore,

while the vacancy was open, the selecting officials did not interview her or compare her

qualifications to those of the selectees.  Instead, Ms. Atanus was not referred because her

computer-generated score was too low for DEU consideration, HR staff inadvertently failed to

put the SF-50 in Ms. Atanus's file, and she was not eligible for Non-Competitive consideration.

However, in light of Ms. Atanus's assertion that the selectees "weren't selected on their writing

ability and experience alone," Exhibit 4, Atanus Aff. at 8, and that she was more qualified than

the selectees, Exhibit 1, Atanus Depo. at 108, a brief discussion of the selectees' qualifications

relative to Ms. Atanus's seems appropriate.

The selectees were all highly qualified for the Writer/Editor position and had significant

experience.  The Writer/Editor position required at least 52 weeks of specialized experience in

writing and editing or duties directly related to that position.  Exhibit 24, Bing Depo. at 35-37.

Michael Greissel (White/Male/ DOB 1943), the selectee for Dallas, formerly worked as a

magazine senior managing editor for approximately nine years, a senior writer for Rotary

International, and an associate and managing editor at Century Communications.  Exhibit 18

(Greissel Application); Exhibit 7.  Mr. Greissel also taught English Composition for three (3)

years.  Id.  Likewise, the selectee for New York, Charles J. Liverhant[7] (White/Male/DOB 1961) had a Law Degree from New York Law School and had worked as a freelance writer, a contributing author, a grant writer and a magazine editor for over fifteen  years.  Exhibit 19 (Liverhant Application); Exhibit 5, Thomas Aff. at 5; Exhibit 7.  Sara Allinder-Mestre (White/Female/ DOB 1976), the selectee for Kansas City, had experience as a Policy Advisor coordinating inter-agency responses and preparing briefing materials for SARS[8] and AIDS presentations and managed the production of five regional editors while serving as Senior Editor for Africa at the U.S. Department of State.  Exhibit 20 (Mestre Application); Exhibit 7. Likewise, the Chicago selectee, Brian Moskal (White/Male/DOB 1946), also had an extensive writing career including writing articles and manuals on natural disasters, insurance, executives, personal finance, and marketing.  Exhibits 7, 21.  Mr. Moskal also holds an undergraduate degree in Journalism; served as Editor-in-Chief for his college newspaper; and has won seven regional or national writing awards in his career.  Exhibit 21; Exhibit 12, Excerpts from Deposition of Brian Moskal at 35.

In contrast, Ms. Atanus's resume did not demonstrate that level of experience.  Indeed, the resume did not support the experience listed on her Quickhire application responses, and the prior positions listed on her three and- a- half page resume do not even appear to involve writing, Exhibit 11 at 6-9.  For example, from April 2003 through 2005, Ms. Atanus notes that she worked as a bank teller, business coordinator, jewelry sales person, and a procurement analyst. Id. at 6.  Before these brief positions, Ms. Atanus states that she was employed by the General

---

[7] This selectee's first name is Charles, not David as noted by the EEO Investigator at Exhibit 7, pg. 1.

[8] SARS stands for Severe Acute Respiratory Syndrome.  See Exhibit 20.

Services Administration ("GSA") from 1984 until July 7, 2003.  Exhibit 1, Atanus Depo. at 27.

Her job duties at GSA included ensuring purchase orders were timely delivered, awarding

contracts and responding to contractor's emails.  <u>See</u> <u>id.</u>; Exhibit 11.  Notably, Ms. Atanus's

lengthy description of her GSA duties does not include writing or editing articles, reports, or any

of the other items she now claims to have written.  <u>See</u> Exhibit 11.  In sum, although Ms. Atanus

contends that she has superior qualifications for the position, her own resume demonstrates that

she lacks substantial writing and editing experience, a key function of the Writer/Editor position

at issue in this case.

## <u>CONCLUSION</u>

Viewing the facts in the light most favorable to Plaintiff, her claims of discrimination

based on race, color, national origin, sex, religion, age and reprisal are unsupported by the record

and Defendant is entitled to judgment as a matter of law.  Accordingly, Defendant respectfully

requests that the Court GRANT Defendant's Motion for Summary Judgment.

Dated: September 12, 2008                    Respectfully submitted,

        /s/
JEFFREY A. TAYLOR, D.C. BAR # 498610
United States Attorney


        /s/
RUDOLPH CONTRERAS, D.C. BAR #434122
Assistant United States Attorney


        /s/
ROBIN M. MERIWEATHER, D.C. Bar. # 490114
Assistant United States Attorney
555 Fourth St., N.W.
Washington, D.C.  20530
Phone: (202) 514-7198   Fax: (202) 514-8780
Robin.Meriweather2@usdoj.gov

**UNITED STATES DISTRICT COURT FOR**
**THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **SUSANNE ATANUS,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )    **Civil Action No.: 06-1078 (JDB)** |
| | ) |
| | ) |
| **U.S. DEPARTMENT OF HEALTH** | ) |
| **AND HUMAN SERVICES,** | ) |
| | ) |
| **Agency.** | ) |

ORDER

Upon consideration of Defendant's Motion for Summary Judgment, it is this

_____ day of _____,

ORDERED that Defendant's Motion be and hereby is GRANTED.

SO ORDERED.

_____
United States District Judge