# EXHIBIT 2

# U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
## WASHINGTON FIELD OFFICE
### 1801 L Street, N.W., Suite 100
### Washington, D.C. 20507-1002

| | |
|---|---|
| Susanne Atanus,<br>    Complainant, | )<br>)<br>)    EEOC No. 100-2005-00784X |
| | )    Agency No. OSH-008-05 |
| v. | )<br>) |
| Tommy G. Thompson,<br>U.S. Department of Health and Human Services,<br>    Agency. | )<br>)<br>)<br>) |

## ORDER ENTERING JUDGMENT

For the reasons set forth in the enclosed Decision dated March 16, 2006, judgment in the above-captioned matter is hereby entered. A Notice To The Parties explaining their appeal rights is attached to the Decision.

This office is also enclosing a copy of the hearing record (documents generated during the hearing process) for the agency's EEO office only. This office will hold the report of investigation for sixty days, during which time the agency may arrange for its retrieval, by calling Tanya Stanfield at (202) 419-0716. If we do not hear from the agency within sixty days, we will destroy our copy of these materials.

For timeliness purposes, it shall be presumed that the parties received the foregoing Decision within five (5) calendar days after the date they were sent *via* first class mail.

It is so ORDERED.

Date: **MAY 0 8 2006**

Gladys O. Collazo
Administrative Judge

TO:

Bonita V. White, Director
Equal Employment Opportunity Programs Group
Department of Health & Human Services
200 Independence Avenue, S.W., Suite 536E-HHH
Hubert Humphrey Building
Washington, D.C. 20201

(Decision Only)

Susanne Atanus
9054 Buckinham Park Drive
Des Plaines, IL 60016

Alexandra Meighan
Department of Health and Human Services
Office of the General Counsel
General Law Division
330 Independence Avenue, S.W.
Washington, D.C. 20210

U. S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
WASHINGTON FIELD OFFICE
1801 L Street, N.W., Suite 100
Washington, D.C. 20507-1002

| | |
|---|---|
| Susanne Atanus,  ) | |
|   Complainant,  ) | EEOC No. 100-2005-00784X |
|   ) | Agency No. OSH-008-05 |
| v.  ) | |
|   ) | |
| Tommy G. Thompson,  ) | |
| U.S. Department of Health and Human Services,  ) | |
|   Agency.  ) | |

## DECISION

This Decision is issued without a hearing, pursuant to 29 C.F.R. § 1614.109(g)(3) (2005).

The Complainant has satisfied the procedural prerequisites for a hearing, but because there is no

issue of material fact or credibility, the evidence does not warrant one. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986);

*Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). [1]

---

[1] A moving party is entitled to summary judgment if there is no genuine issue as to any material fact, and there is no issue as to credibility. There is no genuine issue of material fact where the relevant evidence in the record, taken as a whole, indicates that a reasonable factfinder could not return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986).

Under the tripartite proof scheme for disparate treatment cases established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973), an employer can "obtain a summary judgment in one of two ways. He can demonstrate that the plaintiff's proffered evidence fails to establish a *prima facie* case, or, if it does, the defendant can present evidence that provides a legitimate nondiscriminatory explanation about which the plaintiff does not create a factual dispute." *Mitchell v. Data General Corp.*, 12 F.3rd 1310, 1316 (4th Cir. 1993). In other words, summary judgment against Complainant is appropriate if she fails to make a showing sufficient to establish the existence of an element essential to her case, and on which she will bear the burden of proof at trial. *Celotex*, 477 U.S. at 322; *Anderson*, 477 U.S. at 250.

On December 23, 2005, the Agency filed a Motion for Summary Judgment.  On January

9, 2006, the Complainant filed a Motion for a Decision with a Hearing.  Upon consideration of

the entire record before me (Report of Investigation and the parties' submissions), and taking the

facts in the light most favorable to the Complainant, I GRANT summary judgment in favor of the

Agency.

## CLAIM

Whether the Agency discriminated against Complainant on the bases of her race

(Caucasian), national origin (second generation Assyrian), sex (female), religion

(Christian/Catholic) and age (DOB 12/7/58), and in retaliation for prior complaints of

discrimination, when:

1. On September 8, 2004, she was not considered for the Outstanding Scholarship

Program; and

2. She was  not scored high enough to make the best qualified list for the position of

Writer Editor, GS11/12, under vacancy announcement no. HHS-OIG-2004-0160.

## DISCUSSION

The undisputed facts in this case show that Complainant, who claims that she filed

previous complaints of discrimination against the General Services Administration, applied for

---

When opposing a properly supported motion for summary judgment, a party must
respond with *specific facts* showing that there is a genuine issue of material fact and that the
moving party is not entitled to judgment as a matter of law. *Anderson*, 477 U.S. at 250.  An
opposing party may not rest upon mere allegations or denials in the pleadings or upon conclusory
statements in affidavits; rather, she must go beyond the pleadings and support her contentions
with proper documentary evidence. *Celotex Corp.*, 477 U.S. at 324.  To defeat summary
judgment, a party must show that there is sufficient material evidence supporting the claimed
factual dispute to require a fact finder to resolve the parties' differing versions of the truth at trial.
*Anderson*, 477 U.S. at 248-49.

the position at issue using the Quickhire system. In the Quickhire system the applicants provide

answers to multiple choice questions. The candidates answers are then scored. Complainant did

not score high enough to make the best qualified list. Her name was not referred for selection.

Four other candidates were selected: three were Caucasians; three were males; one female; and

their ages were 58, 43, 41, and 28. The religions and national origins of the selectees are not

readily available from the record.

    In the absence of direct evidence, Complainant initially must establish, by a

preponderance of the evidence, at least a *prima facie* case of discrimination. *St. Mary's Honor

Center v. Hicks*, 509 U.S. 502, 507 (1993); *Texas Dept. of Community Affairs v. Burdine*, 450

U.S. 248, 252-53 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). To

establish a *prima facie* case of disparate treatment in a nonselection case, a Complainant must

show: (1) that she is a member of a group protected from discrimination; (2) that she applied for

and was qualified for the position at issue; and (3) that she was rejected under circumstances

which give rise to an inference of unlawful discrimination, *e.g.*, the Agency continued to seek

applicants with similar qualifications, or filled the positions with persons who were not members

of Complainant's protected group. *McDonnell Douglas Corp.*, 411 U.S. at 802, n.13. With

respect to age discrimination, Complainant may present a *prima facie* case by presenting

evidence that she was treated differently from someone significantly younger. *O'Connor v.

Consolidated Coin Caterers Inc.*, 517 U.S. 308, 313 (1996).

    If Complainant establishes a *prima facie* case of discrimination, the burden then is on the

Agency to articulate a legitimate, nondiscriminatory reason for its challenged actions. *Burdine*,

450 U.S. at 253-54; *McDonnell Douglas*, 411 U.S. at 802. If the Agency does so, the *prima facie*

inference drops from the case. *Hicks*, 509 U.S. at 507, 510-11. Complainant then has to prove

by a preponderance of the evidence that the proffered explanation is a pretext for unlawful

discrimination. *Hicks*, 509 U.S. at 511; *Burdine*, 450 U.S. at 252-53; *McDonnell Douglas*, 411

U.S. at 804. Complainant always retains the ultimate burden of persuading the trier of fact that

the agency unlawfully discriminated against her/him. *Hicks*, 509 U.S. at 511; *United States*

*Postal Service Bd. of Governors v. Aikens*, 460 U.S. 711, 715 (1983).

As the Agency correctly argued in its Motion, Complainant has failed to present a *prima*

*facie* case of discrimination: she failed to show that she was qualified for the position. Her

application was not on the best qualified list. *See Holtcamp v. HUD*, 1993 WL 1505859

(E.E.O.C. 1993) (appellant failed to establish a *prima facie* case because she did not make the

best qualified list for the position); *Terry v. U.S.*, 2000 WL 204522 (S.D.N.Y. 2000)

(Complainant could not demonstrate that the basis for non-selection was discriminatory because

he did not make the "best qualified list").

Furthermore, as the Agency correctly argues in its Motion, assuming that Complainant

presented a *prima facie* case of discrimination, the Agency articulated a legitimate,

nondiscriminatory reasons for its action: that her application did not score high enough to be

referred to the selecting official; that she did possess experience to qualify her for the position;

that the selectees were better qualified than Complainant; and that she was not entitled to be

considered under the Outstanding Scholarship Program.

Complainant received a score of 92.2. The candidates on the best qualified list scored

between 97.90 and 104.10. In addition, Complainant's resume did not support the writing

experience she listed on her answers to the Quickhire questions. According to the Agency, her

4

writing experience would have qualified her for a GS-9 position, not the GS-11/12 position

advertised in the vacancy announcement. Furthermore, the selectees were substantially more

qualified than Complainant; their collective experience ranged from senior managing editors of

other publications, graduates of journalism schools, free lance writers, and senior editor for

Africa at the State Department.

In addition, the position at issue was not subject to the Outstanding Scholarship Program

because this Program applies to only certain positions at the GS-5, GS-7 grade level, and the

position at issue was a GS-11/12. Complainant proffered no evidence, to rebut the Agency's

articulated reasons. Most important, Complainant did not proffer any evidence that the Agency's

action was motivated by the alleged prohibited bases.

