# EXHIBIT 25

IN THE U.S. DISTRICT COURT

FOR THE DISTRICT OF COLUMBIA

- - - - - - - - - - - - - - - - x

                :       ⌑ORIGINAL

SUSANNE ATANUS,        :

                :

       Plaintiff,    :

                :

         v.         : Civil Action

                : EEOC No. 570-2008

MICHAEL LEAVITT,     :

Director, U.S. Department of  :

Health and Human Services,  :

                :

       Defendant.    :

                :

- - - - - - - - - - - - - - - - x

Washington, D.C.

Monday, April 28, 2008

Deposition of

DONNA LYNNE THOMAS

a witness of lawful age, taken on behalf of the Defendant in

the above-entitled action, before Kenyan C. Hopchas, Notary

Public in and for the District of Columbia, in the offices of

the United States Attorney, Fourth Floor, 501 Third Street,

N.W., commencing at 11:42 a.m.

Diversified Reporting Services, Inc.

(202) 467-9200

APPEARANCES:


On Behalf of the Plaintiff:

BARRY GOMBERG, ESQ.*

Barry A. Gomberg & Associates, LTD.

53 West Jackson Boulevard

Suite 1350

Chicago, IL  60604-3544

(312) 922-0550


*[By Teleconference]


On Behalf of the Defendant:

ROBIN MERIWEATHER, ESQ.

ALEXANDRA MEIGHAN, ESQ.

U.S Attorney's Office

U.S. Department of Justice

501 Third Street, N.W.

Fourth Floor Conference Room

Washington, D.C.  20530


*[Note:  Plaintiff's counsel appeared by

teleconference; there were occasional problems with

the connection.  Some small portions of counsel's

speech were inaudible, and were so noted in the

transcript.]

1    it's been a long time since we produced these documents -- is

2    that we asked for every certificate that existed, and these

3    were the only four.  I can look back through the old

4    communications to confirm, but that's what I recall.  I can

5    certainly look to see if there is anything now, but I'm

6    pretty certain that the result of our search was that this

7    was it.

8            MR. GOMBERG:  Yes, if you could let me know, I'd

9    appreciate it.  It wasn't clear.

10           BY MR. GOMBERG:

11       Q    **You have a list there for Chicago; correct, Ms.**

12   **Thomas?**

13       A    Yes.

14       Q    **What other cities do you have?**

15       A    I have Kansas City, for the non-competitive list;

16   and Dallas, Texas, for the delegated examining unit; and New

17   York, for the delegated examining unit.

18       Q    **Can you explain those terms?  What's the difference**

19   **between them?**

20       A    Okay.  The delegated examining unit is the list of

21   candidates that have applied based on not being a government

22   employee or a former government employee.  The

23   non-competitive list is based on already having the grade

24   that the position has promotion potential to.  For instance,

25   if the position goes up to a grade 12, and you're already a

1    grade 12 and you apply for the job, you would be put on

2    what's called a "non-competitive list," because you've

3    already competed for that grade.

4        Q    If it's a job that's not related to the one you're

5    applying for?

6        A    Well, if it's not related, then more than likely,

7    you may not be found qualified for that job.  You're not

8    automatically put on there.  For instance, if someone is a

9    plumber, and they are applying for a microbiologist's

10   position, they probably wouldn't be found qualified to be put

11   on that list.

12       Q    But they would be put on the non-competitive list,

13   if they were, correct?

14       A    Yes, if they were qualified for the job and they

15   were already in the grade, they would be placed on the

16   non-competitive list.

17       Q    But who would determine whether the plumber should

18   be on the list for the microbiologist's job?

19       A    The specialist that reviews -- Well, first of all,

20   the vacancy announcement has questions that the person would

21   have to answer, to determine if they're qualified for the

22   job.  And if they answered them truthfully and they don't

23   have any of the skills, then they wouldn't have a score that

24   was high enough.

25            Now, if they just said that they had all of the

Page 39

1   skills, then it's the specialist's job to look at their

2   qualifications, their resume, and the way that they answered

3   the questions, to determine if their qualifications meet the

4   specifications of that position.

5       Q    **Is there a procedure that allows the specialist**

6   **[inaudible] to call the applicant and talk to them about**

7   **their background and experience?**

8       A    Well, they normally would not call them.  That's

9   the purpose of answering all of the questions extensively.

10  And then the resume is supposed to back up the answers to the

11  questions, with all of their experience listed on the resume.

