# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

**SUSANNE ATANUS,**

     **Plaintiff,**

       **v.**

**KATHLEEN SEBELIUS,[1]
Secretary, U.S. Dep't of Health & Human
Servs.,**

     **Defendant.**

**Civil Action No. 06-1078 (JDB)**

## MEMORANDUM OPINION

Plaintiff Susanne Atanus, an applicant for employment at the United States Department

of Health and Human Services ("HHS"), brings this employment discrimination and retaliation

suit against defendant Kathleen Sebelius in her official capacity as secretary of HHS.

Defendant's motion for summary judgment is now before the Court.  Upon consideration of

defendant's motion, the parties' memoranda, and the entire record herein, the motion will be

granted.

## BACKGROUND

On August 13, 2004, plaintiff sought employment with HHS as a writer/editor.  <u>See</u> Pl.

Application (attached as Pl. Opp'n Ex. G).[2]  HHS uses the Quickhire system to process

---

[1]Former Secretary of the Department of Health and Human Services Michael O. Leavitt
was named as the original defendant in this case.  Pursuant to Federal Rule of Civil Procedure
25(d), the Court automatically substitutes the current Secretary, Kathleen Sebelius, as the
defendant.

[2]The briefing on the summary judgment motion is comprised of the following:
Defendant's Memorandum in Support of Summary Judgment ("Def. Mem."), Plaintiff's
Memorandum in Opposition to Summary Judgment ("Pl. Opp'n"), and Defendant's Reply in

applications, which permits applicants to respond to multiple-choice questions and then generates a numerical score on the basis of the responses, including preference points for veterans.  See Vacancy Information (attached as Def. Mem. Ex. 8); Dep. of Donna Thomas at 60 (attached as Def. Mem. Ex. 25).  The Quickhire system also contains spaces for a resume and for written answers, which supplement the multiple-choice responses but do not factor into the numerical score.  Donna Thomas Equal Employment Opportunity ("EEO") Aff. at 3 (attached as Def. Mem. Ex. 5).  Plaintiff's Quickhire application included written responses and a resume. See EEO Aff. of Susanne Atanus at 3 (attached as Def. Mem. Ex. 4); Pl. Application.

Three methods of consideration were available for the job vacancy: the Delegated Examining process ("DE"), the Merit Promotion process ("MP"), and the Non-Competitive process ("NC").  Vacancy Information at 8-9.  The DE process was open to all individuals regardless of federal employment history, and the HR specialist produced a "certificate of eligibles" list of the top applicants for further consideration on the basis of their Quickhire scores.  See id.; EEO Affs. of Melinda Bing at 2-3 (attached as Pl. Opp'n Ex. F).  The MP process involved selecting the best-qualified applicants either currently working in the competitive federal service or having reinstatement eligibility.  Vacancy Information at 8. Applicants were eligible for NC consideration if they were basically qualified and had served in a government position with equivalent or higher promotion potential than the job sought, which was GS-12 for the writer/editor position.  Id. at 8-9.

Plaintiff's application requested consideration under the DE process only, see Pl. Application at 5, even though she submitted an SF-50 form in a timely manner indicating just

Support of Summary Judgment ("Def. Rep.").

under nineteen years previous federal government employment at the General Services

Administration ("GSA"), Pl. SF-50 form (attached as Pl. Opp'n Ex. H).  Due to HHS error, the

SF-50 form was not included in plaintiff's application packet.  EEO Investigation Report at 3-4,

6 (attached as Pl. Opp'n Ex. C).  At one point in her application, plaintiff also claimed eligibility

for the Outstanding Scholar Program, but she noted at another point that she was not eligible for

that program.  See Pl. Application at 2-3.

Plaintiff scored a 92.20 through the Quickhire system and was not placed on the list of

eligible candidates under the DE process, for which the cutoff was 96.10.  Compl. at 2; Thomas

EEO Aff. at 4.  Melinda Bing, a human resources ("HR") specialist, prepared the list of eligible

candidates.  Bing EEO Affs. at 2.  After not being selected for the writer/editor position, plaintiff

contacted Eileen Gomsi[3] and David Shorts, an EEO Director at HHS.  See Atanus EEO Aff. at 2.