**CONCLUSION**

Complainant's bald and unsubstantiated claims of discrimination and retaliation fail.

Accordingly, the Agency is entitled to judgment as a matter of law.

Date: March 16, 2006

Gladys O. Collazo
Administrative Judge

**NOTICE TO THE PARTIES**

### *TO THE AGENCY:*

Within forty (40) days of receiving this decision and the hearing record, you are required to issue a
final order notifying the complainant whether or not you will fully implement this decision. You
should also send a copy of your final order to the Administrative Judge.

Your final order must contain a notice of the complainant's right to appeal to the Office of Federal
Operations, the right to file a civil action in a federal district court, the name of the proper defendant
in any such lawsuit, the right to request the appointment of counsel and waiver of court costs or fees,
and the applicable time limits for such appeal or lawsuit. A copy of EEOC Form 573 (Notice of
Appeal/Petition) must be attached to your final order.

If your final order does not fully implement this decision, you must simultaneously file an appeal with the Office of Federal Operations in accordance with 29 C.F.R. 1614.403, and append a copy of your appeal to your final order. *See* EEOC Management Directive 110, November 9, 1999, Appendix O. You must also comply with the Interim Relief regulation set forth at 29 C.F.R. § 1614.505.

### TO THE COMPLAINANT:

You may file an appeal with the Commission's Office of Federal Operations when you receive a final order from the agency informing you whether the agency will or will not fully implement this decision. 29 C.F.R. § 1614.110(a). From the time you receive the agency's final order, you will have thirty (30) days to file an appeal. If the agency fails to issue a final order, you have the right to file your own appeal any time after the conclusion of the agency's (40) day period for issuing a final order. *See* EEO MD-110, 9-3. In either case, please attach a copy of this decision with your appeal.

Do not send your appeal to the Administrative Judge. Your appeal must be filed with the Office of Federal Operations at the address set forth below, and you must send a copy of your appeal to the agency at the same time that you file it with the Office of Federal Operations. In or attached to your appeal to the Office of Federal Operations, you must certify the date and method by which you sent a copy of your appeal to the agency.

### WHERE TO FILE AN APPEAL:

All appeals to the Commission must be filed by mail, hand delivery or facsimile.

BY MAIL:
Director, Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 19848
Washington, D.C. 20036

BY PERSONAL DELIVERY:
Director, Office of Federal Operations
Equal Employment Opportunity Commission
1801 L Street, NW
Washington, D.C. 20507

BY FACSIMILE:
Number: (202) 663-7022

*Facsimile transmissions of more than ten (10) pages will not be accepted.*

## COMPLIANCE WITH AN AGENCY FINAL ACTION

Pursuant to 29 C.F.R. § 1614.504, an agency's final action that has not been the subject of an appeal to the Commission or a civil action is binding on the agency. If the complainant believes that the agency has failed to comply with the terms of this decision, the complainant shall notify the agency's EEO Director, in writing, of the alleged noncompliance within 30 days of when the complainant knew or should have known of the alleged noncompliance. The agency shall resolve the matter and respond to the complainant in writing. If the agency has not responded to the complainant in writing, or if the complainant is not satisfied with the agency's attempt to resolve the matter, the complainant may appeal to the Commission for a determination of whether the agency has complied with the terms of its final action. The complainant may file such an appeal 35 days after serving the agency with the allegations of non-compliance, but must file an appeal within 30 days of receiving the agency's determination. A copy of the appeal must be served on the agency, and the agency may submit a response to the Commission within 30 days of receiving the notice of appeal.

# EXHIBIT 3



**DEPARTMENT OF HEALTH & HUMAN SERVICES**                    Office of the Secretary

Washington, D.C. 20201

## JUN 1 4 2006

### CERTIFIED MAIL - RETURN RECEIPT REQUESTED

Ms. Susanne Atanus
9054 Buckinham Park Drive
Des Plaines, IL 60016

> Re:    File No. OSH-008-05
>        EEOC No. 100-2005-00784X

Dear Ms. Atanus:

This is to inform you of the Department's final decision on the subject Equal Employment Opportunity (EEO) complaint filed against the Department of Health and Human Services, Office of the Secretary (OS).

You claimed you were discriminated against on the bases of race (Caucasian), national origin (second generation Assyrian), sex (female), religion (Christian/Catholic), age (DOB: 12/07/58) and reprisal for prior complaint activity when:

1.    On September 8, 2004, you were not considered for the Outstanding Scholarship Program; and,

2.    You did not score high enough to make the best qualified list for the position of Writer Editor, GS-11/12, under Vacancy Announcement Number HHS-OIG-2004-0160.

Following the issuance of the Report of Investigation, you requested a hearing before an Equal Employment Opportunity Commission (EEOC) Administrative Judge (AJ).  On December 23, 2005, the Agency Representative determined there were no material facts in dispute and submitted a Motion for a Decision Without a Hearing (Motion) to EEOC AJ Gladys O. Collazo.  You subsequently filed a Motion in Opposition on January 9, 2006. Administrative Judge Gladys O. Collazo decided there were no material facts in dispute and issued a Summary Judgement on May 8, 2006.  Administrative Judge Collazo's Findings of Fact and Conclusions of Law were received in this Office on May 11, 2006. The Order informed us a copy of the Findings of Fact and Conclusions of Law was mailed to you.

Page 2 - Ms. Susanne Atanus - OSH-008-05; EEOC No. 100-2005-00784X

Administrative Judge Collazo found you were not discriminated against as alleged.

This is to notify you the Department will fully implement the Decision of EEOC Administrative Judge Collazo.

## NOTICE OF EEOC APPEAL RIGHTS

If you are dissatisfied with this Final Order implementing the Administrative Judge's decision, within thirty (30) calendar days of receipt of this correspondence, you have the right to appeal to:

> Equal Employment Opportunity Commission (EEOC)
> Office of Federal Operations (OFO)
> P.O. Box 19848
> Washington, DC 20036

The enclosed EEOC Form 573, *EEOC Notice of Appeal/Petition*, should be used to indicate what is being appealed.

If there is an attorney of record, the thirty (30) calendar day time-frame within which to appeal shall be calculated from the date of receipt of this correspondence by the attorney.

An appeal is deemed filed on the day it is postmarked, or in the absence of a postmark, on the date it is received by the EEOC. If you do not file an appeal within the time limits indicated above, the appeal will be untimely and will be dismissed by the EEOC.

Any statement or brief you file in support of the appeal *must* be submitted to the OFO within thirty (30) calendar days of filing the *EEOC Notice of Appeal/Petition*. At the same time, you must furnish a copy of the *EEOC Notice of Appeal*, and any statement or brief submitted to the OFO in support of the appeal to:

> Director, Office of Diversity Management
> and Equal Employment Opportunity
> U. S. Department of Health and Human Services
> 200 Independence Avenue, S.W., Room 300E
> Washington, D.C. 20201

In or attached to the appeal and any other submission to the OFO, you must certify the date and method by which service was made on the agency.

Page 3 - Ms. Susanne Atanus - OSH-008-05; EEOC No. 100-2005-00784X

Within thirty (30) calendar days of receipt of the notice of appeal, the agency must submit the complaint file to the OFO. The agency has thirty (30) calendar days from receipt of the statement or brief in support of the appeal, or sixty (60) calendar days from the date of appeal if no statement or brief has been filed, to submit a brief in opposition to the appeal to the OFO, and simultaneously serve a copy of the opposition brief upon you.

You also have the right to file a civil action[1] in an appropriate United States District Court. If you choose to file a civil action, you may do so:

- within ninety (90) calendar days of receipt of this final order if no appeal has been filed;

- within ninety (90) calendar days after receipt of the EEOC's (OFO) final decision on the appeal;

- within one hundred eighty (180) calendar days from the date of filing a formal EEO complaint if no appeal has been filed and no final action has been issued; or

- within one hundred eighty (180) calendar days from the date of filing a formal EEO complaint if no appeal has been filed and no final action has been issued; or

- within one hundred eighty (180) calendar days from the date of filing an appeal with the EEOC if there has been no final decision by the EEOC.

You may file a civil action within two (2) years or, if the violation is willful, within three (3) years of the date of an alleged violation of the Equal Pay Act (EPA), regardless of whether you pursued any administrative complaint processing.

If you elect to file a civil action, you must name as the defendant, the **Honorable Michael O. Leavitt, Secretary of the Department of Health and Human Services**. Failure to name the Secretary may result in dismissal of your lawsuit.

If you decide to file a civil action under Title VII or the Rehabilitation Act, and if you do not have or cannot afford the services of an attorney, you may request that the Court appoint an attorney to represent you, and that the Court permit you to file the action without

---

[1]You may file a civil action within two (2) years or, if the violation is willful, within three (3) years of the date of an alleged violation of the Equal Pay Act (EPA), regardless of whether you pursued any administrative complaint processing. The filing of a complaint or appeal shall not toll the time for filing a civil action.