12      Q    **Ms. Thomas, with all due respect, we could save**

13  **some time if you'd just listen to my question and answer my**

14  **question.**

15      A    Okay.

16      Q    **I'm not saying that you weren't trying, but my**

17  **questions tend to be very specific.**

18          MR. GOMBERG:  Kenyan, can you repeat my question?

19          COURT REPORTER:  Just a minute, please.

20          (The Court Reporter played back the question.)

21          COURT REPORTER:  Counsel, did you get your

22  question, or did I lose it in the answer?

23          MR. GOMBERG:  No, it's just a question of whether

24  Ms. Thomas heard it.

25          COURT REPORTER:  Okay.  One moment.

1     Q    Do you know who developed that program?

2     A    It's a company called "Monster" -- "monster.com," I

3  believe it's called.  And it was developed, geared toward the

4  Federal Government.  It's a Federal Government system.

5     Q    Do you know who in the Federal Government worked

6  with "monster.com" to generate the QuickHire system?

7     A    No, I do not.

8     Q    So when someone fills out the application,

9  essentially, the computer rates the answers?  Is that

10  correct?

11     A    Yes.

12     Q    And do you know how it does that?

13     A    There are points attached to each question -- Well,

14  not all of them; because if there's an essay question, there

15  are no points.  But if it's a regular question, like a

16  multiple-choice question, or a "Yes/No," or a "True or

17  False," then there are points attached to that.  And

18  normally, those points are usually determined by the

19  specialist and the hiring officials that work on developing

20  the vacancy announcement.

21     Q    So the QuickHire application is changed depending

22  on the position that's being sought to be filled, correct?

23     A    The changes are, there would be different questions

24  and different points, based on whatever type of job it is.

25     Q    And in this case, do you know who in the Federal

Page 61

1    **Government input the changed questions and the point scoring**

2    **of the writer/editor job?**

3        A    No, I do not.

4        Q    **But there would have been one person doing that,**

5    **correct?**

6        A    It may not have been just one person.  It may have

7    been several people involved in that process:  developing the

8    questions; reviewing the vacancy announcement; determining

9    the points.  There could have been several people working on

10   it.

11       Q    **Who are the possibilities who might have done that?**

12       A    It may have been the human resources specialist

13   that actually developed the vacancy announcement; the person

14   that actually has the job opened, the hiring official that

15   has the opening.  It could be the human resources

16   representative that is located in the actual department where

17   the hiring official works.  And these are just to name a few.

18   I can't tell you exactly who was involved in this.

19           MS. MERIWEATHER:  Barry, I just want to ask --

20           BY MR. GOMBERG:

21       Q    **Well, I want to ask, whoever it was may have**

22   **changed not only the questions, but the scoring of the**

23   **answers, correct?**

24       A    Now, when you say "change," can you clarify what

25   you mean by "change"?

1    Q    Well, I thought you said that there's a QuickHire

2    application that "monster.com" generates; isn't that correct?

3    A    It's a system.  And when a vacancy announcement is

4    developed, then the questions are chosen or developed.  They

5    may be chosen from a library that's already within the

6    system.  For each job they have a library that has certain

7    questions.  Some of the questions would come from the

8    library.  Some of them may be actually customized for that

9    position, depending on the position.  And then the points

10    would be attached to that question.  But I wouldn't really

11    call it change, because each one is a new one.

12    Q    Okay.  But I take it, in generating the questions

13    and the scoring, there's a human being who is determining

14    what the points should be, depending on the answer, correct?

15    A    Yes.

16    Q    The computer is just rating it according to the way

17    it was programmed, correct?

18    A    Yes.

19    Q    Is there somewhere on the application or in the

20    process that tells an applicant they get no points for the

21    essay question?

22    A    I don't believe there is a statement that actually

23    says there are no points for the essay question.

24    Q    Do you think an applicant should know that?

25    A    I don't think it's totally necessary to have that

# EXHIBIT 26

Affidavit
Complaint of Susanne Atanus OSH-008-05

## AFFIDAVIT- second

STATE OF: Maryland

COUNTY OF: Montgomery

I, **Melinda Bing**, make the following statement freely and voluntarily to Elizabeth Christie, who has identified herself to me as a Contract EEO Investigator for the following federal agency: Department of Health and Human Services, investigating a complaint of discrimination filed by Susanne Atanus, complaint number OSH-008-05, knowing that this statement may be used in evidence. I understand that this statement is not confidential and may be shown to the interested parties (those with a legal right to know).