When the misplacement of the SF-50 became apparent, Bing again reviewed plaintiff's file.

Bing determined that even if plaintiff had been considered under the MP process, she would not

have been selected because her experience on her resume did not support her Quickhire

responses.  Bing EEO Affs. at 7.

Plaintiff filed a formal EEO complaint claiming that HHS discriminated against her

because of her race (Caucasian), color (white), national origin (second generation Assyrian), sex

(female), religion (Christian/Catholic), and age (born December 7, 1958).  EEO Order at 4

(attached as Def. Mem. Ex. 2).  Plaintiff also claimed that HHS did not hire her in retaliation for

---

[3]The record is unclear as to Ms. Gomsi's responsibilities as an HHS "team leader," but it
appears her office handled receipt of the SF-50 form.  See Atanus EEO Aff. at 5.

having pursued an EEO action against GSA.[4]  Id.  Her complaint in the instant matter also alleges that HHS discriminated against her because she is not a veteran.  Compl. at 1.  The Equal Employment Opportunity Commission granted judgment in favor of defendant on March 16, 2006, see EEO Order, and plaintiff filed suit in this Court on June 13, 2006.

## STANDARD

Summary judgment is appropriate when the pleadings and the evidence demonstrate that "there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the initial responsibility of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The moving party may successfully support its motion by identifying those portions of "the pleadings, the discovery and disclosure materials on file, and any affidavits" which it believes demonstrate the absence of a genuine issue of material fact.  Fed. R. Civ. P. 56(c); see Celotex, 477 U.S. at 323.

In determining whether there is a genuine issue of material fact sufficient to preclude summary judgment, the court must regard the non-movant's statements as true and accept all evidence and make all inferences in the non-movant's favor.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986).  A non-moving party, however, must establish more than the "mere existence of a scintilla of evidence" in support of its position.  Id. at 252.  By pointing to the absence of evidence proffered by the non-moving party, a moving party may succeed on

---

[4]Plaintiff filed a complaint against GSA alleging discrimination on the grounds of "age, gender, national origin, color and race, [and] religion" in March 2002.  Compl. at 6.  The Seventh Circuit recently affirmed a grant of summary judgment in favor of GSA.  Atanus v. Perry, 520 F.3d 662 (2008).

summary judgment.  Celotex, 477 U.S. at 322.  "If the evidence is merely colorable, or is not

significantly probative, summary judgment may be granted."  Anderson, 477 U.S. at 249-50

(citations omitted).  Summary judgment is appropriate if the non-movant fails to offer "evidence

on which the jury could reasonably find for the [non-movant]."  Id. at 252.

## ANALYSIS

**I.   Plaintiff's Discrimination Claims**

*A.     Title VII and ADEA Claims*

An employer may not "fail or refuse to hire . . . any individual . . . because of such

individual's race, color, religion, sex, or national origin."  42 U.S.C. § 2000e-2(a)(1).  Under the

Age Discrimination in Employment Act ("ADEA"), executive agencies must make all personnel

decisions affecting applicants over the age of 40 "free from any discrimination based on age."

29 U.S.C. § 633a(a).  Plaintiff alleges that defendant violated these prohibitions by not placing

her on the eligibles list for the writer/editor vacancy because she is Caucasian, white, Catholic,

female, a second-generation Assyrian and was born in 1958.[5]  Claims under Title VII and the

ADEA relying on circumstantial evidence, like plaintiff's, are normally subject to the burden-

shifting framework of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).  See Jones v.

Bernanke, 557 F.3d 670, 677 (D.C. Cir. 2009) (Title VII); Barnette v. Chertoff, 453 F.3d 513,

515 (D.C. Cir. 2006) (ADEA).  But

> where an employee has suffered an adverse employment action
> and an employer has asserted a legitimate, non-discriminatory

---

[5]Plaintiff's parents were born in Chicago, Illinois, and all four of her grandparents are
from Iran.  Pl. Dep. at 8.  Because the Court finds that plaintiff did not suffer discrimination, it
assumes the validity of an Assyrian national origin claim without addressing defendant's point
that "an alleged 'Assyrian' national origin is dubious."  Def. Mem. at 20.