Page 4 - Ms. Susanne Atanus - OSH-008-05; EEOC No. 100-2005-00784X

payment of fees, costs, or other security. **The granting or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does **not** extend your time in which to file a civil action. Both the request and the civil action **must be filed within ninety (90) calendar days** of the date you receive the final decision (or final order) from the agency or the appeal decision from the EEOC.

FOR THE DEPARTMENT:

Sincerely,

Segundo Pereira
Director, Office of Diversity Management
and Equal Employment Opportunity

Enclosure

cc:    David Shorts, Director, EEO, OSH/ACF/AoA
       Alexandra Meighan, Esq., OGC, GLD
       Lisa Barsoomian, Esq., Deputy Associate General Counsel, OGC
       Gladys O. Collazo, Administrative Judge, EEOC, Washington Field Office

# EXHIBIT 4

<u>AFFIDAVIT</u>

STATE OF:  Illinois

COUNTY OF: Cook

I, Susanne Atanus, make the following statement freely and voluntarily to Elizabeth Christie, who has identified herself to me as a Contract EEO Investigator for the following federal agency: Department of Health and Human Services, investigating my EEO complaint, number OSH-008-05, knowing that this statement may be used in evidence.  I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know).

The accepted issue and basis for this complaint is:
 Whether you were discriminated against based on your age (DOB 12/07/58), race/color (White), national origin (Assyrian), sex (female) and religion (Christian Catholic) when on September 8, 2004, you were not considered for the Outstanding Scholar Program and your score was not high enough to make the best qualified list for the positions of Writer Editor, GS-1082-11/12, Vacancy Announcement HHS-OIG 2004-0160, advertised July 27, 2004 through August 17, 2004.

I have received a copy of the Affidavit dated March 29, 2005 of Donna Thomas, Lead Human Resources Specialist for Department of HHS, Rockville Human Resources Center, and two Affidavits dated April 7, 2005, and April 15, 2005 from Melinda Cheryl Bing, Human Resources Specialist, GS-11, DHHS, Rockville Human Resources Center, Office of Secretary, Human Resources Service.

My rebuttal to their statements are included below, and in my letters dated April 12, 2005, April 15, 2005, April 17, 2005, April 19, 2005, and April 20, 2005 which are also part of my Affidavit.  Please also include in my Affidavit my responses to each of these three Affidavits, that I responded to individually.  Thank you.

I hereby solemnly swear or affirm:

    1. What is your full name?
      Susanne Atanus

    2. What is your date of birth, race/color, national origin, gender, and religion?

My Date of Birth (DOB): 12/07/58.  I am over 40, and being over 40 is a protected class, as well as my gender:  Female, and my religion is a protected class:

Christian Catholic.  My race/color is White/Caucasian, and my national origin is Assyrian (second generation) which also is a protected class.  All four of the selectees are Jewish, and one is a Vet, and XP.

I would like to add three additional bases to my complaint: I believe I was also discriminated against on the basis of my non-Veteran and non-XP status. XP is either the widow /widower or parent of a deceased veteran.  I was also discriminated against by HHS and I was not selected for a position because they are retaliating against me because of my prior EEO activity.  I filed a Formal Complaint of Discrimination in March, 2002 at General Services Administration (GSA), and GSA retaliated and discriminated against me by wrongfully removing me from federal service effective July 7, 2003.  I was not treated in the same or similar way as the selectees who were selected who are in protected classes: XP, Vets, and Jewish.

HHS admits their mistake that I sent timely to their office my SF 50, but, it was not put in my file.  It was a mistake that can be immediately corrected, and I can be offered a position under the Merit Promotion Plan.   My score of 92.20 was higher than the next lowest score of 91.30 for candidates in the Merit Promotion Plan. I did fax to her attention my SF 50 that was received on August 13, 2004 at 10:52 p.m. So, please give me a job as a Writer/Editor GS-11/12.  I prefer the Chicago location because I live in the Chicagoland area, and I would not have to incur relocation expenses.  But, if that won't work, I will work in any of the six other locations.  Thank you.

3.  Please describe your prior EEO activity.

My case is in litigation.

a.  When and how did Health and Human Services become aware of your prior EEO activity?

I began talking to David Shorts, HHS EEO, about this EEO complaint and told him I was so close to getting a pension and needing a good paying job. I have not had a good paying job since July 2003, when GSA wrongfully removed me. I told David Shorts about my prior complaint. I also told Eileen Gomsi that I wanted to get a pension and that I was an Outstanding Scholar. She did not amend the vacancy announcement and it still said Outstanding Scholar, which would mean non-competitive status. My work history and resume would show that I was leaving GSA soon before reaching pension. They would see that I might have been removed and could have called and found that I had been removed. Because I am an Outstanding Scholar, I would have had non-competitive status and no one would have competed against me.

4.  When and how did you apply for the position at issue? (Date applied for position, hand-delivered or mailed SF-171, etc.)

I submitted my application online before the deadline, which was on August 17, 2004. I submitted it on August 13, 2004.

5.   According to the information contained in the complaint file (specifically, the Counselor's report and the selection certificates), your name was not referred to the selecting official for selection consideration. Your score, as assigned by the online application process was 92.2. The lowest score of the candidates referred on the selection certificates was 96.10. Why do you believe you have been treated unfairly in the referral process for the position at issue?

Yes, see above. It was unfair and discriminatory. They didn't give me the score I deserved. They should have given me non-competitive status. My score was 92.20, and it was higher than the other candidates' scores who were in Merit Promotion Plan. I should have been selected under Merit Promotion Plan, also.

The computer should have noticed I was an Outstanding Scholar and given me 100 points as a non-competitive candidate. Melinda Bing should have noticed this error…or the administrative officers at the other locations should have noticed this error and made the correction which would have meant my name would have been forwarded to the seven Selecting Officials. The Outstanding Scholar criterion was not followed and I was not given any extra points for my high GPA or two Masters degrees. I am a graduate of Northwestern University, Evanston, IL. They didn't give me any points or consideration. I feel that if I was a minority with these credentials, they would not have ignored me. If I was a minority, they would have said, "This is great.she has two Master's degrees including a Master's degree with distinction." I would have stood out if I were reading my application. I would have given me an opportunity.

Because I filed a formal complaint with GSA, and they know I was removed, they are retaliating against me. They have also discriminated against me because I am White Caucasian. But, I am member of protected classes because of my age, gender, and national origin, and religion. They broke the law because I am in protected classes, and was not selected and they broke the law because they selected people who were in other protected classes, and I was not in those protected classes: XP, Vets, or Jewish.

6.   What is your understanding of the rating and ranking process used by the Agency for this vacancy?

Yes, see above. It was unfair and discriminatory. They didn't give me the score I deserved. They should have given me non-competitive status. My score was 92.20, and it was higher than the other candidates' scores who

were in Merit Promotion Plan. I should have been selected under Merit Promotion Plan, also.

My understanding is that it didn't work they way it was supposed to. They should have placed me in non-competitive status for Outstanding Scholar for all seven locations. I wasn't given extra points for my two Masters degrees, or having a high GPA. In my essay, I said I wrote a play and a film, and they didn't count the essay portion. The system didn't work fairly for me. They discriminated against me on nine counts. The system didn't work.

In Donna Thomas' statement, she said they determine questions to ask. They knew Outstanding Scholar was one of the questions, but they didn't remove it. The process for reviewing the questions involved many people, but yet they didn't remove the Outstanding Scholar questions. One office prepares the questions; the Selection Official reviewed the questions and can make changes. They reviewed the questions; determine which factors are most important. Outstanding Scholar questions were not removed. They acted like they weren't going to pay attention to the Outstanding Scholar criteria even though I applied to all seven vacancies. And, they still have three vacancies open and they have not considered me or continued to work with me. I had a 92.2 without Outstanding Scholar being considered. I did not obtain noncompetitive status for being an Outstanding Scholar.

7.  Do you have reason to believe the rating process inaccurately or unfairly calculated your score to be 92.20? If yes, why?

Yes, see above. It was unfair and discriminatory. They didn't give me the score I deserved. They should have given me non-competitive status. My score was 92.20, and it was higher than the other candidates' scores who were being considered under the Merit Promotion Plan. I should have been selected under the Merit Promotion Plan, also.

8.  Do you know any of the individuals involved in the rating and ranking of candidates for this vacancy? If yes, identify by names and position title and whether each would have any reason to rate your application unfairly? Explain your answers.

Melinda Bing is the administrative officer. She is Black and I am White. She discriminated against me because of my race and color and retaliation. She knew I was removed from the Federal government and discriminated against me on the bases as cited above. But, she doesn't know that I did not do anything wrong. GSA, in the settlement conference on December 30, 2003 said that they would clear my record, and they offered me $11,000. I paid my attorney, more that $11,000. I was not going to take their black mail, and I did not accept their offer because they didn't cover my attorney's fees, GSA also said that I could apply to other federal agencies.

Melinda Bing and the HHS HR office said that my SF 50 was not sent. But, it was sent, and I have the fax receipt. I want to be reinstated. My score of 92.20 is higher than the other candidates under Merit Promotion Plan.

I also know that Eileen Gomsi, who is white, discriminated against me because I am not a minority in a protected class because I am White. And, I am not Jewish. But I am in a protected class for other bases, and she didn't give me an opportunity. I was not in the protected classes of the selectees. She also discriminated against me for retaliation.