· The accepted issue and bases of the complaint are:

Whether Complainant was discriminated against based on her Age (DOB 12/07/58), race/color (White), national origin(Assyrian), sex (female) and religion (Christian Catholic)when on September 8, 2004, she was not considered for the Outstanding Scholar Program and her score was not high enough to make the best qualified list for the positions of Writer Editor, GS-1082-11/12, Vacancy Announcement HHS-OIG 2004-0160, advertised July 27, 2004 through August 17, 2004.

I hereby solemnly swear or affirm:

1. In your original sworn statement, you said that Ms. Atanus was not considered for the Merit Promotion process because she did not submit an SF-50 in support of her on-line application. She has provided documentation (including a fax confirmation) indicating she did send her SF-50 on August 13, 2004. Would you confirm whether or not you received her SF-50.

Upon review of this matter, I did find out that we had received her SF-50, but it was inadvertently left out of her application package.

2. If you received the SF-50, why was it not included in her application package?

Page 1 of 3

Initials _____

FY 6 of 8

Affidavit
Complaint of Susanne Atanus OSH-008-05

The SF-50 was not received in the file. We have record of receiving it, but somehow it was not placed in the file. It could have been for a number of reasons, but it was an error.

3. Please address the allegation that her SF-50 was not included in her application package for discriminatory reasons based on Ms. Atanus' age, race/color, national origin, gender, religion, veteran status, and prior EEO activity. Specifically, was the individual or process that was responsible for this error aware of Ms. Atanus' membership in protected classes?

None of that information is included in anything we have access, so that would not have been a factor at all.

4. In review of her on-line application, would she have been eligible to be considered under the Merit Promotion if her SF-50 had been included in her application package?

If her SF-50 had been included in her application package, she would still not have been listed for referral. However, at this point in the process, I review the applications to insure that the statements made on the online application are supported by the candidate's resume.

I have reviewed Ms. Atanus's application again and have determined that her name would not have been referred as a Merit Promotion candidate because her resume did not support the experience she cited in Quickhire, specifically regarding her writing experience. In the essay portion of Quickhire, she was asked to describe her ability to communicate clearly in writing a variety of legal and/or analytical and technical documents or articles that require a research and analytical approach. Her response included a number of writing experiences she has had. But, her resume does not support these experiences and do not cite specific writing accomplishments. Her resume cites specific positions, none of which appear to involve writing. We do not consider Quickhire answers that are not supported by the resume as viable. She does have an MBA, but in my review, her experience would only have qualified her for a GS-9 level position. These vacancies were at the GS-11/12 level. I have confirmed this decision with Donna Thomas, Lead Human Resources Specialist and Cassandra Cuffee, Human Resources Manager. They agree that she would not have been referred for these reasons.

So, in conclusion, I would say that even if I had received her SF-50, she would not have been referred as a qualified candidate for any of the geographical areas because of the lack of writing experience as evidenced on her resume.

Page 2 of 3

Initials

F4 7 of 8

Affidavit
Complaint of Susanne Atanus OSH-008-05

The individuals who were selected for these positions had very specific work experience in writing and editing professional and technical pieces.

5. Was Ms. Atanus' membership in protected classes an influencing factor in the Agency's decision to not refer her name to the selecting officials? Or, were any other candidates given preferential treatment or affirmative action because of their membership in under-represented protected classes?

No one in our office is aware of the gender, race/color, national origin, age, religion or prior EEO activity of the applicants we rate or rank. These factors are not considered or given preferential treatment in the rating and ranking process.

I have read this statement, consisting of ___3___ pages, and it is true, complete, and correct to the best of my knowledge and belief.

_____
Signature

_____
April 14, 2005
Date

Signed and sworn to before me
on this _14_ day of _April_, _2005_
at _via telephone_ .

_Elizabeth Chris_____
Neutral witness, notary, or Investigator

Page 3 of 3

Initials ___

F4 8 of 8

# EXHIBIT 27

Elizabeth Christie
July 29, 2008

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF COLUMBIA

SUSANNE ATANUS,                )
                               )
          Plaintiff,           )
                               )
     -vs-                      )   No. 06 C 1078
                               )
MICHAEL O. LEAVITT,            )
                               )
          Defendant.           )

          Telephonic deposition of ELIZABETH CHRISTIE

taken before DENNIS M. HARTNETT, CSR, and Notary Public,

pursuant to the Federal Rules of Civil Procedure for the

United States District Courts pertaining to the taking

of depositions, at Suite 1350, 53 West Jackson in the

City of Chicago, Cook County, Illinois, commencing at

10:00 o'clock a.m. on the 29th day of July A.D., 2008.