> reason for the decision, the district court need not -- <u>and should not</u>
> -- decide whether the plaintiff actually made out a prima facie case
> under <u>McDonnell Douglas</u>.  Rather, in considering an employer's
> motion for summary judgment . . . the district court must resolve
> one central question: Has the employee produced sufficient
> evidence for a reasonable jury to find that the employer's asserted
> non-discriminatory reason was not the actual reason and that the
> employer intentionally discriminated against the employee on the
> basis of race, color, religion, sex, or national origin?

<u>Brady v. Office of the Sergeant at Arms</u>, 520 F.3d 490, 494 (D.C. Cir. 2008) (emphasis in original) (citing <u>St. Mary's Honor Ctr. v. Hicks</u>, 509 U.S. 502, 510, 511 (1993), and <u>U.S. Postal Serv. Bd. of Governors v. Aikens</u>, 460 U.S. 711, 715 (1983)); <u>see also</u> <u>Baloch v. Kempthorne</u>, 550 F.3d 1191, 1198 (D.C. Cir. 2008) (applying <u>Brady</u> to an ADEA claim).

The parties agree that non-selection for the writer/editor position is an adverse employment action.  <u>See</u> Def. Mem. at 12.  Defendant offered three legitimate, nondiscriminatory reasons for not placing plaintiff on the best-qualified list: (1) plaintiff's score was too low to qualify her through the DE process, which is based solely on an exam grade; (2) plaintiff was not eligible under the MP process because her SF-50 form to verify previous federal employment was not received, and even if it had been received, plaintiff would not have been eligible because her responses to the Quickhire questionnaire were not supported by her resume; and (3) plaintiff was not eligible under the NC process because she did not request it and because her highest previous employment grade was GS-11, not GS-12.  <u>See</u> Def. Mem. at 13-16.  Hence, the only issue for this Court is the "central question" in this case: whether a reasonable jury could find that defendant intentionally discriminated against plaintiff.  <u>See</u> <u>Brady</u>, 520 F.3d at 494.

Plaintiff must show "both that the reason [for the adverse employment decision] was

false, and that discrimination was the real reason." Weber v. Battista, 494 F.3d 179, 186 (D.C. Cir. 2007); see also Hicks, 509 U.S. at 515.  Plaintiff does not contest that her score of 92.20 was not high enough to be referred under the merit-based DE process, which involved no protected class questions and under which the lowest qualifying score was 96.10.  See Pl. Opp'n at 6, 13. The question for the Court, then, is whether defendant discriminated against plaintiff through the MP or NC selection processes.

1.  Merit Promotion Process

Plaintiff has abandoned the claim that HHS discriminated against her by not putting her SF-50 form in the file.  See Compl. at 2.  She no longer argues that the form's absence was intentional, much less discriminatory.  Indeed, in her EEO affidavit, she referred to it as a "mistake," Atanus EEO Aff. at 2, and her opposition does not contest HHS's characterization of the exclusion as "inadvertent," see EEO Investigation Report at 6, Bing EEO Affs. at 6-7.  In the absence of evidence that the form was lost "through anything other than inadvertence," a reasonable jury could not find discrimination.  See Montgomery v. Chao, 495 F. Supp. 2d 2, 16 (D.D.C. 2007) (internal citation omitted), aff'd, 546 F.3d 703 (D.C. Cir. 2008).

The primary issue, then, is whether defendant discriminated against plaintiff in determining that she would not have been selected even if she had established eligibility for the MP process.  Upon reevaluating plaintiff's file, Bing determined that plaintiff's Quickhire answers detailing her writing experience overstated her resume and would have precluded her from selection.  Bing EEO Affs. at 7.  An HHS lead HR specialist and an HR manager reviewed plaintiff's application and confirmed this assessment.  Id.  However, because this part of the consideration of plaintiff's application was the most subjective and thus the most susceptible to

any potential influence of discrimination, the Court carefully considers plaintiff's allegations.