Her office said that my SF 50 was not sent. But, it was sent, and I have the fax receipt. I want to be reinstated. My score of 92.20 is higher than the other candidates who were being considered under the Merit Promotion Plan. Also, when I was speaking to Eileen Gomsi in September, 2004 in se    phone conversations, she did not tell me that I could be considered under the    Merit Promotion Plan. She said that the Outstanding Scholar Program was   only for Grades 05-07, and the only other way that I could have noncompetitive status for a position is if I have a severe disability. She is a Team Leader, and she should have told me that I could be considered under the Merit Promotion Plan if her office had my SF 50. The fact that she did not tell me was discrimination against me on nine counts of discrimination.

When I talked to Steve Slamer, and I asked him for a position, and I was an Outstanding Scholar, he said he hired a Vet and a Vet scored higher than me. He is the Selecting Official for Chicago. I don't know if a Vet is higher than me. But, I should have been higher because I should have been non-competitive as an Outstanding  Scholar. Steve Slamer is Jewish and a male, and he hired a Jewish male who is a Vet. He discriminated against me because I am not Jewish, and I am not a Vet or an XP.

He  also discriminated against me based on my prior EEO activity. I am a member of a protected class because of my age, national origin, gender and religion.

If a Vet was hired in Chicago, HHS should have offered me a position in one of the other locations, if another selectee could not be selected for Chicago. Three locations still have not chosen a person for this position: Boston, Atlanta, and Philadelphia. HHS has not tried to work with me or cooperate with me.

David Shorts has discriminated against me because he is an EEO manager, and a Black Male, and I am a White Female. I was also discriminated against because I filed a formal complaint of discrimination in his office, and in GSA's office.

He could have talked to upper management and said they could have given me one of the seven locations. There may even be more than seven vacancies. He could have told management they could help me because I am an Outstanding Scholar, and under the Merit Promotion Plan, my score is 92.20, and it is higher than the other candidates under consideration in the Merit Promotion Plan. Ann Garrett and Christine Smith in his office have discriminated against me in the selection process, because they are Black, and in protected classes, and I am White, and I was discriminated against because of retaliation. I filed a formal complaint of discrimination in their office, and in GSA's office.

The administrative officers in all the six other locations beside Chicago should have said, "she has a high GPA" because they have seen my resume, and my transcripts. Everyone in the employment office would have seen my transcripts and my high GPA and seen my eligibility for Outstanding Scholar, seen my outstanding performance with my previous Federal job. The government has kept their government supply contracts with GSA because of the excellent job they do. I was a good performer. I often got in bids, sent out contacts for signature, and make the award the next day. I would run before 9:00 p.m. to FedEx before they close to make the contract awards. I would get from the people who would select the bidder as their selection at 5:30 pm. She wouldn't say she was sorry she was getting it to me too late…but in 3 ½ hours, I got all the paperwork ready to send out that night for contractors' signatures on the contracts. No one ever said Thank you. Doesn't the Federal Government want to look at that?

9. Why do you believe your age, race/color, national origin, gender, veteran status and religion were a factor in the Agency's evaluation of your qualifications and their non-referral of your name for selection consideration. Be specific.

I was not treated in the same or similar way as other applicants who were selected who are in protected classes, including Vets, XP, and Jewish. I was discriminated against on nine counts of discrimination (age, national origin, gender, religion, race and retaliation). I am not Black, not a minority, I am White; I was discriminated against because I was not a minority. If I were a minority, they would have given me an opportunity. They should have realized I was a member of a protected class based on my age, religion, national origin and gender, and should have been treated me as a protected class. I was discriminated against also because of my complaint of discrimination against GSA, my prior employer. One female was selected and HHS may not have had to hire a second female. They did select one female. My age is over 40 and I am in a protected class.

The wording of the First Issue of Discrimination should be changed as stated in my April 20, 2005 letter. Also, I raised an additional 11 issues of

Discrimination also on nine counts of discrimination in my April 19, 2005, and April 20, 2005 letters. This is after I read the new information that was cited in Melinda Bing's Affidavits dated April 7, 2005, and April 15, 2005. I asked Mr. Shorts, Director, EEO Office, and EEO Manager to accept the change of wording for the First Issue of Discrimination and accept the additional 11 issues, before April 22, 2005, which is the deadline for me to respond in my Formal Complaint of Discrimination. He stated that his office would review what I submit in my Affidavit, and my response to Donna Thomas, and Melinda Bang, HHS, Affidavits.

10. You allege you were not selected under the Outstanding Scholar hiring authority. In the Counselor's Report, the Agency stated this vacancy was not posted as an Outstanding Scholar position and they were not authorized to make a selection using this authority. Please explain why you believe the Agency unfairly failed to consider you as an Outstanding Scholar candidate.

The scores are established by the objective questions. Had the computer and the administrative officer been doing their jobs correctly, it would have given me non-competitive status because of my eligibility for the Outstanding Scholar criteria. The office prepared the questions and many people reviewed them. No one amended the application to remove the Outstanding Scholar questions, so it was therefore an accepted criterion. The Selection Official felt it was an important factor. If I were a minority (Black, Hispanic, or any of the other races that are criteria for minority, Native American, Chinese, Pacific Islander, Eskimo) or if I had said I was a 10 pt. Or 5 point vet, or if I said I were Jewish, I would have been selected. But, they didn't give me any credit for my grades, high GPA, degrees, or experience.

When they say Outstanding Scholar is for grade 5 and 7, but they didn't change it because they wanted to see if anyone was an Outstanding Scholar and they wanted to see who would apply so they could award the position to an Outstanding Scholar. Outstanding scholars are excellent writers, and they are hardworking and very bright. Then, they see that I applied, and instead of giving me an opportunity, they closed the door, not on one count but on nine counts of discrimination. The government wants to hire the best and the brightest- and I am qualified. I earned my MBA so I could do my job better and I did very well in the program. I should be given an opportunity. I hope that HHS will reconsider my application now that I am in the formal complaint process; I am requesting the opportunity to be a Writer Editor. Also, my score of 92.20 is higher than the candidates under the Merit Promotion Plan, and three locations have not been filled.

11. Do you know who was selected for this position?

Initials *SH*

Yes, I received the names and part of their applications of the selected for four of the seven locations from the EEO investigator. I personally don't know any of them.

12. Do you know else was referred for selection consideration?

I have seen other paperwork but I don't know anyone personally. HHS sent me the selection certificates for each location in response to my FOIA request. I have the names of the individuals. But they didn't tell me their race or other protected classes.

13. If known, please compare your qualifications to the qualifications of the Selected and others who were referred for selection consideration, if you are able to do so.

I will say that my credentials are just as good as the selected. The selected weren't selected on their writing ability and experience alone. They were selected because they are in protected classes-including Veteran, XP, m and Jewish. My writing experience is just as good as theirs, but they were selected because they are in protected classes. I was discriminated against because I was in different protected classes, specifically my age, my gender, my national origin (Assyrian), and my religion Christian Catholic.

My writing experience as a Contracting Officer/ Procurement Analyst was extensive. My legal writing experience as a Contracting Officer and my government correspondence, and working with other Federal agencies made me more qualified than the selected. I had 18 ¾ years with the Federal government, and that made me more qualified. I was an expert in my job, so I was more qualified.

Also, as an Outstanding Scholar, no one should have competed against me and I could have been selected for any of the locations. They were looking for Outstanding Scholars, but they failed to recognize my eligibility. I also was working full time while I was in school and earning superior grades. Also, my performance and zero percent delivery delinquency rate and 0 to low backorders was outstanding at GSA for 18 ¾ years.

My score of 92.20 is higher than the other candidates under the Merit Promotion Plan, and I faxed my SF 50 on August 13, 2004 at 10:52 p.m. I have my receipt, and it is attached. So, it appears to be a mistake that I was not selected , but this  mistake can be easily corrected by reinstating me, and giving me a position  as a Writer/Editor GS-11/12 in one of the seven locations. I live in the  Chicagoland area, so I prefer a position in Chicago.

14. What remedy are you seeking? (If you are requesting compensatory damages, please provide documentation of any evidence showing that

F2 8 of 18

Initials *Sd*

you have incurred compensatory damages and that the damages are related to the alleged discrimination at issue.)

I am seeking a remedy to be a Writer/Editor GS-11/12 as soon as possible. My score of 92.20 is higher than the candidates in the Merit Promotion Plan. I prefer to work in Chicago, since I live in Des Plaines, IL, and it is close to downtown Chicago.

I am seeking $300, 000 in compensatory damages, also. I went to the doctor in October, 2004 and had a bad stiff neck. I couldn't move my neck. I was given Flexiril pills and it took three weeks before I had full movement of my neck. This was a result of the stress of not finding a good paying job because of discrimination caused by HHS. I was not treated in the same or similar way as members of protected classes who were selected for this position, including Vets, Apes, and Jewish.