          There were present at the taking of this

deposition the following counsel:

48dd0044-5012-48f5-80fb-2138d279753b

Elizabeth Christie
July 29, 2008

Page 60

1   let's see, that was page 6, she provided, candidates

2   were provided responses to multiple choice questions and

3   they are issued a score based on that objective

4   response.

5       Q    It's page 6?

6       A    So their scores are based on the multiple choice

7   questions.

8       Q    You're talking about page 6 of your report?

9       A    Yes.

10      Q    What paragraph?

11      A    The very last paragraph.

12      Q    Okay.  This is what Miss Thomas told you,

13  correct?

14      A    Yes.

15      Q    But isn't it a fact that the candidates, and in

16  this case, Miss Atanus, in fact, did talk to Miss Bing,

17  as an example, regarding her application?

18      A    I believe that was after the fact.  After we

19  learned that she was not scored high enough.  I don't

20  recall.

21      Q    Can you look at your report or anything else you

22  have to refresh your recollection on that?

23      A    Yes, hold on.

24           I cannot find it in my report, when Miss Bing

48dd0044-5012-48f5-80fb-2138d279753b

Elizabeth Christie
July 29, 2008

Page 61

1    first contacted, was first, first talked to Miss Atanus.

2        Q    Okay.  But wasn't there a statement by Miss Bing

3    that said that Miss Atanus' application did not match

4    her resume in terms of experience?

5        A    I do recall that.

6        Q    That's in your report, isn't it?

7        A    Yes.  Let me look in my report.

8        Q    Okay.  When you find it, if you find it, let us

9    know where it is, okay?

10       A    I found it, page 6, the third paragraph.

11       Q    Right.

12       A    And --

13       Q    Can you just read the language that you wrote

14   that says that?

15       A    The HR specialist reviewed complainant's

16   application, this was during the investigation process,

17   upon discovering this error, the HR specialist reviewed

18   complainant's application and determined that she would

19   not have been referred on the merit promotion selection

20   certificate because her resume did not afford the

21   experience she claimed on her application.

22            Her QuickHire application listed a number of

23   specific writing accomplishments but the positions

24   listed on her resume do not appear to have involved

48dd0044-5012-48f5-80fb-2138d279753b

Elizabeth Christie
July 29, 2008

Page 62

1   writing.

2        Q    Okay.   This is what Miss Bing told you, correct?

3        A    Yes.

4        Q    So would you agree that that was a subjective

5   judgment by Miss Bing, that Miss Atanus' resume did not

6   support her application?

7        MS. MERIWEATHER:   Objection, speculation.

8        THE WITNESS:   That was the review that she made

9   during the investigation in response to something else,

10  because she would have been contacted by an

11  investigator, there was some concern about what had

12  happened to complainant's SF-50, because they realized

13  they hadn't properly considered her SF-50, and,

14  therefore, she had not been considered on the, as a

15  merit promotion candidate.   They looked at it again, in

16  response to this investigation, and they made that

17  subjective determination.

18        So that decision, I had just read about, that

19  subjective conclusion that she drew was not made at the

20  time that she was scored and not referred as a

21  candidate.

22  MR. GOMBERG:   Q   Okay.   So you're saying that there

23  was absolutely no subjectively in the application

24  review, Miss Atanus' application, by the Agency,

48dd0044-5012-48f5-80fb-2138d279753b

# EXHIBIT 28

UNITED STATES DISTRICT COURT FOR
THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| SUSANNE ATANUS, | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | Case Number: 1:06CV01078 (JDB) |
| | ) | |
| U.S. DEPARTMENT OF HEALTH | ) | |
| AND HUMAN SERVICES, | ) | |
| | ) | |
| **Defendant.** | ) | |

## PLAINTIFFS RESPONSES TO DEFENDANT'S
## FIRST REQUESTS FOR ADMISSION

Plaintiff hereby responds to Defendant's First Requests for Admission to Plaintiff

as follows:

**Request No. 1:**     Admit that you engaged in no protected EEO activity involving the Department of Health and Human Services ("HHS") prior to filing an EEO complaint concerning your non-selection for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060.