Plaintiff cannot show that discrimination was the "real reason" for her non-selection.  See

Weber, 494 F.3d at 186.  To begin with, Bing could not have known about plaintiff's

membership in most of the protected classes at issue.  The Quickhire questionnaire itself did not

include any prompts about race, color, religion, sex, national origin, or age.  See Vacancy

Information.  HHS applicants may complete a voluntary Applicant Background Survey that

collects data on an applicant's race, ethnicity, sex, and date of birth.[6]  See Background Survey

(attached as Def. Mem. Ex. 9).  As the Survey itself makes clear, however, HHS uses this data

only for "research and statistical purposes."  Id.  The HR staff handling the vacancy never see the

data.  Thomas EEO Aff. at 4, Background Survey at 3; see also Quickhire FAQ at 4, 8 (attached

as Def. Mem. Ex. 16) ("the selecting official will never see your date of birth").  Further,

plaintiff's application and attached resume did not mention her race, color, religion, national

origin, or age.[7]  See Pl. Application.  Because no one involved in evaluating plaintiff's

application could have accessed data on her race and color, and because her religion, national

origin and age were not apparent from her application, a reasonable jury could not conclude that

defendant discriminated against plaintiff on any of those grounds.

Plaintiff argues that defendant "can infer from plaintiff's name that she is female,

Assyrian and not Jewish."  Pl. Opp'n at 6.  While "Susanne" indicates she is female, plaintiff

---

[6]The record does not indicate whether plaintiff filed such a form, although it implies she may have.  See Pl. Opp'n at 6 ("Plaintiff indicated in her application that she was White").

[7]The only reference to any ethnicity on plaintiff's resume is service on a GSA Hispanic Advisory Council.  See Pl. Application.  Plaintiff's SF-50 form, not considered with the original application, also includes plaintiff's date of birth.  But nothing in the record suggests that Bing had access to that form when reevaluating plaintiff's dossier.  See Bing EEO Affs. at 7.

provides nothing to buttress her assertion as to the connotations of the name "Atanus."  Mere

speculation is not enough to survive summary judgment.  See Brady, 520 F.3d at 496 (finding

merely "rais[ing] the specter" of racial influence not sufficient to avoid summary judgment).

Likewise, nothing else in the record indicates that Bing, a female, discriminated against plaintiff

because of her gender -- or for any other reason.

The selected candidates' demographic data further weakens plaintiff's argument.  All four

selected candidates were white, and one was female.  Bing Aff. at 3 (attached as Def. Mem. Ex.

7).  Despite plaintiff's contention that Jewish applicants receive preferential treatment from the

federal government, no selectee self-identified as Jewish.  See Applicant Deps. (attached as Def.

Mem. Exs. 12-15).  As to plaintiff's age discrimination claim, three of the four selectees were

over 40, and one of them was 58.  Bing Aff. at 3.  Because "a replacement within the same

protected class cuts strongly against any inference of discrimination," Murray v. Gilmore, 406

F.3d 708, 715 (D.C. Cir. 2005), the identities of the selected candidates further underscores the

conclusion that discrimination was not the true reason for her non-selection.

2.  Non-Competitive Process

Plaintiff alleges that, because she was a prior federal employee at the GS-11 level, she

should have been considered under the NC process for the writer/editor position.  The vacancy

announcement for the position clearly stated both that the highest promotion level is GS-12,

Vacancy Information at 1, and that applicants invoking the NC process must have served in a

position with equal or greater promotion potential than the position advertised, id. at 9.  Hence,

in addition to failing to request consideration under the NC process, see Pl. Application at 2

(answering "NA" when asked for the highest promotion level for her previous government

position), plaintiff has not given any reason why she was qualified despite her GS-11 status

being below the required GS-12 status.  Her claim of discrimination as to the NC process thus

fails as well.