I was also discriminated against because of my sex because three of the four selected are male. One female selected, so they met the criteria that they selected a female. They may not have selected another female because they already had selected a female. I was discriminated because I am Assyrian, second generation, and that is a protected class and I was not selected for the position even though I am in protected classes as a Female, and I am over 40. I was discriminated against because of my race and color because I am White Caucasian and White Caucasian is not a protected class. My severe stiff neck was because of the financial pressure of not having a good paying job. Also, the pressure of applying for over 20 Federal jobs since July 7, 2003 so I can get a pension…and getting turned down because of discrimination has been very stressful and has caused me a lot of emotional distress.

In December, 2004, I went to the doctor for a bad cold, and a very bad sore throat. I could not swallow, but, with Tylenol, I was able to eat and swallow. If it wasn't for Tylenol Flu, to ease the pain, I would not have been able to eat for a week. In February 2005, I got another bad cold. I was prescribed an antibiotic for my colds in December, 2004, and in February, 2005.

On April 13, 2005, I went to the hospital Emergency Room for vomiting, nausea, and the doctor said I was "dry", after he examined my throat. I had a fever. I was given an IV and medicine for my nausea. After a few hours, I was sent home. I got upset and sick when HHS was discriminating against me on nine counts of discrimination, and not offering me a position, especially since there are three vacancies. HHS has been coming up with excuse after excuse for not offering me a position. This is especially evident in Melinda Bang's second Affidavit dated April 15, 2005. She said that my resume does not substantiate my answers in Quick hire when it does.

F2 9 of 18

Initials SA

I further elaborate on this issue in my letters dated April 15, 2005, April 17, 2005, April 19, 2005, and April 20, 2005, that I am also requesting to be part of my Affidavit.

My claim of discrimination is on nine counts of discrimination, including retaliation. I filed an EEO complaint about it. At GSA, it was a wrongful termination. I had complained about not being promoted, and instead of promoting me, I was removed. HHS is also retaliating against me because they didn't even select me for the positions that have not been filled.

I haven't found another good paying job because they have seen my resume. I have an MBA with distinction, and a zero percent delivery delinquency rate with GSA procurement while a Federal employee. People are shocked with my good resume and think I should go back to the Federal government so I can get my pension. They know I am a model employee. HHS is not giving me a chance and are not treating me in the same or similar way as the selectees who are in protected classes. I am in a protected class because I am a female, Assyrian, Christian/Catholic, and over 40, but I am being discriminated against because I am not a Vet, an XP, and I am not Jewish.

This has caused me sickness, emotional distress, and mental anguish. I continue to apply for Federal jobs and I get discriminated against on nine counts of discrimination. The lawyer fees have been very high. Many of my out of pocket expenses have been lawyer fees. They said I could apply for other Federal jobs, but not work at GSA, but I haven't found another federal job. I am also in litigation with SEC. If HHS won't give me a job as Writer/Editor, I will have to pay legal fees for HHS. I have not been treated in the same or similar way as the selectees in protected classes.

I have a mortgage, heating expenses, electric expenses, gas expenses, and lawyer fees. Today, meeting with the Investigator, I am unable to work. All the time I have spent preparing to respond to this investigation is time away from working, and other personal things. I am getting nowhere with HHS. HHS appears to be not easy to work with. They give me documents to read the day of this interview regarding this investigation.

I am requesting $300,000 in compensatory damages for injury that has already been done. The emotional distress and mental anguish has been overwhelming. My faith in God, my parents, relatives, and friends and the help of my parents (financial support) has supported me. They know I am trying to pay my bills as best as I can. The stress has been overwhelming. I am also asking for back pay, interest on back pay, front pay, a $3 million pension, restored annual and sick leave. If I had been with HHS, I would have had sick leave when I was sick with my stiff neck, upset stomach,

dehydration, and colds. If HHS does not give me a Writer/Editor job within a reasonable period of time, I will ask for $3 million in punitive damages.

In November, I was still recuperating from open gall bladder surgery that I had in February 2004. The gall bladder problems were the result of stress. It took 15 months to recover. I felt pain on and off during the day for eight months.

My body was in shock for 6 months and never relaxed because it was trying to get out the infection from the ruptured gall bladder. I had no energy. I had pain. When I got home, I had to rest. I had to take things very slow. I could not walk up and down stairs for 4-6 months. I could not lift and pour from a gallon of milk for 4-6 months. It was too heavy. It has been a tough year and a half for me since GSA removed me.

I could not work, I was in pain. I tried to go back to work in April, 2004 but the pain was too much. I had a relapse and had to go back to the hospital for 3 more days for abdominal pain, cramps, and diarrhea. My system got knocked off when GSA was writing me up for no reason. They were lying and they were moving me from different departments instead of promoting me.

I applied for three other positions with GSA since I left GSA. Two were Budget Analyst and one was a Project Integrator position (helping Agencies move into a new location.) I met the minimum requirements for these positions, but they selected someone else. I was doing Project Integrator work and Budget Analyst work in my position, but they didn't hire me. I was familiar with what they did and the coding for purchases. I submitted reports to the Office of Business and Congressional Affairs for GSA that kept track of all our spending. But, GSA and the other Agencies have not been helpful to me in getting a job. It has put a lot of stress, financial pressure, and emotional distress on me. It has caused me to get sick, and be hospitalized several times. .

It has been emotionally distressful. Plus, I have had medical bills and lawyer bills. When people read my resume, they say I belong in the Federal government. They say they can't help me. And, the time I am away from Government, I am not working towards my pension. I have over 20 years of service. On April 21, 2005, I had to go to the Doctor for flu symptoms including fatigue, diarrhea, headaches, and fever caused by the stress and discrimination and unresponsiveness of HHS EEO and HR offices.

I am requesting the HHS give me a Writer Editor position because there are three other positions still open. I am willing to go to another city and do the work. I can do the work. I did a lot of writing in my GSA job. I was always on top of my contracts. I did a lot of reports for GSA and for my MBA and my Master of Public Administration, University of Illinois at Chicago. Twice my professors have asked me to read two essays that I had written for an exam because they were so impressed with my writing. I have also written a book, a play and a movie. I put on my online application that I had written a book and

a play. I also told David Shorts I wrote a movie. I have excellent communication skills- oral and written. I could do the job. I would like them to work with me and not continually discriminate against me on nine counts of discrimination. It does not look good when the Federal government discriminates against applicants who meet the requirements, or when they ignore the Outstanding Scholar program when they could have taken it out of the Vacancy Announcement with an Amendment, and they did not remove it, or amend the Vacancy Announcement. More than one person agreed to leave the Outstanding Scholar questions in.

Eileen Gomsi, Team Leader, advised me in September, 2004 that the Outstanding Scholar question is always in Vacancy Announcements, even for the Senior Executive Service. I am the first person who questioned it with a complaint of discrimination. HHS did not amend the Vacancy Announcement to remove it, and yet they fail to work with me.

The day of the interview with the EEO investigator, HHS provided information, which I appreciate, but it was not provided before the interview so I would have had more time to review it. They have discriminated against me even though I am a member of protected classes. I was not treated in a same or similar way as candidates who were selected who are in protected classes: XP, Vets, and Jewish.

I told David Shorts on April 14, 2005 that it does not appear that HHS is helping me obtain a position. I want HHS to help me obtain a position, and allow me to get one of the three vacancy positions that have not been filled. I would like to be a Writer/Editor.

I am filing a complaint of discrimination. It didn't get resolved at the informal stage. Whether or not there are still vacancies, HHS is not using good judgment because they could have offered me a job and the complaint would not have moved forward on nine counts of discrimination. They still are not working with me to get me a job and to help me.

I was not treated in the same or similar way as the selectees in protected classes: Jewish, Vets, and XP. And, the protected classes that I do have female, over 40, my national origin second generation Assyrian, and my religion Christian Catholic, did not warrant them hiring me. They discriminated against me based on all these things, as I have described before.

I have 18-¾ years Federal employment. They didn't consider that I had this experience and they should give me an opportunity. She knows how to write, we have seen her resume, we have seen her correspondence, and she talks intelligently over the phone and orally- let's give her an opportunity. They have discriminated against me and have not given me an opportunity.

I also need to be compensated for my legal expenses, the time spent working on this complaint of discrimination. If the computers had been working right, my name would have ranked 1st as an Outstanding Scholar, so I should have had non-competitive status and would have been put in a different category. I was the most highly qualified candidate because I was an Outstanding Scholar. The Administrative Officers and the computer should have forwarded my name to the Selecting Officials.

The Administrative Officer sends the names to the Selecting Official. The Administrative Officer should have noticed I was an Outstanding Scholar and should have been given me non-competitive status. My name should have been forwarded to the Selecting Officials. The Administrative Officer should have noticed and corrected the error. They should have seen my name under non-competitive status. My name was not forwarded because of nine counts of discrimination. I would appreciate HHS correcting this error and hire me for one of the seven positions.

15. Can you suggest any witnesses who have knowledge of the nonselection/nonreferral and/or the discrimination at issue?

The administrative officers in HHS including Melinda Bing, Kim Lewis, Antonia Harris, and Eileen Gomsi, Team Leader

Selection officials including Steve Slamar

The employment office including  Natasha Jackson, Cassandra Cuffee

The EEO Office:  David Shorts, Ann Garrett, Christine Smith

The other administrative officers in the local offices, and the Selecting Officials. The selecting officials should be asked about the Outstanding Scholar questions on the application.