**Response:**   ADMIT.

**Request No. 2:**     Admit that you did not provide any HHS employee involved in the selection process for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060 with a copy of any discrimination complaint(s) that you filed against the General Services Administration ("GSA")

**Response:**   DENY.  I told Eileen Gomsi, Team Leader, HHS, within the required

time that I had been discriminated against by the General Services Administration

(GSA) on seven counts of discrimination including my race (Caucasian), my color

(White), religion (Christian Catholic), retaliation (for filing an Informal and Formal

1

Complaint of Discrimination), my age (I'm over 40 years old and my date of birth is 12/07/1958), my sex (Female), and my national origin is Assyrian second generation.

I was not treated in the same or similar way as the other employees in the GSA Federal Supply Service Contract Management Division Contract Administration Branch who were receiving promotions to GS-1102-12. Many of these employees were younger and/or with less experience than I, and who were not wrongfully written up, wrongfully suspended for five and ten days, and wrongfully terminated from federal government service like I had been discriminated against at the GSA on seven counts of discrimination cited in the previous paragraph.

I was wrongfully removed from the Federal government service effective July 7, 2003, and received my letter putting me on Administrative Leave for six weeks prior to that on May 19, 2003 even though I received excellent emails sent to me and the Stock Team for having 0 delivery delinquencies on purchase orders with backorders in March, 2003. I maintained a 0% delivery delinquency rate for 18 ¾ years and had the highest efficiency as a Contract Administrator at the GSA, and received an Outstanding Performance Award, and received Highly Successful Performance Awards for many years. When I was on a ten day suspension, I received a $1,300.00 Performance Award that was given to all employees. It did not make sense that I was on a ten day suspension, and receiving this award. I do not think that it was just a coincidence that these two events happened at the same time being on a ten day suspension and receiving a $1,300.00 Performance Award.

2

I never saw anyone else except me being wrongfully written up, wrongfully suspended or wrongfully removed, or a White female who was not Polish, Jewish, or a Vet or who said she was economically disadvantaged be promoted to a GS-12 anywhere in the GSA Federal Service while I worked there for 18 ¾ years. That is discrimination against me for being a White Female even though GSA Management knew that I was also over 40 years old, Assyrian and Christian Catholic.

I was not promoted to a GS-1102-12 Contract Administrator even though I was doing the same work as the others on the Stock Team. The employees in the GSA Federal Supply Service Contract Management Division Contract Administration Branch were receiving promotions to this grade who were younger than I was and/or with less years of experience and who were in protected classes including Black, Hispanic, Jewish, Polish, and economically disadvantaged. I am, however, in four protected classes: A Christian Catholic Assyrian second generation female over forty years old (my date of birth is 12/07/1958). Many of these employees received higher promotions to GS-13, GS-14, GS-15, and GS-16 Senior Executive Service (SES). I was discriminated against because I did not receive a promotion to GS-1102-12 and to these other grades while I worked at the GSA.

<u>Request No. 3</u>:    Admit that the resume submitted with your application for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060 does not identify or describe your religion.

3

**Request No. 4**:    Admit that the QuickHire questionnaire responses and/or any other documentation or information that you submitted in connection with your application for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060 do not identify or describe your religion.

**Response**:    **DENY. The Defendant knew or should have known that the name**

**Atanus (written on my application, questionnaire and resume) was Christian and**

**not Jewish.**

**Request No. 5**:    Admit that you did not inform any HHS employee involved in the selection process for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060 of your religion prior to challenging HHS's decision not to select you for that vacancy.

**Response**:    **DENY. The Defendant knew or should have known that the name**

**Atanus (written on my application, questionnaire and resume) was Christian and**

**not Jewish.**

**Request No. 6**:    Admit that you are not a veteran.

**Response**:    **ADMIT.**

**Request No. 7**:    Admit that the resume submitted with your application for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060 does not identify or describe your national origin as being "Assyrian."

**Response**:    **DENY. The Defendant knew or should have known that the name**

**Atanus (written on my application, questionnaire and resume) was "Assyrian".**

**Request No. 8**:    Admit that the QuickHire questionnaire responses and/or any other documentation or information that you submitted in connection with your application for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060 do not identify or describe your nation origin as being "Assyrian."

4

**Response:**    DENY. The Defendant knew or should have known that the name

Atanus (written on my application, questionnaire and resume) was "Assyrian".