B.    *Other Claims*

1.  Outstanding Scholar Program

Plaintiff argues that the job vacancy "indicated that being an Outstanding Scholar was a

factor in the award of additional points" in the selection process, but she never received those

points.  Pl. Opp'n at 12.  The Quickhire questionnaire did mention the Outstanding Scholar

Program in "core questions" that HHS asks for every vacancy, but in consecutive questions

plaintiff gave conflicting responses as to her eligibility for the program.  See Pl. Application at 2-

3 (Q: "Are you eligible for noncompetitive appointment . . . ? A: No; Q: If you are eligible,

[which program] are you applying under? A: Outstanding Scholar.").  Moreover, plaintiff does

not dispute defendant's argument that she was ineligible for the Outstanding Scholar Program

because it is only available for some positions at the GS-5 and -7 levels, whereas the

writer/editor position was at the GS-11 and -12 levels.  Bing EEO Affs. at 3-4, see also Thomas

EEO Aff. at 5.  Finally, applicants are only eligible if their undergraduate grade point average

was above a 3.5.  See Outstanding Scholar Information at 2 (attached as Def. Mem. Ex. 22).

Plaintiff testified that her undergraduate GPA was a 2.90/4.00.  See Atanus Dep. at 132 (attached

as Pl. Opp'n Ex. A).  Hence, plaintiff has not demonstrated her eligibility for the Outstanding

Scholar Program, much less shown that her not being selected through the program gives rise to

an inference of discrimination.

2.  Non-veteran Status[8]

Plaintiff alleges that her non-selection also constituted discrimination because she does not have veteran status, relying heavily on the fact that one selectee was a veteran, see Bing Aff. at 3.  Veterans applying for the writer/editor position were eligible for a 5-point or 10-point bonus.  See Vacancy Information at 10; see also Thomas EEO Aff. at 4 (explaining that several 5-point veterans applied, but no 10-point veterans).  Although plaintiff may disagree with the government's preference for, or method of preferencing, veterans, she has not demonstrated that she has any valid claim of discrimination on that basis.  Congress has defined veterans as "preference eligible," see 5 U.S.C. § 1208, and determined that "a preference eligible . . . in an examination for entrance into the competitive service is entitled to additional points," see 5 U.S.C. § 3309.  Moreover, non-veteran status is not among the protected classes of Title VII, which protects against discrimination based on race, color, religion, sex, and national origin.  See 42 U.S.C. §§ 2000e-2 et seq.  Hence, no reasonable jury could find prohibited discrimination based on non-veteran status, and summary judgment will be granted in favor of defendant.

**II.    Plaintiff's Retaliation Claim**

The federal government may not retaliate against employees for engaging in activity protected by Title VII,  Montgomery v. Chao, 546 F.3d 703, 706 (D.C. Cir. 2008), which defendant concedes encompasses plaintiff's EEO activity, see Def. Mem. at 24.  As with claims of discrimination, when the defendant has articulated a legitimate reason for its adverse employment action, the McDonnell Douglas burden-shifting framework effectively evaporates --

---

[8]In her opposition, plaintiff did not rebut HHS's argument that non-veteran status is not a protected class.  Although this omission may have conceded the claim, see FDIC v. Bender, 127 F.3d 58, 67-68 (D.C. Cir. 1997), the Court will nonetheless briefly address this argument here.

the sole remaining issue is retaliation <u>vel non</u>, and "to survive summary judgment the plaintiff

must show that a reasonable jury could conclude from all of the evidence" that the adverse action

was retaliatory.  <u>Lathram v. Snow</u>, 336 F.3d 1085, 1088 (D.C. Cir. 2003); <u>see also</u> <u>Jones</u>, 557

F.3d at 678 (noting that court should proceed directly to the "ultimate issue" of retaliation).

Plaintiff argues that defendant retaliated against her by not selecting her for the position because

of her prior EEO activity involving her termination from the GSA.  Defendant counters with the

same legitimate, non-retaliatory reasons for not hiring plaintiff considered above: she did not

score high enough in the DE process, and she was not eligible for the MP or NC processes.