16. Do you have anything you would like to add?  I want a Writer/Editor GS-11/12 position in Chicago, and if that won't work, than a position in another location.  My score ins 92.20, and it is higher than the other candidates' scores in Merit Promotion Plan.  I have a fax receipt that my SF 50 was received on August 13, 2004 at 10:52 p.m.

HHS should reconsider their position of not selecting me for seven locations because I met the minimum requirements and I was the best-qualified candidate for non-competitive status. I was discriminated against on nine counts of discrimination. I have already gone through the informal complaint process and am now in the formal process. I would like to work for at least seven more years and earn a pension for all my hard work with the Federal government.

I have read this statement, consisting of <u>13</u> pages, and it is true, complete, and correct to the best of my knowledge and belief.

_Susanne Atanus_
Signature

_4/20/05_
Date

Signed and sworn to before me
on this _22_ day of _April_ , _2005_
at _via US mail_ .

_Elizabeth Christ_
Neutral witness, notary, or Investigator

F2 14 of 18

Affidavit
Complaint of Susanne Atanus, DHHS 050059

### AFFIDAVIT- Rebuttal

STATE OF: Illinois

COUNTY OF: Cook

I, Susanne Atanus, make the following statement freely and voluntarily to Elizabeth
Christie, who has identified herself to me as a Contract EEO Investigator for the
following federal agency: Department of Health and Human Services, investigating my
EEO complaint, number OSH-008-05, knowing that this statement may be used in
evidence. I understand that this statement is not confidential and may be shown to the
interested parties (those with a legal right to know).

The accepted issue and basis for this complaint is:

Whether you were discriminated against based on your age (DOB 12/07/58), race/color
(White), national origin(Assyrian), sex (female) and religion (Christian Catholic)when on
September 8, 2004, you were not considered for the Outstanding Scholar
Program and your score was not high enough to make the best qualified list for the
positions of Writer Editor, GS-1082-11/12, Vacancy Announcement HHS-OIG 2004-
0160, advertised July 27, 2004 through August 17, 2004.

I hereby solemnly swear or affirm:

1. You have received a copy of the affidavit of Melinda Bing, Human Resource
Specialist for Department of HHS, Rockville Human Resources Center. What is your
response?

I have read this statement, consisting of ____ pages, and it is true, complete, and
correct to the best of my knowledge and belief. *I disagree with Melinda Bing's statements*
*Her statement that I did not send a SF 50 I did send a SF 50*
*with the forecept dated August 13, 2004 at 10:52 p m(attached). Also,*
*since the Vacancy Announcement was not amended prior to the*
*deadline the computer, her and the office should have had my name*

_____
Susanne Atanus
Signature

*as a noncompetitive*
*selected*       *for 7 locations under*
*the outstanding scholar program*              **4/10/05**
*The office reviewed the questions*                _____
*for this Vacancy Announcement*                    Date
*The candidates who were eligible under merit Promotion have*
*a score below my score of 92 20. I would like a job in Chicago. If*
*that won't work then I would like a job in one of the six other locations*

Signed and sworn to before me *I was discriminated against. I was not treated in the*
on this ____ day of _____, *Same or similar way as*
*the selectees in protected classes; XP Vets + Jewish Susanne Atanus*
*in these protected classes, I am not a XP Vet, or Jewish and I was not*
Page 1 of 3    *selected. My score is high enough for reinstatement under the*
_____  Initials
*merit ~~technology~~promotion. my score is 92 20. Thank you*

F2 15 of 18

I hereby solemnly swear or affirm:

You have received a copy of the affidavit of Melinda Bing. Human Resource Specialist for Department of HHS, Rockville Human Resources Center. What is your response?

I have read this statement, consisting of 5 pages, and it is not true, not complete, and not correct to the best of my knowledge and belief. I disagree with Melinda Bing's statements. Her statement that I did not send a SF 50 is false. I did send a SF 50 with the fax receipt dated August 13, 2004 at 10:52 p.m. (attached). Also, since the Vacancy Announcement was not amended prior to the deadline, the computer, her, and her office should have had my name as a noncompetitive selectee for 7 locations under the Outstanding Scholar program. Her office reviewed the questions for this Vacancy Announcement.

The candidates who were eligible under Merit Promotion have a score below my score of 92.20. I would like a job in Chicago. If that won't work, then, I would like a job in one of the six other locations. I was discriminated against when I was not selected. I was not treated in the same or similar way as the selectees in protected classes: XP, Vets, and Jewish who were selected and are in these protected classes. I am not an XP, Vet, or Jewish, and I was not selected. My score, however, is high enough for reinstatement under Merit Selection. My score is 92.20. Thank you.

_____
Signature

_____
4/10/05
Date

Signed and sworn to before me
on this____ day of_____, _____.

Initials _____

Page 3 of 3

F2  16 of 18

Susanne Atanus' response to Donna Thomas' Affidavit

I should have been considered under the Outstanding Scholar Program, because she stated that the "HR office prepares the questions that are to be used and they are then reviewed by the Selecting Official. The Selecting Official gets to determine which factors are most important or he/she can request additional questions be added. QH has a library of questions pertinent to job titles and we can create questions pertinent to the vacancy. We can also use questions used on previous vacancies with the same qualifications."

Based on the information cited above, it is obvious that a lot of care went into deciding which questions to include in Vacancy Announcement HHS-OIG-2004-0160. Both the HR office and the Selecting Official have an opportunity to determine which factors and questions are most important. They chose to ask the applicants if they have noncompetitive status, and they think that most applicants would know all the criteria to determine an appropriate response. I was not sure how to answer that question, but, the next question that was asked was are you an Outstanding Scholar, are you working in the Postal Service, or have worked in the Peace Corps? An applicant that answered that question in the affirmative had noncompetitive status.

I knew I was an Outstanding Scholar with a GPA of 3.84/4.00 with my MBA from De Vry University, Keller Graduate School of Management with Distinction, June, 2003. So, I answered that question in the affirmative. Nothing else was stated in the questions or in the Vacancy Announcement about the merits of the Outstanding Scholar program, or who was eligible and who was not eligible.

It appears that the Outstanding Scholar question was left in the questions because HHS was looking for outstanding scholars because they are excellent writers. They were also looking for Outstanding Scholars in protective classes, and because I was a White Caucasian, and was wrongfully removed from a federal agency, GSA, HHS retaliated against me by not selecting me, and HHS discriminated against me on nine issues of discrimination: my age (DOB 12/07/58), my gender (female), my national origin (second generation Assyrian), my race and color (White Caucasian), my religion (Christian Catholic). All four selectees were Jewish, and one was a Vet, and an XP who is either a widow/widower or parent of a deceased veteran.

The Vet received extra points for being a Vet, and he also received extra points for being XP. I was discriminated against for being a non-Vet, and a non-XP. I was not treated in the same or similar way as the selectees who were in protected classes: Jewish, Vet, and XP.

I hereby solemnly swear or affirm:

1. You have received a copy of the affidavit of Donna Lynne Thomas, lead Human Resources Specialist, GS-13, Department of HHS, Client Services Division, Rockville Human Resources Center. What is your response? My response is cited above in pages 1-2.

I have read this statement, consisting of _2_ pages, and it is true, complete, and correct to the best of my knowledge and belief.

_Susanne Atanus_
Signature

_4/20/05_
Date

Signed and sworn to before me
on this 22 day of April, 2005.

Affidavit
Complaint of Susanne Atanus, DHHS 050059
at _via US Mail_.

_Elizabeth Chm_
Neutral witness, notary, or Investigator

# EXHIBIT 5

Affidavit
Complaint of Susanne Atanus OSH-008-05

## AFFIDAVIT

STATE OF: Maryland



COUNTY OF: Montgomery

I, Donna Thomas, make the following statement freely and voluntarily to Elizabeth Christie, who has identified herself to me as a Contract EEO Investigator for the following federal agency: Department of Health and Human Services, investigating a complaint of discrimination filed by Susanne Atanus, complaint number OSH-008-05, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know).

The accepted issue and bases of the complaint are:

Whether Complainant was discriminated against based on her Age (DOB 12/07/58), race/color (White), national origin (Assyrian), sex (female) and religion (Christian Catholic)when on September 8, 2004, she was not considered for the Outstanding Scholar Program and her score was not high enough to make the best qualified list for the positions of Writer Editor, GS-1082-11/12, Vacancy Announcement HHS-OIG-2004-0160 advertised July 27, 2004 through August 17, 2004.

I hereby solemnly swear or affirm:

1. What is your full name, current position title, grade, and organizational units.

Donna Lynne Thomas, lead human resources specialist, GS-13, Department of HHS, Client Services Division, Rockville Human Resources Center

2. How long have you been in this position?

I have been in the lead position for four months, but have worked with the Rockville Human Resource Center for 3 years, 9 months.

3. Who are your first and second-level supervisors, by name and position title?

1st- Cassandra Cuffee, Manager, Human Resources Dept. of Client Services

2nd- Antoinette Harris, Director (I am not sure of her official title within the Client Services Division)

4. As of the date of the evaluation of candidates at issue, who were your supervisors? Please identify by name, position title, organizational units.