**Request No. 9:**    Admit that you did not inform any HHS employee involved in the
selection process for the Writer Editor Position in Vacancy Announcement HHS-OIG-
2004-1060 that your national origin was "Assyrian" prior to challenging HHS's decision
not to select you for that vacancy.

**Response:**    DENY. The Defendant knew or should have known that the name

Atanus (written on my application, questionnaire and resume) was "Assyrian".

**Request No. 10:**    Admit that you did not request consideration under Non-
Competitive procedures ("NC") in response to Question Number 10 on the QuickHire
questionnaire responses submitted in connection with your application for the Writer
Editor Position in Vacancy Announcement HHS-OIG-2004-1060.

**Response:**    DENY, because my response to Question Number 11 on the

QuickHire questionnaire stated that I am an Outstanding Scholar which means my

answer was "yes" to Question Number 10, and "non-competitive procedures" in

Question 10 was not defined but was defined in Question 11.

**Request No. 11:**    Admit that you failed to fax or email a writing sample in
connection with your application for the Writer Editor Position in Vacancy
Announcement HHS-OIG-2004-1060 on or before the closing date for that vacancy
announcement.

**Response:**    DENY. I sent my writing sample as requested in the application

instructions.

**Request No. 12:**    Admit that you are currently employed.

**Response:**    DENY. I am not currently employed.

**Request No. 13:**    Admit that the materials you submitted to HHS in connection with
your application for the Writer Editor Position in Vacancy Announcement HHS- OIG-

5

2004-1060 did not include a copy of any book, play, firm, and/or move script that you have written.

**Response:**  **DENY.  The fact that I told them that I wrote my book, play, film and/or movie is sufficient. I also told HHS during discovery that I copyrighted my book.**

**Request No. 14:**  Admit that the resume submitted with your application for the Writer Editor Position in Vacancy Announcement HHS-OIG-2004-1060 does not state that you wrote a book, play, film and/or movie script.

**Response:**  **DENY.  I informed HHS, in my application that I wrote a play and a book.  I also advised Eileen Gomsi, Team Leader, that I wrote a movie and therefore, this information becomes part of my resume and my application.**

**Request No. 15:**  Admit that you are the Susanne Atanus identified as the plaintiff-appellant in *Atanus v. Perry*, No. 07-1430 (7th Cir. 2008).

**Response:**  **ADMIT.**

**Request No. 16:**  Admit that you are the Susanne Atanus identified as the plaintiff in *Atanus v. Perry*, No. 04-C-7512, 2007 WL 257679 (N.D. Il. Jan. 24, 2007).

**Response:**  **ADMIT.**

**Request No. 17:**  Admit that you are the Susanne Atanus identified as the plaintiff-appellant in *Atanus v. Cox*, No. 05-2509, 2005 WL 3116629 (7th Cir. Nov. 23, 2005).

**Response:**  **ADMIT.**

Respectfully submitted,

SUSANNE ATANUS

By: *Susanne Atanus*

6

Barry A. Gomberg
Brian S. Schwartz
BARRY A. GOMBERG & ASSOCIATES
53 West Jackson Blvd., Suite 1350
Chicago, Illinois 60604
Telephone: (312) 922-0550

## CERTIFICATE OF SERVICE

To:   Robin Merriweather
      Assistant U.S. Attorney
      555 4th Street N.W.
      Washington, D.C. 20530
      Fax: (202) 514-8780
      Email: Robin.merriweather2@usdoj.gov

I, Curtis R. Brown, a non-attorney, served the Plaintiff's Responses to Defendant's Requests to Admit on the above referenced attorney for Defendant via facsimile transmission, email transmission and by placing a copy in the U.S. mailbox located at 53 West Jackson Blvd., Chicago, Illinois on May 21, 2008 before 5:00 p.m., with proper postage prepaid.

Curtis R. Brown

State of Illinois           )
                            ) SS:
County of Cook              )

## VERIFICATION

Plaintiff, Susanne Atanus, being duly sworn under oath deposes and states that she has read the Plaintiff's Responses to the Requests to Admit and that the information contained therein is true and correct to the best of her knowledge.

_Susanne Atanus_
Susanne Atanus

Subscribed and sworn to
Before me this 13th day of
May, 2008

_Curtis R. Brown_
Notary Public

"OFFICIAL SEAL"
CURTIS R. BROWN
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 10/24/2011