Additionally, defendant argues, there can be no retaliation without knowledge of protected

activity, and no one at HHS knew of plaintiff's protected activity before her non-selection.

To survive summary judgment, a plaintiff need not provide direct evidence that the

employer knew of the protected activity.  Instead, the plaintiff "need only offer circumstantial

evidence that could reasonably support an inference" of knowledge.  <u>Jones</u>, 557 F.3d at 679.  But

plaintiff cannot meet even that standard.  She did not tell Bing, the specialist in charge of

reviewing her application, about her prior EEO activity.  Atanus Dep. at 144 ("Q: Did you

discuss your GSA complaint with Melinda Bean [sic.]? A: No.").  Her resume and application

did not mention the EEO complaint or litigation.  <u>See</u> Pl. Application.  Plaintiff contends that she

informed the HHS's EEO Director, David Shorts, and an HHS Team Leader, Eileen Gomsi,

about her alleged wrongful removal from the GSA, and that her prior EEO activity was readily

ascertainable through the Internet or government records and thus must have factored into her

non-selection.  <u>See</u> Pl. Opp'n at 10.  But she did not begin speaking to Gomsi until after she

applied for but did not get the writer/editor position.  <u>See</u> Atanus Dep. at 116, 128; <u>see also</u>

Shorts Dep. at 2 (attached as Def. Mem. Ex. 17) ("Q: When was the first time you knew of her existence? . . . A: Back when she actually requested EEO counseling in the instant matter . . . ."). Additionally, the record does not support an inference that Gomsi or Shorts had any prospective influence over the process of selecting candidates for the writer/editor vacancy.  Shorts works with HHS EEO, not HR, see Shorts Dep. at 3, and Bing's supervisors, including those who double-checked plaintiff's application, did not include Gomsi, see Bing EEO Affs. at 2, 7.

A theoretical possibility -- not addressed in plaintiff's memorandum -- remains that somehow knowledge of the prior complaint passed from Shorts or Gomsi to Bing before Bing re-assessed plaintiff's candidacy, which occurred between April 7 and 14, 2005.  See Bing EEO Affs. at 5, 8.  Evidence that an employer had knowledge of protected activity shortly before the alleged adverse employment action may be sufficient to infer retaliatory motive at the prima facie stage.  Jones, 557 F.3d at 679.  But here there is nothing in the record to indicate that the information passed to Bing and affected her decision about plaintiff's lack of qualifications.

Plaintiff is left to rely on her allegation that her complaint against the GSA could have been easily discovered on the Internet or implied from her resume.  See Pl. Opp'n at 10.  Plaintiff has produced no evidence suggesting that anyone at HHS researched her prior complaints or that Bing inferred anything from plaintiff's departure from GSA as indicated on her resume. Plaintiff's speculative contention that knowledge of prior protected activity could be inferred or discovered on the Internet could be made in most cases.  "'Mere speculation' . . . fails to create a genuine issue of material fact to avoid summary judgment."  See Esquibel v. Lahood, 604 F. Supp. 2d 133, 137 (D.D.C. 2009); see also Doe v. Gates, 981 F.2d 1316, 1323 (D.C. Cir. 1993) (granting summary judgment because the non-movant had not produced more than

-13-

"metaphysical doubt" about the movant's proffered explanation).  Here, no jury could reasonably conclude that defendant knew of plaintiff's protected activity before the non-selection decision. Hence, summary judgment for defendant will be granted as to plaintiff's retaliation claim.

## CONCLUSION

Plaintiff's discrimination claim fails because she has not shown that defendant's proffered legitimate, nondiscriminatory reasons for not selecting her were invalid or false.  Her claim of non-veteran discrimination fails because federal law does not afford protected status to non-veterans.  Likewise, plaintiff's retaliation claim fails because she has produced at most speculation that HHS staff could have known about her prior complaints against the GSA before her non-selection.  Accordingly, defendant's summary judgment motion will be granted.  A separate order accompanies this opinion.

_____/s/_____
JOHN D. BATES
United States District Judge

Dated: ____September 10, 2009____