BEST AVAILABLE COPY

Affidavit
Complaint of Susanne Atanus OSH-008-05

The certificate was issued in August. At that time, I was not a lead specialist. We didn't have an immediate supervisor. They were interviewing for that position. My team leader was Eileen Gomsi, lead Human Resource Specialist. Antoinnette Harris would have been in her same position, although there would have been someone acting Manager for the Human Resources Department, perhaps Kimberly Lewis.

5.  What is your date of birth, race/color, national origin, gender, religion and veteran status?

12/15/58, African American, American, female, Episcopal, non-veteran

6.  What was your involvement in the selection process for the position of the position of Writer Editor advertised under Vacancy Announcement Number HHS-OIG- 2004-0160;

No involvement at all. I have responsibility for human resources support for the Office of Inspector General now, so I inherited this case and have the responsibility of responding to this investigation. The specialist who did this case, Melinda Bing, is still employed. I am able to explain how the process works, to the best of my ability.

7.  Who else was involved in this process? Identify by name, position title, and nature of involvement.

Melinda would have done the initial review of the case (vacancy) and created the certificates. This responsibility is called "working the case." She issued the certificates. Certificates are the lists of the highest scoring candidates- they are the lists of the best qualified that are given to the selecting official. Melinda would have given the certificates to Mary Lee, the Customer Service Rep for our downtown office. Mary Lee would then forward the certificates to the selecting officials. For this vacancy, the selecting officials were Michael Armstrong in Boston, Stephen Slamar for Paul Swanson in Chicago, Gordon Sato in Dallas, James Aasmundstad in Kansas City and Timothy Horgan in New York. Because selections were not made in Atlanta and Philadelphia, a selecting official has not been designated.

8.  Explain the process by which the applications of candidates were evaluated for the position at issue in this complaint: Were you given guidance on the process? If yes, by whom? What guidance was given? Was it an individual or group process? If others were involved, who were they and in what manner were candidates rated (i.e., group discussions of qualifications or individual rankings which then were added up)? What standards were used? Were candidates compared with one another or ranked individually based on their own applications? Was information outside the applications of the candidates considered in the evaluation? Were you involved in the determination of which candidates were referred? If "yes," how was the cut-off score determined? If "no," who made the determination?

Basically, this vacancy used the Quickhire system, which is an online application system. It was developed by Monster.com, for government positions. It is a federal-wide system used by many agencies. Our department has been using it for about

BEST AVAILABLE COPY

Affidavit
Complaint of Susanne Atanus OSH-008-05

two years. Quickhire works like this- the applicants apply to the job by answering questions online that pertain to the position. The questions are multiple choice or yes/no, often with a space for additional essay information. Candidates can explain their qualifications in the essay section, but these explanations do not earn additional points. They are for elaboration or specific examples of topics cited in the objective questions. The essay part is for – well, they ask if you have ever written a research paper about politics, the essay may ask you to provide specific examples. There are scores attached to each objective question. A computer system attaches a point score to each answer. Each question has a weight attached to it that determines their score.

The scores are established by the questions asked. The candidate's total score is based on 100 points. This office prepares the questions that are to be used and they are then reviewed by the selecting official. The selecting official gets to determine which factors are most important or he/she can request additional questions be added. QH has a library of questions pertinent to job titles and we can create questions pertinent to the vacancy. We can also use questions used on previous vacancies with the same qualifications.

The rating system wasn't a group process- it wasn't paneled. The candidates are not compared to one another during the rating process. They are ranked individually. It is a self assessment. No information outside of the application was considered in the evaluation.

The resumes and additional materials of the referred candidates (such as resumes) are reviewed and compared to be sure the questions were answered appropriately and accurately. This additional information is included in the application packages sent to the selecting officials

Once the certificate is developed, it is sent to the Customer Service person who almost immediately sends it to the selecting official. Customer Service is the middle-man; they sometimes review the certificates. The, the selection official sends makes the decision.

Once the selecting official makes a selection, it goes back to the Customer Service Rep and they make the job offer and go through the hiring process. Ultimately, it comes back to us with the closed out certificate saying who was selected and when. We enter it into a database.

The number of candidates referred on a certificate is determined by the SLA (Service Level Agreements). In this case, we referred the first six top scoring candidates.

The other thing is, we don't look at every one of the candidates. Once we find the top ranking qualified candidates that meet the basic qualifications, we don't look at the other remaining applicants. We would just look at the top scoring candidates who are going to be referred. If you look at the roster and you need the top 6 people, the specialist wouldn't even look at the applications of the candidates who

FB 3 of 7

Initials

BEST AVAILABLE COPY

Affidavit
Complaint of Susanne Atanus OSH-008-05

didn't score high enough to be referred. On all of these vacancies, the lowest score referred was 96.10, so we didn't even look at Susanne's application.

9.  Was the Complainant's name referred for selection consideration? If not, why not? Be specific.

No, she was not referred because she did not score as one of the top six candidates.

10. Are candidates given any extra points for affirmative status or vet status.

They are not given extra points for affirmative employment. We don't see any affirmative action information about these candidates. It is somewhere on the system, but it is not a part of the selection process. The only personal information is name and address.

The system does give extra points for veteran status. For someone who falls under Five Point Veteran Status, they get up to 5 points, if they send in a DD214, which is paperwork that tells the period of time they served in military. They get points based on the type of service. There is also the CP and CPS status that pertains to disabled veterans. These individuals have to send documentation from the VA to support their eligibility. They get 10 extra points if they meet the criteria. There were no disabled vets on these certs, but there are several 5-point vets. There is one candidate, labeled XP, who is either the widower/widower or parent of a deceased veteran. That person was given additional points for that designation. This person was one of the individuals selected.

11. Have selections been made for these vacancies? If yes, when and who was the selecting official for each duty station?

I only have the names of four individuals selected. They were selected for Chicago, Dallas, Kansas City, and New York. I don't know the status of the other locations. They are Michael Giiseir in Dallas, David Liverhunt in New York, Brian Moskal in Chicago and Sara Allinder-Mestre in Kansas City.

12. The selection list provided with the document request lists two other selectees: Richard Mills and Eric Sorensen. What do you know about these employees?

My records show they were not selected from this vacancy announcement.

13. Please compare the qualifications of the Complainant to at least two individuals, including the Selectee, that were referred for selection consideration, using their SF-171s, the rating criteria, and the scores of the candidates.

I can compare Ms. Atanus's credentials with the credential of two selectees by looking at the electronic file for each.

Ms. Atanus' resume states her work experience, from May 2004 – July 2005, she was a bank teller. Prior to that, January – April 2004, she was a business coordinator. Prior to that, she was a jewelry sales person. Then, from April 2003

Affidavit
Complaint of Susanne Atanus OSH-008-05

through July 2005, she was a procurement analyst. These look like jobs while she was in college, because she wasn't there for very long. From 1984 – March 2003, she was a contracting officer and purchasing agent for GSA. She has a master of public administration and a BA in political science.

The selectee for Dallas, worked from 1998 – present as a senior editor for a magazine. Then, he was managing editor for the same magazine. From 1998- 1998 he was a senior writer for Rotary International. 1995 – 1996, he was an associate editor and managing editor at Century Communications. He has a master's in creative writing and a BA in communications and journalism. He also taught English composition from 1994 – 1997. His Quickhire score was 98.80

The selectee for New York has a JD from New York Law School and has a BA in history. From 1990 – present, he was a free-lance writer/editor. From 1988 – 1999 he was a grant writer, contributing author and then a magazine editor for a non-profit agency. His score was 98.20.

14. Complainant alleges she was not considered or hired under the Outstanding Scholar program. Please explain the nature of the Outstanding Scholar hiring authority, when it is used, how it is used, and whether or not it was used for this vacancy announcement.

The Outstanding Scolar program is used to hire certain positions at the GS-5 and GS-7 level. It is used to appoint candidates who meet certain criteria based on their grade point average or class ranking at accredited universities. This position was GS-11 and GS12. This position did not fall under that because of the grade level.

15. Who makes the decision regarding which hiring authorities will be available to selecting officials? Who made the decision not to post this vacancy as an outstanding scholar position?

It wasn't a decision to be made, because it was not a GS-5/7 position. No one made that type of decision.

16. Was affirmative employment a consideration in the assessment of candidates? Explain.

No, as stated above.

17. Is there anything you would like to add?

It looks like everything in this case was handled appropriately. There is nothing out of the ordinary. You may want to talk to Melinda Bing, the specialist who worked this case.

I have read this statement, consisting of ___6___ pages, and it is true, complete, and correct to the best of my knowledge and belief.

F3 5 of 7

Initials _____

Affidavit
Complaint of Susanne Atanus OSH-008-05

_____
Signature

_____
Date

Signed and sworn to before me
on this 29 day of March , 2005
at  via  fax / telephone

_Elizabeth Chmiet_
Neutral witness, notary, or Investigator

BEST AVAILABLE COPY



| bschristie@hotmail.com | | Printed: Wednesday, April 20, 2005 11:59 AM |
|---|---|---|

| **From :** | Betsy Christie <bschristie@hotmail.com> |
|---|---|
| **Sent :** | Monday, April 18, 2005 11:11 AM |
| **To :** | dthomas2@psc.gov |
| **Subject :** | Atanus affidavit-signature |

📎 Attachment : Thomasaffidavit.doc (0.05 MB)

Dear Donna,

This is an easy request. I am putting together the documents for Susanne ATanus's complaint and I realized you did not sign the last page of your affidavit. Would you please check your copy- or use the attached version. I need you to SIGN and DATE the last page (page 6) and fax that page only to me at 615-661-7959. I will be the witness.

Thank you for your cooperation again.
Betsy Christie

*pages initialed but last page not signed.*

*4/20 left voice message requesting signature.*
*ESChrist*

*F3  1 of 7*

# EXHIBIT 6

Affidavit
Complaint of Susanne Atanus OSH-008-05

## AFFIDAVIT

STATE OF: Maryland

COUNTY OF: Montgomery

I, **Melinda Bing**, make the following statement freely and voluntarily to Elizabeth Christie, who has identified herself to me as a Contract EEO Investigator for the following federal agency: Department of Health and Human Services, investigating a complaint of discrimination filed by Susanne Atanus, complaint number OSH-008-05, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know).

The accepted issue and bases of the complaint are:

Whether Complainant was discriminated against based on her Age (DOB 12/07/58), race/color (White), national origin(Assyrian), sex (female) and religion (Christian Catholic)when on September 8, 2004, she was not considered for the Outstanding Scholar Program and her score was not high enough to make the best qualified list for the positions of Writer Editor, GS-1082-11/12, Vacancy Announcement HHS-OIG 2004-0160, advertised July 27, 2004 through August 17, 2004.

I hereby solemnly swear or affirm:

1. What is your full name, current position title, grade, and organizational units.

Melinda Cheryl Bing, Human Resources Specialist, GS-11, DHHS, Rockville Human Resources Center, Office of Secretary, Human Resources Service

2. How long have you been in this position?

I have been HR specialist, for over 2 ½ years. Prior to that I was an HR assistant. I have a total of 4 years and 8 months human resource experience in this office.

3. Who are your first and second-level supervisors, by name and position title?

Page 1 of 5

Initials _____

F4 1 of 8

Affidavit
Complaint of Susanne Atanus OSH-008-05

1st.- Natasha Jackson, Team Leader and 2nd - Casandra Cuffee, Human Resource Manager, Rockville Human Resources Center.

4. As of the date of the evaluation of candidates at issue (August 2004), who were your supervisors? Please identify by name, position title, organizational units.

Kim Lewis was my first line supervisor, She was the ~~team leader~~. *Human Resources Manager* Antonia Harris was my second line; she was the director. They were both in the Rockville Human Resources Center.

5. What is your date of birth, race/color, national origin, gender, religion, prior EEO and veteran status?

DOB December 1958, Black, U.S. Citizen, female, Baptist, never filed an EEO complaint, non-veteran.

6. What was your involvement in the selection process for the position of the position of Writer Editor advertised under Vacancy Announcement Number HHS-OIG- 2004-0160;

I was the HR specialist assigned to adjudicate the case, determine the best qualified applicants and issue the certificates of eligibles.

7. Who else was involved in this process? Identify by name, position title, and nature of involvement.

I issued the certificates to the Customer Service Representative who forwards it to the selecting official. The Customer Service Rep was Arias Maccius.

8. The documentation cites this was a Quickhire vacancy. What is your understanding of the process used in Quickhire to assign ranking scores to candidates?

We have position-specific questions that the applicants answer. The applicants' answers to the questions generate a score in Quickhire using an automated hiring system (computer). The applicants also submit a resume and supporting information. The score is based on the ~~application~~ *Applicant* assessment questions.

9. How were candidates selected to be referred to the selecting officials? How was the cut-off score determined?

The applications are reviewed and the best qualified, highest scoring applicants, based on the Merit Promotion Plan or Delegated Examining Unit authority are referred. The cut-off score was determined by the Merit Promotion Plan, the number of vacancies, or the DEU authority. Sometimes *number of referred candidates*

Initials ___

FY 2 of 8

Affidavit
Complaint of Susanne Atanus OSH-008-05 *highly qualified*

we refer 10, sometimes 3. On this vacancy, which was a non-bargaining unit position, we could refer up to 10 candidates, under Merit Promotion. We did refer 6 people for Delegated Examining Unit certificates.

Ms. Atanus was considered under the DEU authority. She was not eligible for the Merit Promotion consideration because she did not submit an SF-50, so she did not verify her government status. The vacancy announcement states, under "supporting documentation", the SF-50 must be received no later than 72 hours from the closing date to be eligible.

So, she was considered under DEU because she did not submit an SF-50- I double checked and we did not receive one. .

If she had verified her government status, she would have had a second method of consideration.

10. Was the Complainant's name referred for selection consideration? If not, why not? Be specific.                    *not one of the top 6 highest scores*

No. Her score, was 92.20, which was ~~below the cut-off~~ for Delegated Examining Unit certificates. She applied for the GS-11 level only.

The cut-off score for Merit Promotion varied for different locations. The lowest score to be referred for Merit Promotion certificates were as follows: 91.30 (Atlanta), 91.30 (Boston), 89.80 (Chicago), 91.3 (Dallas), 91.30 (New York), 91.30 (Philadelphia), 91.30 (Kansas City).

But again, she did not submit an SF-50, so she was not eligible for the Merit Protection ~~certificate.~~ *Consideration .*

11. Ms. Atanus stated the application included questions about her eligibility for the Outstanding Scholar program. Was Ms. Atanus given consideration under the Outstanding Scholar authority? Why or why not?

A question pertaining to Outstanding Scholar eligibility is programmed into the system in the Core Information tab. Question #19 asks if you are eligible for non-competitive appointment under a Special Appointing Authority (e.g. Outstanding Scholar, present or former Peace Corps personnel, current Postal Service personnel, etc.). Question #20 asks what authority are you eligible to be hired under. As a core question, it is asked of every applicant for every position independent of the authorities pertinent to the vacancy. If there are special considerations or appointment authorities available, it would be listed on the vacancy announcement. On the screen between questions 19 and 20, applicants are directed to check the OPM website (http://www.opm.gov/wtw/html/accept.htm) to find out about eligibility for special hiring authorities. The core information screen also states applicants

Page 3 of 5                                                          Initials [signature]

F4 3 of 8

Affidavit
Complaint of Susanne Atanus OSH-008-05

must provide supporting documentation regarding eligibility for a special hiring authority . But, Outstanding Scholar would not apply to this job because it is a GS-11/12 position. Outstanding Scholar only applies to grades GS 5/7 in covered occupations.

There are position specific questions listed after the core questions that change based on the type of position in the vacancy. The questions are related to the job, grade and series.

12. Were candidates given any extra points for affirmative action status or veteran status? If yes, please identify which candidates received points.

No points are given for affirmative action that I know of. Points are given for Veteran preference- Veterans preference rules apply for extra points.

13. Were candidates given any extra points for outstanding scholar status?

No- points are never given for Outstanding Scholar eligibility. Outstanding Scholar eligible candidates would be referred on a separate, non-competitive certificate rather than be given additional points towards their DEU ranking. But, again, Outstanding scholar does not apply to this position. It only applies to GS 5/7. It is a non-competitive appointment. Those rules are issued by the Office of Personnel Management.

14. Donna Thomas stated that individuals were selected for Chicago, Dallas, Kansas City and New York? Are you aware of any other selections made from this vacancy announcement?

I am not aware of any other selections.

15. The documentation provided for this complaint includes DEU selection certificates at the GS-11 and GS-12 level. Were non-competitive certificates issued separately? Please explain.

We did issue some non-competitive certificates.

16. Were Merit Promotion certificates issued separately? Please explain. If yes, do you have copies of those certificates.

Yes, they were issued separately. One was issued for each grade for each location.

17. Was Ms. Atanus eligible to be referred non-competitively? Why or why not?

No. She was not eligible for the non-competitive criteria pertinent to this vacancy based on the information she submitted in her application.

Initials _____

F4  4 of 8

Affidavit
Complaint of Susanne Atanus OSH-008-05

Charles Liverhant (New York)- hired off the DEU certificate at the GS-11 level, no veteran's preference points

Brian Moskal (Chicago)- hired off the DEU certificate at the GS-12, he received points as an XP veteran.

Sara Allinder-Mestre (Kansas City)- hired off the non-competitive certificate at the GS-12 level. She was working as a GS-13 with the Department of State, so she was eligible non-competitively. Veteran's points are not pertinent to non-competitive certificates.

19.    Ms. Atanus alleges the computer did not properly score her application. In your review of the file and her application, do you see any errors made regarding her score?

I double checked her application and gave it a thorough review. Her score is correct.

20.    Is there anything you would like to add?  No.

I have read this statement, consisting of __5__ pages, and it is true, complete, and correct to the best of my knowledge and belief.

_____
                    Signature

_____
April 7, 2005
                    Date

Signed and sworn to before me
on this _7_ day of _April_, _2005_,
at _via telephone_

_Elizabeth Chris_
Neutral witness, notary, or Investigator

Initials _____

F4 5 of 8